IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT COURT AT BETHEL

CERTIFIED COPY

MELISSA VIRTUE,                          )
                                         )
                    Plaintiff,           )
                                         )
        vs.                              ) No. 4BE-04-19 Civil
                                         )
BETHEL GROUP HOME, INC.,                 )
                                         )
                    Defendant.           )
_____  )

DEPOSITION OF

BERNADINE WENDELL

LAKE FOREST, ILLINOIS

JANUARY 4, 2005

ATKINSON-BAKER, INC.
COURT REPORTERS
500 North Brand Boulevard, Third Floor
Glendale, California  91203
(800) 288-3376

REPORTED BY:  HEATHER PERKINS, CSR NO. 84-3714

FILE NO.:  9E0ADB7

1

EXHIBIT B

1      IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

2      FOURTH JUDICIAL DISTRICT COURT AT BETHEL

3      - - -

4

5

6  MELISSA VIRTUE,     )

                  )

7        Plaintiff,   )

                  )

8    vs.          )No. 4BE-04-19 Civil

                  )

9  BETHEL GROUP HOME, INC.,  )

                  )

10      Defendant.  )

    _____)

11

12      Deposition of BERNADETTE WENDELL,

13  taken on behalf of Defendant, at 400 Field

14  Drive, Lake Forest, Illinois, commencing at

15  3:05 o'clock p.m., Tuesday, January 4th, 2005,

16  before Heather Perkins-Reiva, CSR NO. 84-3714.

17

18

19

20

21

22

23

24

25

```
 1                     A P P E A R A N C E S:

 2         COOKE, ROOSA & VALCARCE
           BY:  MR. JIM J. VALCARCE
 3         900 3rd Avenue, Box 409
           Bethel, Alaska  99559
 4         (907) 543-2744
           (Appeared telephonically.)
 5
               On behalf of the Plaintiff;
 6

 7         DELANEY, WILES, HAYES, GERETY, ELLIS &
           YOUNG, INC.
 8         BY:  MR. JAMES J. FAYETTE
               MS. CYNTHIA L. DUCEY
 9         1007 West 3rd Avenue
           Suite 400
10         Anchorage, Alaska  99501
           (907) 279-3581
11         (Appeared telephonically.)

12                     and

13         LAW OFFICE OF SCOTT G. THOMAS
           BY:  MR. RICHARD JACOBSON
14         500 West Madison Street
           Suite 2790
15         Chicago, Illinois  60661
           (312) 930-5500
16
               On behalf of the Defendant;
17

18         TRUSTMARK INSURANCE COMPANY
           BY:  MR. STEPHEN J. MC DANIEL
19         400 Field Drive
           Lake Forest, Illinois  60045
20         (847) 283-4136

21             On behalf of the Deponent.

22
           Also Present:
23
           Ms. Carolyn Magura (Telephonically).
24

25                 *       *       *
```

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

I N D E X

WITNESS                                    PAGE

MS. BERNADETTE WENDELL

    By Mr. Fayette

        Examination              06, 87, 101

    By Mr. Valcarce

        Examination              80, 100, 103


EXHIBITS                        MARKED FOR ID

Defendant's Deposition Exhibit

No. 1  Employee Enrollment Form           05

No. 2  Groupfacts Text Data Maintenance   05

No. 3  Special Enrollee Form              05

No. 4  Group Premium/Fast File            05

No. 5  Administration Guide               05

No. 6  11/26/02 Regan Letter to Starmark  05

No. 7  (Withdrawn)                        05

No. 8  (Withdrawn)                        05

No. 9  Certificate of Insurance           18

No. 10 Status on New Employee Addition    09

4

|    |          |                                                      |
|----|----------|------------------------------------------------------|
| 1  |          | (Documents marked as Defendant's                    |
| 2  |          | Deposition Exhibits 1 through 8                     |
| 3  |          | for identification.)                                |
| 4  |          | (Witness duly sworn.)                               |
| 5  | 15:05:42 | MR. FAYETTE:  We are on the record.                 |
| 6  | 15:05:42 | I guess the way I will begin is                     |
| 7  | 15:05:46 | the case is Virtue v. Bethel Group Home.  The       |
| 8  | 15:05:50 | case number is 4BE-04-19 Civil.                     |
| 9  | 15:05:54 | The place to begin, I think, is                     |
| 10 | 15:05:56 | for the parties to identify themselves.  I          |
| 11 | 15:05:58 | will begin.  My name is James Fayette.  My law      |
| 12 | 15:06:02 | firm is Delaney Wiles.  I'm participating           |
| 13 | 15:06:04 | telephonically in Anchorage, Alaska.                |
| 14 | 15:06:06 | I would ask opposing counsel and                    |
| 15 | 15:06:08 | the parties in Chicago to identify themselves.      |
| 16 | 15:06:10 | MR. VALCARCE:  Jim Valcarce on behalf               |
| 17 | 15:06:12 | of the Plaintiff.                                   |
| 18 | 15:06:14 | MR. MC DANIEL:  Steven McDaniel,                    |
| 19 | 15:06:16 | in-house counsel for Starmark and Trustmark,        |
| 20 | 15:06:20 | and the witness.                                    |
| 21 | 15:06:22 | THE WITNESS:  Bernadette Wendell,                   |
| 22 | 15:06:24 | second vice president, Starmark                     |
| 23 | 15:06:26 | administration.                                     |
| 24 | 15:06:26 | MR. JACOBSON:  And I'm Richard                       |
| 25 | 15:06:28 | Jacobson, local counsel for Jay Fayette.            |

|    |          |                                                        |
|----|----------|--------------------------------------------------------|
| 1  | 15:06:38 | BERNADETTE WENDELL,                                    |
| 2  |          | having been first duly sworn, was called as a          |
| 3  |          | witness herein, was examined and testified as          |
| 4  |          | follows:                                               |
| 5  |          | E X A M I N A T I O N                                  |
| 6  |          | BY MR. FAYETTE:                                        |
| 7  | 15:06:38 | Q.   I will begin:  Ms. Wendell, this is               |
| 8  | 15:06:40 | Mr. Fayette in Anchorage.                              |
| 9  | 15:06:42 | Can you hear me all right?                             |
| 10 | 15:06:44 | A.   Sure.  Yes, I can.                                |
| 11 | 15:06:44 | Q.   Thank you for being available today.              |
| 12 | 15:06:46 | Can I ask, then, to begin with                         |
| 13 | 15:06:50 | questions of you, then?                                |
| 14 | 15:06:52 | I missed it:  Could you state                          |
| 15 | 15:06:56 | your title, please, again with                         |
| 16 | 15:06:58 | Trustmark/Starmark Insurance?                          |
| 17 | 15:06:58 | A.   Second vice president of                          |
| 18 | 15:07:00 | administration.                                        |
| 19 | 15:07:02 | Q.   And how long have you held that                   |
| 20 | 15:07:04 | position, ma'am?                                       |
| 21 | 15:07:06 | A.   That position I have had for a year               |
| 22 | 15:07:08 | now.  I have been with Starmark for 15 years.          |
| 23 | 15:07:12 | Q.   Can you give me a very, very brief                |
| 24 | 15:07:14 | thumbnail sketch of the various positions you          |
| 25 | 15:07:18 | have held with this firm?                              |

```
1    15:07:18    A.    The positions I have held with the

2    15:07:22    firm have been administration positions,

3    15:07:24    starting out with an account representative,

4    15:07:28    all the way through management, to a second VP

5    15:07:30    position.  I have had some duties in a

6    15:07:32    marketing area at some point in time for a

7    15:07:34    couple of years.

8    15:07:36    Q.    And Mr. Mc Daniel tells us that you

9    15:07:40    are designated the person most knowledgeable

10   15:07:42    and authorized to speak for Trustmark/Starmark

11   15:07:46    Insurance as to the issues that are listed on

12   15:07:48    our notice of deposition; is that correct?

13   15:07:54    A.    Yes.

14   15:07:54    Q.    All right.  You are familiar, I take

15   15:07:56    it, with the issues afoot in this lawsuit, the

16   15:08:00    issues regarding Ms. Virtue's application and

17   15:08:08    for Starmark group health insurance in

18   15:08:12    mid-2002?  You are familiar with that?

19   15:08:14    A.    Yes.

20   15:08:14    Q.    Have you had a chance to review the

21   15:08:16    items actually listed in this deposition

22   15:08:18    notice?

23   15:08:20    A.    Yes.

24   15:08:22    Q.    What I would like to do is begin with

25   15:08:26    this afternoon's development, since our time
```

7

| | | |
|---|---|---|
| 1 | 15:08:32 | here this afternoon is limited. |
| 2 | 15:08:32 | Were you present in the room when |
| 3 | 15:08:34 | Mr. Mc Daniel informed the parties here, |
| 4 | 15:08:38 | before you were sworn, about recently |
| 5 | 15:08:40 | discovered documents relating to Melissa |
| 6 | 15:08:42 | Virtue? |
| 7 | 15:08:42 | A.   Yes. |
| 8 | 15:08:44 | Q.   Let me just cut there;  Can you go |
| 9 | 15:08:46 | ahead and just tell us what documents you |
| 10 | 15:08:50 | discovered in your research in preparation for |
| 11 | 15:08:50 | today's deposition? |
| 12 | 15:08:52 | A.   I discovered what we consider a status |
| 13 | 15:08:54 | of new employee addition form; and attached to |
| 14 | 15:08:58 | that was the employee enrollment form, front |
| 15 | 15:09:02 | and back sides; and, also, a memo from Bethel |
| 16 | 15:09:06 | Group Home attached, dated May 13th of 2002, |
| 17 | 15:09:12 | as stamped in here, but dated by them |
| 18 | 15:09:16 | April 17th of 2002. |
| 19 | 15:09:18 | Q.   So how many pages of documents, then, |
| 20 | 15:09:20 | have you just indicated? |
| 21 | 15:09:22 | A.   I have three pages. |
| 22 | 15:09:24 | MR. FAYETTE:  And I will ask |
| 23 | 15:09:26 | Mr. Jacobson's assistance. |
| 24 | 15:09:28 | Mr. Jacobson, are you there in a |
| 25 | 15:09:28 | position to mark these three pages as |

| | | |
|---|---|---|
| 1 | 15:09:32 | exhibits? |
| 2 | 15:09:32 | MR. JACOBSON:  Yes, I will. |
| 3 | 15:09:32 | The record should reflect that |
| 4 | 15:09:32 | one of the three pages is a double-sided page. |
| 5 | 15:09:38 | MR. MC DANIEL:  Can you take our copy? |
| 6 | 15:09:40 | MR. JACOBSON:  Sure. |
| 7 | 15:09:42 | I'm marking a copy of the newly |
| 8 | 15:09:44 | discovered document as Exhibit No. 9. |
| 9 | 15:09:48 | MR. FAYETTE:  Actually, what I would |
| 10 | 15:09:48 | ask you to do, Mr. Jacobson, is mark that as |
| 11 | 15:09:52 | Exhibit 10 since the other numbers are already |
| 12 | 15:09:54 | spoken for. |
| 13 | 15:10:06 | Okay.  Is that done? |
| 14 | 15:10:06 | MR. JACOBSON:  The exhibit has been so |
| 15 | 15:10:08 | marked, and it is being tendered to the |
| 16 | 15:10:10 | witness. |
| 17 | 15:10:10 | (Document marked as Defendant's |
| 18 | 15:10:10 | Exhibit 10 for identification.) |
| 19 | 15:10:12 | BY MR. FAYETTE: |
| 20 | 15:10:12 | Q.  Ms. Wendell, can you go ahead and tell |
| 21 | 15:10:14 | us how you came about discovering these new |
| 22 | 15:10:16 | documents? |
| 23 | 15:10:16 | A.  Reviewing the underwriting file and |
| 24 | 15:10:18 | administration file that we called from |
| 25 | 15:10:22 | off-site, I noticed that there was |

| | | |
|---|---|---|
| 1 | 15:10:24 | documentation that was a computer printout |
| 2 | 15:10:26 | that stated that there was returned mail on |
| 3 | 15:10:30 | this particular individual.  So I had someone |
| 4 | 15:10:32 | research our return mail area. |
| 5 | 15:10:36 | I was unsure as to whether or not |
| 6 | 15:10:38 | we would have something back to 2002, but I |
| 7 | 15:10:40 | had them search for it anyway, and we did find |
| 8 | 15:10:44 | this documentation that indicated we were |
| 9 | 15:10:46 | returning this because we could not identify |
| 10 | 15:10:48 | the company or the group number. |
| 11 | 15:10:50 | MR. FAYETTE:  I'm going to go through |
| 12 | 15:10:52 | that in detail, but before I ask my next |
| 13 | 15:10:54 | question, I will note for the record that just |
| 14 | 15:10:56 | a moment ago my supervising attorney, |
| 15 | 15:10:58 | Ms. Cynthia Ducey, D-u-c-e-y, joined us in the |
| 16 | 15:11:02 | conference room.  There is no one else in our |
| 17 | 15:11:06 | conference room in Anchorage. |
| 18 | 15:11:08 | BY MR. FAYETTE: |
| 19 | 15:11:08 | Q.  All right.  So tell me then, |
| 20 | 15:11:10 | Ms. Wendell, specifically what documents you |
| 21 | 15:11:12 | found, and just explain them, if you would. |
| 22 | 15:11:14 | A.  The first document is a status on a |
| 23 | 15:11:16 | new employee addition.  It is dated May 15th |
| 24 | 15:11:20 | of 2002.  It is addressed to Melissa A. Virtue |
| 25 | 15:11:24 | at 427 Napaskiak in Bethel, Alaska, 99559.  It |

| | | |
|---|---|---|
| 1 | 15:11:32 | says that we are processing a request, and |
| 2 | 15:11:36 | there has been a delay.  We are returning it. |
| 3 | 15:11:38 | The enrollment form is being returned for the |
| 4 | 15:11:40 | name of the company and the group number.  We |
| 5 | 15:11:44 | are asking that they respond within ten days |
| 6 | 15:11:46 | for consideration, and it is signed by Melissa |
| 7 | 15:11:52 | Melendez, group administration department. |
| 8 | 15:11:56 | MR. FAYETTE:  I hesitate to delay this |
| 9 | 15:12:00 | further, but this is a new development. |
| 10 | 15:12:00 | I will ask Mr. Mc Daniel:  Can |
| 11 | 15:12:02 | you tell us, are your staff in a position to |
| 12 | 15:12:06 | fax those three or four pages to the parties |
| 13 | 15:12:10 | here before we continue with questioning? |
| 14 | 15:12:12 | MR. MC DANIEL:  Yes, we can have that |
| 15 | 15:12:12 | faxed to you. |
| 16 | 15:12:14 | MR. FAYETTE:  Then let me suggest, |
| 17 | 15:12:16 | Madam Court Reporter, if we can go off record, |
| 18 | 15:12:18 | and keep me on the speakerphone.  I will |
| 19 | 15:12:22 | provide the parties' fax numbers.  I think |
| 20 | 15:12:24 | that may be helpful.  So my request is we go |
| 21 | 15:12:26 | off record. |
| 22 | 15:12:28 | MR. VALCARCE:  Wait.  Before we do |
| 23 | 15:12:30 | that, this is the whole point:  This is a |
| 24 | 15:12:32 | 30(b)(6) deposition, and I assume there is |
| 25 | 15:12:36 | going to be lots of other documents that are |

| | | |
|---|---|---|
| 1 | 15:12:38 | before him, that we don't have. So why don't |
| 2 | 15:12:38 | we just fax them all at one time. |
| 3 | 15:12:42 | How thick are the documents |
| 4 | 15:12:44 | there, Steve, as far as the documents that are |
| 5 | 15:12:44 | going to be produced today at this deposition? |
| 6 | 15:12:48 | MR. MC DANIEL: I don't know what has |
| 7 | 15:12:52 | been identified already here, but we have |
| 8 | 15:12:56 | basically four pages that haven't been |
| 9 | 15:13:00 | produced to you and opposing counsel |
| 10 | 15:13:06 | previously. We have the certificate of |
| 11 | 15:13:08 | insurance, which is 60 pages, which was faxed |
| 12 | 15:13:12 | to both of you today, and then we have the |
| 13 | 15:13:14 | original three pages of documents that were |
| 14 | 15:13:18 | produced to both of you attorneys previously. |
| 15 | 15:13:24 | MR. FAYETTE: So, Jim, if I may: The |
| 16 | 15:13:26 | only new documents, unless I'm really missing |
| 17 | 15:13:28 | something, is these three pages, one of which |
| 18 | 15:13:32 | is double-sided. You indicated that you had |
| 19 | 15:13:34 | received the other exhibits that we faxed to |
| 20 | 15:13:36 | you yesterday. So I honestly think it would |
| 21 | 15:13:38 | be gainful to take two minutes off record, or |
| 22 | 15:13:40 | maybe five, and allow the folks in Chicago to |
| 23 | 15:13:44 | fax those documents to us, and then we can |
| 24 | 15:13:46 | question intelligently. |
| 25 | 15:13:50 | MR. VALCARCE: Well, let's get those |

| | | |
|---|---|---|
| 1 | 15:13:50 | faxed, and why don't you just proceed on with |
| 2 | 15:13:52 | other questions so we don't have to stop this, |
| 3 | 15:13:54 | and then we can just come back to it when they |
| 4 | 15:13:56 | are faxed. |
| 5 | 15:13:58 | MR. FAYETTE:  That's fine. |
| 6 | 15:13:58 | I will give my fax number, Jim, |
| 7 | 15:14:00 | if you would give yours:  My fax number in |
| 8 | 15:14:02 | Anchorage is (907) 277-1331. |
| 9 | 15:14:10 | MR. VALCARCE:  And, Steve, you have |
| 10 | 15:14:12 | got mine there:  (907) 543-2746. |
| 11 | 15:14:24 | MR. MC DANIEL:  Yes.  We should have |
| 12 | 15:14:24 | both of those from the fax this morning. |
| 13 | 15:14:26 | (Brief pause.) |
| 14 | 15:14:28 | BY MR. FAYETTE: |
| 15 | 15:14:28 | Q.   Ms. Wendell, then I will return to |
| 16 | 15:14:30 | questions for you, if I may? |
| 17 | 15:14:32 | A.   Sure. |
| 18 | 15:14:32 | Q.   Can I ask you questions, then, about |
| 19 | 15:14:34 | the documents that you have probably just |
| 20 | 15:14:36 | given to somebody? |
| 21 | 15:14:38 | A.   I have copies of the documents in |
| 22 | 15:14:42 | front of me. |
| 23 | 15:14:42 | Q.   Take me through that chain of events |
| 24 | 15:14:44 | again.  Can you tell us when Starmark |
| 25 | 15:14:46 | Insurance received this application for |

13

```
 1   15:14:48   Melissa Virtue?

 2   15:14:48      A.   The application is stamped received by

 3   15:14:52   Trustmark Insurance Company May 13th of 2002.

 4   15:14:58      Q.   And then what was defective or what

 5   15:15:04   was wrong with that application?

 6   15:15:06      A.   They did not indicate a group name or

 7   15:15:08   group number at the time.  So we could not

 8   15:15:12   attach her to any group.

 9   15:15:14      Q.   In other words, when I look at the

10   15:15:16   first page of the form, has the enrollee

11   15:15:18   filled out those entries?  Is that what you

12   15:15:20   are telling me?

13   15:15:22      A.   Filled out which entries?

14   15:15:24      Q.   Tell me what I'm going to see on the

15   15:15:26   first page of the form.

16   15:15:28      A.   Of the enrollment form?

17   15:15:30           On the first page of the

18   15:15:30   enrollment form, you are going to see she has

19   15:15:34   filled out her name, et cetera, but she has

20   15:15:36   not given us a group name or a group number.

21   15:15:38      Q.   So then on May 13th, 2002, what did

22   15:15:42   Starmark Insurance do with that form?

23   15:15:44      A.   What we did is on May 15th -- I just

24   15:15:48   read to you the status of the new employee

25   15:15:50   addition that we attached.  That's our form
```

```
 1    15:15:52    that we sent out.  On May 15th, we sent that
 2    15:15:56    form to Ms. Virtue, along with a copy of this
 3    15:16:00    enrollment form, telling her that we could not
 4    15:16:04    process it because we did not have a group
 5    15:16:06    number, and that we needed her to respond
 6    15:16:08    within ten days for consideration.
 7    15:16:12        Q.   Can you tell us what address Starmark
 8    15:16:16    used to send that back to Ms. Virtue?
 9    15:16:20        A.   We used the address of 427 Napaskiak
10    15:16:24    in Bethel, Alaska, 99559.
11    15:16:30        Q.   All right.  And what is the next event
12    15:16:38    that happened with respect to Ms. Virtue?
13    15:16:42        A.   Well, the next event that happened is
14    15:16:44    that we never received any further
15    15:16:48    communication from Ms. Virtue on this
16    15:16:54    application.  She had checked waiver of
17    15:16:58    coverage.  So this was just kept in the file
18    15:17:00    that we just pulled it from, where it was
19    15:17:02    unattached mail.
20    15:17:08        Q.   And I'm assuming Starmark kept a
21    15:17:22    photocopy of this document?
22    15:17:24        A.   Right.  We kept a copy of the
23    15:17:26    document, yes.
24    15:17:26        Q.   And that's the document that's being
25    15:17:28    faxed to us right now?
```

| | | | |
|---|---|---|---|
| 1 | 15:17:28 | A. | Yes. |
| 2 | 15:17:30 | Q. | And what happened to the original? |
| 3 | 15:17:32 | A. | The original would have been returned |
| 4 | 15:17:34 | | to Ms. Virtue.  Whatever we received from her, |
| 5 | 15:17:40 | | we would have sent back with this status of |
| 6 | 15:17:42 | | new employee addition for her to add the group |
| 7 | 15:17:46 | | number on and name.  So we would have sent |
| 8 | 15:17:48 | | back the original, and we would have kept a |
| 9 | 15:17:50 | | copy. |
| 10 | 15:17:50 | Q. | When you received that application, |
| 11 | 15:17:52 | | was there any other memoranda that was |
| 12 | 15:17:54 | | received from the employer or on her behalf? |
| 13 | 15:17:58 | | Any record of any other memoranda that you |
| 14 | 15:18:00 | | received along with that application on |
| 15 | 15:18:02 | | May 13th, 2002? |
| 16 | 15:18:04 | A. | Right.  There was a memo from Bethel |
| 17 | 15:18:06 | | Group Home dated April 17th of 2002. |
| 18 | 15:18:08 | Q. | Can you please describe that to me? |
| 19 | 15:18:10 | A. | Letterhead of Bethel Group Home, |
| 20 | 15:18:14 | | Incorporated.  It is addressed to Starmark at |
| 21 | 15:18:16 | | 400 Field Drive in Lake Forest, Illinois, |
| 22 | 15:18:20 | | 60045-2581; and reason for new enrollment, it |
| 23 | 15:18:26 | | says:  "Please enroll Ms. Melissa Virtue, as |
| 24 | 15:18:28 | | per the enclosed application, on Bethel Group |
| 25 | 15:18:32 | | Home health plan.  Kenneth Alexander." |

16

| | | |
|---|---|---|
| 1 | 15:18:34 | Q.   I'm sorry.  I cut off your answer. |
| 2 | 15:18:38 | Please give us the signature block again. |
| 3 | 15:18:40 | A.   Kenneth Alexander. |
| 4 | 15:18:42 | Q.   So Starmark would have kept a |
| 5 | 15:18:44 | photocopy of that, as well, obviously? |
| 6 | 15:18:46 | A.   Yes. |
| 7 | 15:18:48 | Q.   All right.  I'm going to leave that |
| 8 | 15:18:58 | subject for just a moment, and I'm going to |
| 9 | 15:19:00 | change subjects. |
| 10 | 15:19:00 |       In preparation for this |
| 11 | 15:19:04 | deposition, did you -- and, perhaps, with |
| 12 | 15:19:08 | Mr. Mc Daniel's assistance -- prepare a |
| 13 | 15:19:10 | certificate of insurance which would have been |
| 14 | 15:19:12 | issued to Melissa Virtue had she been enrolled |
| 15 | 15:19:16 | under Group No. SM 46761E? |
| 16 | 15:19:24 | A.   Yes. |
| 17 | 15:19:26 | Q.   And Mr. Mc Daniel has provided me, and |
| 18 | 15:19:30 | I believe Mr. Valcarce, with a document that |
| 19 | 15:19:34 | is some 58-pages long.  The first page says |
| 20 | 15:19:40 | "Certificate of Insurance."  Do you know what |
| 21 | 15:19:44 | I'm talking about? |
| 22 | 15:19:44 | A.   Yes, sir. |
| 23 | 15:19:46 |       MR. FAYETTE:  And I will ask |
| 24 | 15:19:46 | Mr. Jacobson's assistance. |
| 25 | 15:19:48 |       Mr. Jacobson, do you have the |

17

```
 1   15:19:52   document I'm describing?  If so, I will ask

 2   15:19:54   you to mark it as Exhibit 9.

 3   15:19:56        MR. JACOBSON:  Very well.

 4   15:19:58             We are going to mark the copy of

 5   15:20:00   the certificate of insurance as Exhibit 9.

 6   15:20:04             (Document marked as Defendant's

 7   15:20:04             Exhibit 9 for identification.)

 8   15:20:06        MR. JACOBSON:  And I'm tendering it

 9   15:20:08   back to the witness.

10   15:20:14   BY MR. FAYETTE:

11   15:20:14        Q.   Ms. Wendell, with Exhibit 9 in hand,

12   15:20:16   can you tell us what that is?

13   15:20:18        A.   It is a certificate of insurance.

14   15:20:18        Q.   And what is that?

15   15:20:20        A.   It is the file document that we issue

16   15:20:22   to all eligible enrolled members of particular

17   15:20:28   groups for their health coverage.

18   15:20:30        Q.   And what significance does Exhibit 9

19   15:20:32   have in this case?

20   15:20:34        A.   What significance does it have in this

21   15:20:36   case?

22   15:20:36        Q.   In other words, I will ask it this

23   15:20:42   way:  Is that certificate of insurance the

24   15:20:44   certificate of insurance that would have been

25   15:20:44   issued to Melissa Virtue had she been enrolled
```

| | | |
|---|---|---|
| 1 | 15:20:48 | in April or May of 2002 under this Bethel |
| 2 | 15:20:52 | Group Home number? |
| 3 | 15:20:54 | A.   Yes. |
| 4 | 15:20:54 | Q.   And so that we are clear, the page in |
| 5 | 15:21:00 | the top right-hand corner of the document you |
| 6 | 15:21:02 | have bears sort of a fax superscript number, |
| 7 | 15:21:06 | 002, and the last page should have 053.  Is |
| 8 | 15:21:10 | that what you have? |
| 9 | 15:21:20 | MR. MC DANIEL:  His copy has a fax |
| 10 | 15:21:22 | thing on it. |
| 11 | 15:21:22 | MR. JACOBSON:  Jim, this copy doesn't |
| 12 | 15:21:26 | bear the fax number.  That's only on your end, |
| 13 | 15:21:28 | apparently. |
| 14 | 15:21:28 | BY MR. FAYETTE: |
| 15 | 15:21:28 | Q.   Does your copy there in Chicago have |
| 16 | 15:21:30 | fax numbers down at the very bottom? |
| 17 | 15:21:32 | A.   No.  We won't have those numbers on |
| 18 | 15:21:38 | it. |
| 19 | 15:21:38 | Q.   The first page says certificate of |
| 20 | 15:21:40 | insurance.  The last substantive page has an |
| 21 | 15:21:50 | amendment and the signatures of Mr. Thomas and |
| 22 | 15:21:52 | Mr. Gramm? |
| 23 | 15:21:54 | A.   Yes. |
| 24 | 15:21:54 | MR. FAYETTE:  I will ask, again, for |
| 25 | 15:21:58 | Mr. Jacobson's assistance, and to pull out |

| | | |
|---|---|---|
| 1 | 15:22:02 | what has been designated Exhibit 2.  It should |
| 2 | 15:22:06 | be one page alone.  It has some typewritten, |
| 3 | 15:22:16 | six lines of chronological entries, and then a |
| 4 | 15:22:18 | handwritten Bethel Group Home number. |
| 5 | 15:22:20 | Do you have that in hand, |
| 6 | 15:22:22 | Mr. Jacobson? |
| 7 | 15:22:22 | MR. JACOBSON:  I do, and it has been |
| 8 | 15:22:24 | put in front of the witness. |
| 9 | 15:22:24 | BY MR. FAYETTE: |
| 10 | 15:22:26 | Q.   Ms. Wendell, can you tell us what this |
| 11 | 15:22:26 | document is? |
| 12 | 15:22:28 | A.   This document is the computer printout |
| 13 | 15:22:30 | that I referred to earlier, that was in our |
| 14 | 15:22:34 | underwriting admin file when I reviewed it, |
| 15 | 15:22:38 | indicating that we have received an |
| 16 | 15:22:42 | application, that we returned it, and that we |
| 17 | 15:22:46 | received no response, and we closed it out. |
| 18 | 15:22:52 | Q.   Would it be a fair statement that this |
| 19 | 15:22:54 | page is a printout of a computerized |
| 20 | 15:22:56 | chronological system where Starmark personnel |
| 21 | 15:23:02 | can make ongoing entries on any given case? |
| 22 | 15:23:06 | Is that a fair description? |
| 23 | 15:23:06 | A.   Yes. |
| 24 | 15:23:08 | Q.   And so the entries that are on here |
| 25 | 15:23:10 | are made, as the events occur, by Starmark |

| | | |
|---|---|---|
| 1 | 15:23:16 | people who are charged with enrolling new |
| 2 | 15:23:22 | members or such, right? |
| 3 | 15:23:24 | A.    Yes. |
| 4 | 15:23:24 | Q.    And so can you tell us who would have |
| 5 | 15:23:28 | made these entries in May and in June of 2002? |
| 6 | 15:23:34 | They look like employee identifiers there. |
| 7 | 15:23:38 | A.    Yes. |
| 8 | 15:23:38 | Q.    Okay.  Explain that to us. |
| 9 | 15:23:40 | A.    The entries, the first three lines, |
| 10 | 15:23:42 | lines 1, 2 and 3, would have been made by YJ5, |
| 11 | 15:23:46 | which is Yolanda Johnson.  Number 4 would have |
| 12 | 15:23:50 | been made by Yolanda Johnson also.  Lines 5 |
| 13 | 15:23:54 | and 6 would have been Justine Kane. |
| 14 | 15:23:58 | Q.    And where do Ms. Johnson and |
| 15 | 15:24:00 | Ms. Kane -- or where were they in 2002? |
| 16 | 15:24:04 | A.    They work in the add-on area that |
| 17 | 15:24:08 | processes incoming additions to existing |
| 18 | 15:24:10 | groups. |
| 19 | 15:24:10 | Q.    And where is that? |
| 20 | 15:24:12 | A.    It is in my administration area for |
| 21 | 15:24:14 | Starmark. |
| 22 | 15:24:18 | Q.    Can I impose upon you to spell the |
| 23 | 15:24:20 | names of the employees you have just given us? |
| 24 | 15:24:22 | A.    Yolanda, Y-o-l-a-n-d-a, Johnson, |
| 25 | 15:24:26 | J-o-h-n-s-o-n; and Justine Kane, |

```
 1   15:24:28   J-u-s-t-i-n-e, K-a-n-e.

 2   15:24:34      Q.   And are those two employees still with

 3   15:24:36   Trustmark/Starmark?

 4   15:24:38      A.   Yes.

 5   15:24:42      Q.   Can you explain the six entries, then,

 6   15:24:44   just in your own words?  Just take them one by

 7   15:24:48   one, and tell us what is happening here.

 8   15:24:50      A.   Okay.  Line 1, Melissa Virtue, that

 9   15:24:54   means that we received an app on her.  There

10   15:24:56   was no group number.  We received it on

11   15:24:58   May 5th of 2002.

12   15:25:00      Q.   I'm sorry.  I'm going to stop you and

13   15:25:02   interrupt.

14   15:25:02           The document I have here says

15   15:25:08   5/15/02.

16   15:25:08      A.   I'm sorry, May 15th.  You are right.

17   15:25:10   5/15/02, May 15th of 2002.  It was the

18   15:25:14   employee that was applying.  The application,

19   15:25:22   her hire date is January 21st of 2002, and I

20   15:25:28   believe that there has been an error.  This

21   15:25:34   date here was 4/17.  It should be 4/17 of 2001

22   15:25:40   because that date we put there is the date

23   15:25:42   that they signed the application.

24   15:25:44           So we received it on May 15th of

25   15:25:46   2002.  It was an employee application.  She
```

| | | |
|---|---|---|
| 1 | 15:25:48 | signed it on April 17th of 2002.  Her date of |
| 2 | 15:25:54 | hire was January 21st of 2002. |
| 3 | 15:25:56 | Q.   Let me stop you. |
| 4 | 15:25:58 | Let's go back to the first line. |
| 5 | 15:26:00 | Ms. Johnson's entry seems to be 5/15/02, yet |
| 6 | 15:26:06 | didn't you tell us a moment ago that your copy |
| 7 | 15:26:08 | of the application is marked 5/13/2002? |
| 8 | 15:26:12 | A.   Well, it is stamped in as 5/13 in |
| 9 | 15:26:16 | Trustmark mail services, but we received it in |
| 10 | 15:26:18 | our department on 5/15. |
| 11 | 15:26:20 | Q.   So there is no problem here? |
| 12 | 15:26:22 | A.   No. |
| 13 | 15:26:22 | Q.   Let me restate that. |
| 14 | 15:26:26 | Are you telling us, then, that it |
| 15 | 15:26:28 | hit the mail room on May 13th and it took two |
| 16 | 15:26:32 | days to get to Ms. Johnson? |
| 17 | 15:26:32 | A.   Yes. |
| 18 | 15:26:34 | Q.   Then on the second line, DOH, is that |
| 19 | 15:26:36 | shorthand for date of hire? |
| 20 | 15:26:38 | A.   Yes. |
| 21 | 15:26:38 | Q.   Would it be a fair statement that all |
| 22 | 15:26:40 | Ms. Johnson is doing is copying down what the |
| 23 | 15:26:42 | employee puts on the application? |
| 24 | 15:26:44 | A.   In most part, yes. |
| 25 | 15:26:46 | Q.   Is it Ms. Johnson's job to go |

23

| | | |
|---|---|---|
| 1 | 15:26:50 | independently and verify that in some way? |
| 2 | 15:26:52 | A.    No. |
| 3 | 15:26:54 | Q.    Now, tell us about the third line. |
| 4 | 15:26:56 | A.    The third line says on 5/15/02, this |
| 5 | 15:27:00 | went to returns, which means that we returned |
| 6 | 15:27:02 | the application. |
| 7 | 15:27:04 | Q.    And you have already told us |
| 8 | 15:27:10 | Ms. Johnson or someone in her office kept a |
| 9 | 15:27:14 | photocopy of the documents? |
| 10 | 15:27:14 | A.    Yes. |
| 11 | 15:27:14 | Q.    And then returned the application to |
| 12 | 15:27:18 | the applicant's address as shown on the |
| 13 | 15:27:22 | application? |
| 14 | 15:27:22 | A.    Yes. |
| 15 | 15:27:22 | Q.    And then tell us about the fourth |
| 16 | 15:27:24 | line. |
| 17 | 15:27:24 | A.    The fourth line says on 6/6 of 2002, |
| 18 | 15:27:28 | there was no response.  We closed it out. |
| 19 | 15:27:32 | Q.    Now, what is happening between 5/15/02 |
| 20 | 15:27:36 | and 6/6/02? |
| 21 | 15:27:40 | A.    The letter that we sent to Melissa |
| 22 | 15:27:42 | Virtue, we told her that we had no group |
| 23 | 15:27:46 | number, and we asked them to respond in ten |
| 24 | 15:27:48 | days for consideration.  So we wait ten days |
| 25 | 15:27:50 | before we close something out and/or go back |

24

1    15:27:54    and review the application.

2    15:27:56        Q.    But if anybody had picked up the

3    15:27:58    phone, say, and called the employer

4    15:28:00    individually to straighten out some problem, I

5    15:28:02    take it that would be recorded somewhere on

6    15:28:06    Exhibit 2; is that correct?

7    15:28:06        A.    Yes.

8    15:28:08        Q.    So are you telling us that because

9    15:28:10    there is no entry on Exhibit 2 that that

10   15:28:12    didn't happen?

11   15:28:14        A.    To the best of my knowledge.

12   15:28:22        Q.    And do you know why?

13   15:28:26        A.    It is not normal procedure.

14   15:28:40        Q.    Can you tell us this:  Explain who put

15   15:28:44    this mark on the form, on Exhibit 2,

16   15:28:46    SM 46761E?

17   15:28:50        A.    I don't know who.  It would be someone

18   15:28:54    within my department, but I don't know who.

19   15:28:56        Q.    All right.  Return to Exhibit 10.

20   15:29:06    That's the documents that you have discussed

21   15:29:12    here already, the documents that you received

22   15:29:12    on May 13th.

23   15:29:14        A.    Yes.

24   15:29:14        Q.    Is the employee's employer, is that

25   15:29:18    listed on that document anywhere?

| | | |
|---|---|---|
| 1 | 15:29:20 | A.    Yes. |
| 2 | 15:29:22 | Q.    What does it say? |
| 3 | 15:29:24 | A.    Bethel Group Home. |
| 4 | 15:29:26 | Q.    Now, you said that it wasn't procedure |
| 5 | 15:29:30 | for someone in Ms. Johnson's office to pick up |
| 6 | 15:29:32 | the phone and contact the employer |
| 7 | 15:29:34 | individually.  Is that a written procedure? |
| 8 | 15:29:38 | A.    No, it is not a written procedure. |
| 9 | 15:29:44 | Q.    Tell us about the fifth line. |
| 10 | 15:29:46 | A.    On 6/25 the U.S. Postal returned the |
| 11 | 15:29:56 | letter we sent to Ms. Virtue for insufficient |
| 12 | 15:30:02 | address.  There is also a P.O. Box that was |
| 13 | 15:30:04 | noted on the application.  So we sent it back |
| 14 | 15:30:08 | out to the P.O. Box address. |
| 15 | 15:30:10 | Q.    And that's the last entry on my |
| 16 | 15:30:16 | exhibit.  Do you know what happened after |
| 17 | 15:30:18 | that? |
| 18 | 15:30:18 | A.    Yes, I do. |
| 19 | 15:30:18 | Q.    Okay.  Go ahead. |
| 20 | 15:30:20 | A.    It is probably in your other exhibits. |
| 21 | 15:30:20 | Q.    Okay. |
| 22 | 15:30:26 | A.    What happened is that we received |
| 23 | 15:30:28 | correspondence from the Bethel Group on 6/14 |
| 24 | 15:30:34 | of 2002 that says that she had resigned for |
| 25 | 15:30:40 | personal reasons and that her employment was |

| | | |
|---|---|---|
| 1 | 15:30:42 | terminated.  So there was no further action |
| 2 | 15:30:44 | taken. |
| 3 | 15:30:48 | MR. FAYETTE:  And you are right.  You |
| 4 | 15:30:50 | have segwayed into my next exhibit. |
| 5 | 15:30:52 | I will ask Mr. Jacobson's |
| 6 | 15:30:52 | assistance and to take out the one-page |
| 7 | 15:30:56 | exhibit designated Exhibit 3. |
| 8 | 15:30:58 | MR. JACOBSON:  Special enrollee form, |
| 9 | 15:31:00 | correct? |
| 10 | 15:31:02 | MR. FAYETTE:  Correct. |
| 11 | 15:31:02 | MR. JACOBSON:  Okay.  The exhibit is |
| 12 | 15:31:04 | being tendered to the witness, No. 3. |
| 13 | 15:31:06 | BY MR. FAYETTE: |
| 14 | 15:31:08 | Q.  Ms. Wendell, can you tell us what this |
| 15 | 15:31:10 | Exhibit 3 is? |
| 16 | 15:31:10 | A.  This Exhibit 3 is a form that we use |
| 17 | 15:31:14 | for special enrollment, and on it Bethel Group |
| 18 | 15:31:20 | has told us that Ms. Virtue has terminated her |
| 19 | 15:31:26 | coverage because of a job termination, and the |
| 20 | 15:31:30 | other reason was that she resigned for |
| 21 | 15:31:32 | personal reasons. |
| 22 | 15:31:34 | Q.  And let's look at the marks at the top |
| 23 | 15:31:40 | of the page.  Well, those look like '04 marks. |
| 24 | 15:31:44 | But from any mark on that page, |
| 25 | 15:31:44 | can you tell us when Starmark received this |

| | | |
|---|---|---|
| 1 | 15:31:48 | special enrollee form? |
| 2 | 15:31:48 | A.   6/14 of 2002. |
| 3 | 15:31:50 | Q.   And please tell us what marking on |
| 4 | 15:31:54 | this exhibit you are looking at. |
| 5 | 15:31:56 | A.   I'm looking at the line on the bottom |
| 6 | 15:31:58 | of the page that says TMR date, 6/14/2002, |
| 7 | 15:32:04 | VCN. |
| 8 | 15:32:04 | Q.   There is a big long number there? |
| 9 | 15:32:06 | A.   Yes. |
| 10 | 15:32:08 | Q.   Can you tell us what that means? |
| 11 | 15:32:08 | A.   That means that this came in through |
| 12 | 15:32:10 | our claims scanning area.  We have an area |
| 13 | 15:32:16 | that we submit claims through, and they get |
| 14 | 15:32:18 | scanned, and that comes from our scanner of |
| 15 | 15:32:22 | claims.  So this document came in through our |
| 16 | 15:32:28 | claims and benefits area. |
| 17 | 15:32:28 | Q.   And where is that area? |
| 18 | 15:32:30 | A.   Oh, you know, I don't really know |
| 19 | 15:32:34 | where that is being processed now.  I'm sorry. |
| 20 | 15:32:36 | Q.   Do you know where it was in 2002? |
| 21 | 15:32:38 | A.   I really don't. |
| 22 | 15:32:40 | Q.   What does "VCN" mean? |
| 23 | 15:32:44 | A.   I'm sorry.  You are beyond my |
| 24 | 15:32:46 | knowledge of why they used that coding.  I'm |
| 25 | 15:32:48 | not sure. |

```
1    15:32:48    Q.    Well, that claims area, do you know if
2    15:32:54    it was in Chicago or in some other state?
3    15:32:58    A.    I really don't know.
4    15:33:02    Q.    Where do you find Exhibit 3?  Where
5    15:33:10    has this been kept since 2002?
6    15:33:12    A.    It was in the underwriting file/admin
7    15:33:14    file that we pulled from off-site.
8    15:33:20    Q.    And the handwriting that's on here,
9    15:33:22    where it says group name, the Bethel Group,
10   15:33:26    and such, do you know whose handwriting that
11   15:33:28    is?
12   15:33:28    A.    No, sir.
13   15:33:30    Q.    Okay.  Go ahead.
14   15:33:32          Did you say yes or no?
15   15:33:34    A.    I said "no, sir."
16   15:33:36    Q.    Well, is that a Starmark employee's
17   15:33:42    handwriting or what?
18   15:33:42    A.    I don't know.
19   15:33:44    Q.    Could this be a record of a telephone
20   15:33:46    call, or is this a form that's --
21   15:33:48    A.    This form is not used for that reason.
22   15:33:50    This form is a form that's handed out to our
23   15:33:54    employers in their employee admin kit to use
24   15:33:58    for the administration of their group.  This
25   15:34:00    is not an internal form.  It is an external
```

```
 1   15:34:04   form.
 2   15:34:04              MR. FAYETTE:  I will ask
 3   15:34:06   Mr. Jacobson's assistance, and turn to the
 4   15:34:06   one-page exhibit that we designated Exhibit 4.
 5   15:34:10   The top of it says "Group Premium."
 6   15:34:16              MR. JACOBSON:  Okay.  It is the one
 7   15:34:16   that looks like a file card?
 8   15:34:18              MR. FAYETTE:  Yes.
 9   15:34:18              MR. JACOBSON:  All right.  The exhibit
10   15:34:22   has been put to the witness, Exhibit 4.
11   15:34:32   BY MR. FAYETTE:
12   15:34:32      Q.   Turning to Exhibit 4, can you tell us
13   15:34:34   what that is, Ms. Wendell?
14   15:34:36      A.   This is actually what is called a fact
15   15:34:40   file form.  It is really not a form.  It is
16   15:34:44   our claims and benefits area has an envelope,
17   15:34:46   and attached to the envelope is a tear-off,
18   15:34:50   which is called this fact file, and that
19   15:34:52   envelope and fact file is used to submit
20   15:34:54   claims.
21   15:35:00      Q.   Okay.  And where was this document,
22   15:35:04   Exhibit 4, found?
23   15:35:06      A.   It was also found in our group and
24   15:35:08   administration file.
25   15:35:08      Q.   Do you know when this document was
```