William A. Earnhart (ABA 9411099)
RICHMOND & QUINN, PC
360 "K" Street, Suite 200
Anchorage, Alaska 99501
Ph:  (907) 276-5727
Fax: (907) 276-2953
wearnhart@richmondquinn.com

Attorneys Third-Party Defendant Trustmark Insurance Company


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


MELISSA VIRTUE,                          )
                                         )
                Plaintiff,               )
                                         )
       v.                                )
                                         )
BETHEL GROUP HOME, INC.,                 )
                                         )
                Defendant.               )
                                         )
BETHEL GROUP HOME, INC.,                 )
                                         )
       Third-Party Plaintiff,            )
                                         )
       v.                                )
                                         )  Case No. 4:05-cv-021-RRB
TRUSTMARK INSURANCE COMPANY;             )
TRUSTMARK LIFE INSURANCE COMPANY;        )
EMPLOYEE WELFARE BENEFIT PLAN            )  **MOTION FOR SUMMARY**
SM46761e0001 (The Plan); AND             )  **JUDGMENT ON ALL CLAIMS**
STARMARKETING AND ADMINISTRATION,        )  **AND MEMORANDUM IN SUPPORT**
INC.,                                    )
                                         )
       Third-Party Defendants.           )
_____)

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

Third-Party Defendants (hereinafter the "Trustmark Defendants"), move the court pursuant to FRCP 56(c) to dismiss the Revised Third-Party Complaint filed against them. It has been established by this court as a matter of law that plaintiff Melissa Virtue has no colorable claim to benefits under the health plan of third-party plaintiff Bethel Group Home ("BGH"). For that reason, none of the Trustmark Defendants' acts or omissions as alleged in the third-party complaint regarding Ms. Virtue's health insurance application could possibly have damaged BGH.

BGH admits that it did not submit Ms. Virtue's application in a timely manner, intentionally altered her application, never paid any premium, and had no expectation that Ms. Virtue would have coverage. Further, BGH agrees that no coverage would exist due to Ms. Virtue's pre-existing condition. Therefore, no relief can be granted on any of the causes of actions alleged against the Trustmark Defendants, and the court is respectfully requested to dismiss all of those causes of action in their entirety and with prejudice.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

# I.   FACTUAL BACKGROUND

## 1.   Procedural History

The original complaint in this matter was filed by plaintiff Melissa Virtue against defendant Bethel Group Home, Inc. ("BGH") in the Superior Court for the State of Alaska, Fourth Judicial District at Bethel, Case No. 4BE-04-19 Civil. BGH removed that case to this court, as Case No. F05-0006 CV (RRB), arguing that federal jurisdiction existed under ERISA.

Ms. Virtue then moved to remand arguing, in part, that ERISA did not apply to plaintiff's complaint because plaintiff was not entitled to benefits under the BGH ERISA plan. Plaintiff's Motion and Memorandum In Support of Order Remanding Case To Alaska State Superior Court[1], at p. 7 ("Ms. Virtue learned that someone had changed her insurance application so that it appeared that Ms. Virtue had waived her right to obtain medical insurance.  Because of that change, Ms. Virtue is not a member of the Bethel Group Home plan, she was never enrolled in that plan, and that plan does not cover

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

---

[1] See Docket No. 7 in Case No. F05-0006 CV (RRB).

the medical expenses from her catastrophic illness."), and <u>id.</u> at 15-16.[2]

In plaintiff's Reply to Opposition to Remand[3], at 9-13, plaintiff expanded on her argument that she was not a participant in the health plan provided for BGH. Plaintiff's argument is summarized at p. 9 of the Opposition:

> Ms. Virtue had no vested benefits, because the BGH negligently waited to process her application and negligently submitted the application without a group policy number and with waiver boxes incorrectly checked. Ms. Virtue has no "colorable claim" because she has no vested benefits.

Plaintiff also noted that neither the plaintiff nor BGH had ever paid any premium on her behalf for the BGH health care plan. <u>Id.</u> at 13. Plaintiff further argued that the Trustmark Defendants would not have processed a new, complete application from Ms. Virtue because at that time she was no longer an employee of BGH. <u>Id.</u> at 10. Finally, and what is critical for the purposes of this motion, plaintiff argued that the Trustmark Defendants' actions regarding plaintiff's application for insurance are irrelevant:

---

[2] The court may take judicial notice of prior pleadings and proceedings in a motion to dismiss. 5C Wright & Miller, <u>Federal Practice and Procedure Civil 3rd</u>, § 1364, p. 138 (2004).

[3] <u>See</u> Docket No. 22 in Case No. F05-0006 CV (RRB).

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

> Whether Starmark[4] received the application is
> irrelevant. Ms. Virtue's claim is that the Bethel
> Group Home [BGH] should have processed the
> application, and followed its human resource
> procedures, and that they were negligent in both
> respects. If Starmark never received Ms. Virtue's
> application, Bethel Group Home is still negligent.
> If Starmark did receive the application, but didn't
> process it because of something BGH failed to do, it
> is still negligent.

Opposition, p. 2.

The parties fully litigated whether plaintiff had any claim to benefits. In this court's June 1, 2005, Minute Order from Chambers ("Order")[5], this court ordered the case to be remanded, and the principal reason stated by the court was plaintiff's argument outlined above:

> The Ninth Circuit has previously determined that
> "[a] former employee is a plan participant only if
> [s]he has 'a reasonable expectation of returning to
> covered employment or [has] a **colorable claim to
> vested benefits**.'" See Harris v. Provident Life &
> Accident, 26 F.3d 930, 933 (9th Cir. 1994) (citation
> omitted). Defendant has failed to establish that
> Plaintiff meets this test or is a Plan participant.
> ERISA, consequently, does not apply and Federal
> jurisdiction is lacking. The matter must therefore
> be remanded to State court. [Emphasis added.]

Finally, in the remanded state court case, BGH filed on August 10, 2005, its Answer and Revised Third-Party Complaint

---

[4] "Starmark" handles marketing and administration for Trustmark Insurance Company and is one of the "Trademark Defendants."

[5] See Docket No. 31 in Case No. F05-0006 CV (RRB).

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

(which was served on the Trustmark Defendants on August 15, 2005). In the third-party complaint, BGH sued the Trustmark Defendants under ERISA, common law and state statutory law. The third-party complaint alleges causes of action against the Trustmark Defendants for apportionment of fault, contractual indemnity, implied indemnity, negligence, breach of the covenant of good faith and fair dealing, equitable estoppel, breach of fiduciary duty, and punitive damages, all of which arise under the administration of an ERISA covered plan and rest on the claim that plaintiff had a "colorable claim" to benefits under the plan. Each of these causes of action will be addressed in detail below.

**2.    Bethel Group Home Never Expected Trustmark Defendants To Provide Coverage To Ms. Virtue**

A number of facts are not in dispute. Melissa Virtue was hospitalized on April 19, 2002, with what was subsequently diagnosed as multiple sclerosis, a pre-existing condition. She was hospitalized until the middle of May 2002. The Trustmark Defendants did not receive her enrollment form until May 13, 2002. See Exhibit A, Enrollment Form; Exhibit B, deposition of B. Wendell at 14. This enrollment waived coverage. Id. at 83-84. Melissa Virtue terminated her employment with BGH on May 17, 2002. See Exhibit C, letter of resignation.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

These dates are important because even if coverage had not been waived, there would be no coverage for Ms. Virtue's pre-existing condition until mid-2003, 10-12 months after she ended her employment, under any circumstances. See Exhibit D, Certificate of Insurance at p. 9 [exhibit page 19] But more importantly, she never could have started coverage. The earliest effective date for coverage was the first of the month following her 90-day waiting period (May 1), regardless of when the application was sent. See Exhibit E, Administrative Handbook at pp. 7 and 9. Coverage would not have become effective until she returned to work for five consecutive days. Exhibit D at 23 [exhibit page 33]. "Effective date of coverage." Plaintiff, however, was flown to a hospital in Anchorage and only worked three days after mid-April. See Exhibits F and G, treatment note and discharge instructions; Exhibit H, timesheets.

On December 2, 2004, BGH's former executive director, Paul Janowiec, was deposed (stating that he was executive director of BGH from July 11, 1999 to February 29, 2004).

As Mr. Janowiec explained, Ms. Virtue would not have applied for health insurance until after her 90-day probationary period. Moreover, her health insurance could not go into effect for her prior to that time because the premium had not been paid:

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS AND MEMORANDUM IN SUPPORT
VIRTUE v. BETHEL GROUP HOME v. TRUSTMARK INS., CASE NO. 4:05-cv-021-RRB
PAGE 7 OF 39

Q.   So under that 90-day qualification period,
     introductory period, when would she become
     eligible for coverage under the Bethel Group
     Home's health plan?

A.   She would—she would apply after her
     probationary period of—assuming that she
     successfully completed the probationary period,
     she would be eligible to apply, you, on—
     January, February, March—to April 22nd, you
     know, would be the first day that she could
     apply.

     That doesn't mean that she would have health
     insurance.  That means that, you know, she was
     supposed to come in and talk to the business
     manager, and, you know, and apply and fill out
     the forms and all that stuff.  And it would be
     then subsequently mailed—

Q.   Is there anything wrong with her doing that
     before the end of the 90-day period to get it
     in the mail so it would be—it could go into
     effect at the end of the 90-day period?

A.   Well, it couldn't go into effect before that
     because the premium hadn't been paid.

See Exhibit I, Janowiec deposition at 123-124.  And see id.,

at 233 ("Q.  .  .  .  You said that the application wouldn't

have been processed until her 90 days had passed?  A.   That's

correct."); id. at 167 ("A.   .  .  .  I mean, we had never

gotten a bill for the premium for her.").

    Mr. Janowiec then admitted that when Ms. Virtue went into

the hospital, her health insurance application was still

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

sitting on his desk and had not been sent in to the insurance

company:

> Q.    . . . I'm asking whether it is true that this
> form did not—this form was still in your office
> at the time that Ms. Virtue was receiving
> medical treatment and seeking to have her
> medical bills paid by the health insurance
> company for Bethel Group Home, and those bills
> weren't getting paid because they had no record
> of her enrollment.

> A.    What—do you—I don't know when—what date, you
> know Melissa then entered the hospital or was
> transported from Bethel to—to Anchorage.  What
> date was that?

>                  . . .

> Q.    My point is, isn't it true that you discovered
> this form in you office when questions began to
> arise about whether or not she was under the
> group home's health insurance plan?

> A.    It wasn't that I discovered it.  I just said
> that I was aware of the fact that the form was
> on my desk all the time.  I mean, it wasn't—you
> are, like, saying it—you are trying to make the
> case that it was lost.  It wasn't lost.  It
> never was lost.  I mean, it was on my desk.

> Q.    But the insurance company didn't have it?

> A.    No, the insurance company didn't have it. . . .

Id. at 159-160.

> Q.    I want to be sure I understand you testimony
> correctly here, Mr. Janowiec.  Do you think
> that the reason that Melissa Virtue's medical
> bills were not being paid by the group home's
> insurance company was because her enrollment
> form was sent in after she got sick?

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

A.    Yes.

                    .  .  .

Q.    Okay.  You don't know what day she went into
      the hospital, but you know that that form was
      in your office or did not leave your office
      until after she was sick?

A.    Yeah.  Because I remember that the form was on
      my desk and—and knowing and hearing that she
      had gotten sick.  And I knew what that meant.
      I knew that she wasn't going to get insurance.

Q.    Okay.  So from that point on you believed she
      was not going to get insurance?

A.    No.  No.

Q.    And—

A.    And whether—whether Alexander sent it in really
      was—was, you know, beside the point.

Id. at 242-244.

     Regarding sending in the application to the Trustmark

Defendants, BGH alleges in the third-party complaint, at

paragraph 11, that "Virtue's enrollment application was sent

to Starmark by letter from BGH employee, Kenneth Alexander, on

April 17, 2002, with a request that she be enrolled in the

group health insurance plan."  The referenced letter is

attached as Exhibit J, and states in full: "Please enroll Ms.

Melissa Virtue, as per the enclosed application, on Bethel

Group Home health plan."  However, Mr. Janowiec unequivocally

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

testified at his deposition that the date of letter is **"bogus"**

and **"baloney**." See Exhibit I, Janowiec Depo. at 170.   Mr.

Janowiec testified that the letter could not have been dated

April 17, 2002, as it stated, because Mr. Alexander, the

business manager, "didn't even have her [i.e., Ms. Virtue's]

application by that time."   Mr. Janowiec then explained that

the **earliest** possible date Ms. Virtue's application could have

been mailed to the Trustmark Defendants was April 22, 2002:

> A.   So, how do you know it's bogus? . . .
>
> Q.   Well, I don't know it as a matter of fact, but
>      I know as a matter of practice no one would
>      have ever mailed it in to the insurance company
>      until—on the 22nd at the earliest—very
>      possible—very earliest, April 22nd, would have
>      been mailed out of Bethel . . . . on the 22nd,
>      April 22nd, and that would be the absolute . .
>      . the absolute earliest possible time that that
>      form would be mailed in to the insurance
>      company.

Id. at 170-171.

Because the application had not been sent to the

Trustmark Defendants and because no premium had been paid, Mr.

Janowiec and BGH understood that no health coverage was owed

to Ms. Virtue:

> A.   . . . So I doubt seriously that, you know, an
>      insurance company is going to cover something
>      that would—you know, that they had not—you
>      know, I mean, they probably had not received

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

> the application, and they certainly—we hadn't
> paid for the premium.

Id. at 168.

> Q.   Did you make any kind of inquiry as to why it
>      was that she didn't have coverage?
>
> A.   Well, no, because, I mean, we had never paid a
>      premium.   I mean, I—it was—you know, I knew
>      that she didn't have coverage, then after she
>      came back—
>
> Q.   I'm trying to figure out how did you know that?
>
> A.   Because it was handed as a matter of course to
>      Ken Alexander, and, you know, he mailed it in
>      after he went into the hospital.

Id. at 169-170.

> A.   . . . What happened was that she got sick
>      before the thing was probably even mailed to
>      the health insurance, and certainly before, you
>      know, any premiums were paid.   And no insurance
>      company is going to insure her for, you know,
>      multiple sclerosis or for anything that had to
>      do with multiple sclerosis.

Id. at 190.

Mr. Janowiec and BGH were also of the opinion that Ms.
Virtue would have been turned down for health coverage on her
pre-existing multiple sclerosis:

> A.   . . . I mean, the reason why we didn't beat the
>      bushes then was because she was sick, and she
>      had a preexisting condition.

Id. at 191.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

A.    And so I don't think that insurance companies
      are in the business of paying medical costs for
      illnesses and accidents that occur before the
      person is insured.  So—and, I mean, that's
      essentially what happened here.

Id. at 192.

A.    . . . I mean, they should have—I mean, assuming
      that she was—that everything was sent in to
      them correctly ... they probably wouldn't have
      paid for the stuff that had happened, you know,
      before the policy went into effect, but they,
      you know, still would have issued insurance to
      her, unless they turned her down completely,
      which I don't think they would have.  They
      would have probably excluded, you know,
      treatment for MS.

Id. at 207.

### 3.    Bethel Group Home Intentionally Altered Ms. Virtue's Application

On or about April 16, 2002, Ms. Virtue was handed an
application for insurance benefits and told to sit down and
complete the application with the Executive Director Janowiec.
See Virtue Deposition, Exhibit K at 111.  As noted above, the
personnel policy required that Janowiec meet with the employee
and "complete enrollment materials."   See Policy #PM54,
Exhibit L.

Janowiec told Ms. Virtue that he would fill out the group
number and name boxes because that information was not
available to Ms. Virtue.  Virtue Deposition, Exhibit K at 110-

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

112.   Janowiec confirmed that it was his responsibility to ensure that the application was filled out correctly.   See Janowiec Deposition, Exhibit I at 148-149.   Janowiec explained that he reviewed all applications personally as an extra safeguard to ensure that the application was filled out properly, because a previous BGH employee was turned down for improperly filling out the application.  See id. at 148, 154.

The application that Ms. Virtue completed is attached as Exhibit A.   Throughout the document, Ms. Virtue placed an "x" on each section other than the check marks on the last page of the document, purporting to waive coverage.  See id.

Business Manager Alexander said he confirmed with Janowiec that Ms. Virtue would receive health insurance the day following her 90-day period, and he took Ms. Virtue's completed application the same day it was filled out and wrote a cover letter to BGH's insurance company and asked that Ms. Virtue be enrolled.   See Alexander Affidavit, Exhibit M at ¶¶ 6-7.   The cover letter written by Alexander, dated April 17, 2002, stated "please enroll Ms. Melissa Virtue, as per the enclosed application."  See Alexander cover letter, Exhibit J.

On April 22, 2002, Ms. Virtue was hospitalized.   Ms. Virtue remained in the hospital for several weeks and in May

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

2002, was diagnosed with multiple sclerosis.   See Medical

Records, Exhibits F & G.   Unlike Janowiec, in response to Ms.

Virtue's call, Alexander looked for and found the original

application on Janowiec's desk.   See Alexander Affidavit,

Exhibit M at ¶ 10.   The outrageous facts of what happened are

detailed by Alexander's sworn statement as follows:

> While Ms. Virtue was in the hospital, she also
> called me and asked about her insurance, because she
> said the hospital kept asking about insurance.   In
> response, I looked for and found the original
> application on Mr. Janowiec's desk.   I looked at the
> application, and there were no waivers by Ms. Virtue
> of her insurance benefits.   I asked Mr. Janowiec why
> he did not mail the application, and he said "don't
> worry about it."   **He also asked me to re-do the
> application so she would not be covered,** but I told
> him that I would not do that.   Several days
> thereafter, Mr. Janowiec handed me a copy of the
> application.   Again, I asked if he mailed it so Ms.
> Virtue would get insurance, and he said **"don't worry
> about it, she has waived coverage."**   He told me to
> file the copy, which now had check marks on it,
> purporting to waive insurance coverage.   Again, I
> know Mr. Virtue did not, and would not, waive
> coverage.

See Alexander Affidavit, Exhibit M at ¶¶ 10-13 (emphasis

added).

Ms. Virtue returned to Bethel Group Home to work after

her hospitalization, but resigned on May 17, 2002.   While she

was back at work, she again asked Janowiec about insurance

because Ms. Virtue was starting to get bills from the

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

hospitals. <u>See</u> Virtue Deposition, Exhibit K at 154-155.    In

her deposition, Ms. Virtue explained:

> I mean, every time I brought up insurance, he kept
> saying that he would check on it, but he never got
> back to me.  He never checked on it.  He never - he
> didn't follow up on it.   He tried to avoid me
> because I was asking him about it.  So then, after
> this last conversation, I was very frustrated
> . . . .

<u>See</u> Virtue Deposition, <u>id.</u>

In his deposition, Janowiec confirmed that he had

declared bankruptcy twice, and felt he had the "exact same

situation" as Ms. Virtue.   <u>See</u> Janowiec Deposition, Exhibit I

at 180-181.   Janowiec admitted that he told Ms. Virtue to

declare bankruptcy, something he "offered as a suggestion, as

a positive suggestion as to how to cope with all those -

bills." <u>See</u> <u>id.</u> at 168.  He admitted he failed to give her

any reason why she was not covered by health insurance.   <u>See</u>

<u>id.</u> at 204.

Janowiec confirmed that Ms. Virtue gave him the insurance

application once it was completed, and he said that he would

take care of it for her.  <u>See</u> <u>id.</u> at 177.  Janowiec admitted

that the reason Ms. Virtue did not have coverage and the

reason why he suggested that Ms. Virtue file for bankruptcy,

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

was because Janowiec knew the application had not been mailed

and no premiums had been paid:

> So I seriously doubt that, you know, an insurance
> company is going to cover something that would – you
> know, that they had not – you know, I mean, they
> probably had not received the application, and they
> certainly – we hadn't paid the premiums.

See id. at 168.

Finally, in his deposition, Janowiec confirmed that he

found the insurance application on his desk, and that it had

not been mailed. Janowiec testified that he did nothing:

> Q.   When you learned that Ms. Virtue was sick, and
>      that this enrollment form was still on your
>      desk, what did you do to see if she could be
>      placed under the Bethel Group Home's Health
>      coverage plan?
>
> A.   Nothing.  I mean I assumed that she had – was
>      already sick.  I mean, I didn't, – I hadn't,
>      you know, had any contact with the health
>      insurance people . . .
>
> Q.   Okay.  So did you – or well, did you have any
>      contact with Starmark to wee whether Ms. Virtue
>      could be listed under your policy?
>
> A.   No.  No.
>
> Q.   Did you ask anyone else at the Group Home to
>      investigate that?
>
> A.   No.  No.
>
> Q.   but my question was: Did you or anyone at the
>      Group Home make any effort to see if she could
>      be placed on your . . .

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

A.    No.  No.

Q.    . . . insurance policy.

A.    No.  No.

Q.    You just assumed that that could not be done because she - she was already sick?

A.    That's correct.  Because she - she was already sick then.

See id. at 185-186, 189.  Later in Mr. Janowiec's deposition, his failure to do anything to assist Ms. Virtue in securing health benefits was again addressed as follows:

Q.    So you find out that you have an employee and she's sick?

A.    Uh-huh.

Q.    And you sent - and the form was still on your desk when you knew she was sick?

A.    Uh-huh.

Q.    And she comes back, and she's got huge medical bills and you do nothing to find out if the insurance company will pay the bills for your employee?

A.    No I didn't.  And I wouldn't - I mean as an employer, you know, we felt that - I felt that we had done our, you know, duty.  We sent the application in . . . we wouldn't necessarily, you know, intervene with the insurance company.

See id. at 209.

BGH received monthly written verifications stating the names of the employees that were receiving health insurance,

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2036
(907) 276-5727
FAX (907) 276-2953

and Starmark never received any information from BGH that Melissa Virtue needed to be enrolled or that a mistake had been made in not including her. See Deposition of Bernadine Wendell, Vice President of Administration, Exhibit B at 86. No one from BGH followed up on the application, called, checked or did anything to help Ms. Virtue get enrolled. See id. at 103.

Mr. Alexander, as the business manager of BGH, conceded that the corporation had a duty to make sure that applications were accurately completed and timely mailed, and that employees got insurance benefits promised to them. See Alexander Affidavit, Exhibit M at 14. He also conceded that BGH breached such duty. See id.

## II.   ARGUMENT

### THE THIRD-PARTY COMPLAINT MUST BE DISMISSED

### 1.   It Is The "Law Of The Case" That Plaintiff Did Not Have A Colorable Claim For Benefits

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." United States v. Smith, 389 F.3d 944, 948 (9th Cir.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

2004).   The "law of the case" doctrine must be applied unless a few narrow exceptions apply:

> A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion.

United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

None of the exceptions to application of the "law of the case" doctrine is present in this case.   Therefore, the Order of this court has established as the law of the case herein that (1) plaintiff was not a participant in the BGH health plan, (2) because of the actions of BGH.   Therefore, no claim can be made against the Trustmark Defendants.   There can be no claim that the Trustmark Defendants mishandled Ms. Virtue's application or claim because there is no colorable claim to vested benefits under the Plan.   Moreover, there can be no question that the third-party claims in this case would be governed by ERISA as they relate to the "administration" of an ERISA plan.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

2.   **There Is No Genuine Issue Of Material Fact That No Case Exists Against The Trustmark Defendants**

A.   <u>STANDARDS FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the party is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(c). One of the primary purposes of the summary judgment procedure is to "isolate and dispose of factually unsupported claims or defenses."  <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The U.S. Supreme Court has stated:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

<u>Id.</u> at 322.

As movants, the Trustmark Defendants bear the initial burden of establishing the absence of a genuine issue of material fact.  <u>Id.</u> at 323.  However, once a properly supported motion for summary judgment is made, the burden shifts to the plaintiffs to "set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A mere "scintilla" of evidence will not be sufficient to defeat defendants' motion;

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

rather, plaintiffs must introduce some "significant probative evidence" intending to support their claim.  Id. at 242, 249; Summers v. A. Teichert and Sons, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  If plaintiff's evidence is merely colorable or not significantly probative, summary judgment should be entered for defendants.  Eisenberg v. Insurance Company of North America, 815 F.2d 1285, 1288 (9th Cir. 1987).

**B.   ARGUMENT**

It is undisputed that Melissa Virtue would not have been entitled to coverage under any Trustmark policy, given the earliest effective date of coverage would have been May 1, 2002, and would have required her to return to work for at least five consecutive days.  Further, under the pre-existing condition exclusion, no coverage for her multiple sclerosis would have existed for at least six months under the terms of the policy, long after her voluntary termination from Bethel Group Home.  Because no coverage exists under the policy, there can be no claim for damages under the policy.

More importantly, there is no genuine issue of material fact as to the undisputed fact that Bethel Group Home did not mail Ms. Virtue's application to Starmark until mid-May 2002, well after her hospitalization in mid-April.  It is also

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

undisputed that Bethel Group Home, or one of its employees, intentionally altered Ms. Virtue's application to waive coverage. It is also undisputed that Bethel Group Home further confirmed and compounded this situation by providing a special enrollment form in June stating that Ms. Virtue had "previously waived coverage" and had been voluntarily terminated. See Exhibit N.

It is undisputed that Ms. Virtue's enrollment form did not include a group number in which to identify the policy for which she was applying. It is also undisputed that Bethel Group Home did not expect and did not intend for Ms. Virtue to receive coverage with the Trustmark Defendants. Thus, Bethel Group Home's argument that Trustmark had a duty to insure Ms. Virtue is contrary to the clear and undisputed facts of this case. Consequently, summary judgment should be granted in favor of the Trustmark Defendants.

3.    **Under The Law Of This Case, Each Count In The Complaint Should Be Dismissed.**[6]

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

---

[6] Trustmark Defendants do not concede that state law claims are applicable in this case. Third-party plaintiff's claims arise, if at all, out of the administration of a benefits plan subject to ERISA. Thus, the jurisdiction over this matter resides in this court. Under ERISA, common law and state law claims are barred. 29 U.S.C. 1144.

a.   **Count I (Apportionment of Fault) Should Be
Dismissed**

Count I of the third-party complaint is for apportionment
of fault, and alleges that to the extent Ms. Virtue was
damaged by the "failure to properly process her health
insurance application and/or failure to receive health
benefits," those damages were caused by the "fault and/or
unreasonable conduct" of the Trustmark Defendants.

It is the law of the case that it was the actions of BGH
regarding the application which caused Ms. Virtue not to have
plan participant status.   The actions of the Trustmark
Defendants regarding the application could not and did not
cause Ms. Virtue not to be a plan participant.   Rather, it was
the state of the application as received by the Trustmark
Defendants from BGH which caused Ms. Virtue not to have plan
participant status.   Thus, whatever the Trustmark Defendants
did or did not do regarding the application is irrelevant as
to the claims made by Ms. Virtue.   Any fault for Ms. Virtue's
alleged damages in this case rests entirely with BGH.
Therefore, BGH cannot apportion fault for those damages to the
Trustmark Defendants.

BGH also alleges in Count I that plaintiff's damages
would be preempted by ERISA and "by the terms of the Plan

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

and/or by common law or contractual duties.  Trustmark and/or

Starmark and/or the Plan are responsible for these damages."

However, because Ms. Virtue was not a plan participant, the

terms of the Plan are not applicable and cannot be the basis

for apportionment of fault.    The Trustmark Defendants are

aware of no doctrine under common law which would impose

liability on them, and require that they be apportioned fault

regarding a health plan in which the plaintiff did not have a

colorable claim to benefits.    Finally, "contractual duties"

cannot be the basis for apportionment.   Ms. Virtue was not a

plan participant because of BGH's actions, thus no contractual

duties for the Trustmark Defendants arose as regarding Ms.

Virtue's claims.    Therefore, Count I should be dismissed in

its entirety.

> **b.    Count II (Contractual Indemnity) Should Be
> Dismissed**

In Count II, BGH seeks contractual indemnity "to the

extent plaintiff's complaint alleges she was damaged by the

failure to properly process her health insurance application

and/or failure to receive health benefits," and alleges that

the Trustmark Defendants had the contractual duty to

accurately process Ms. Virtue's application regardless of any

defects.   It is the law of this case that Ms. Virtue's damages

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

did not arise from anything the Trustmark Defendants did in processing her application, but arose from BGH's actions. Any "contractual duty" alleged by BGH cannot be based on the health plan, because Ms. Virtue was never a plan participant and so the Trustmark Defendants owed no duties under that plan to BGH regarding Ms. Virtue. In addition, Trustmark Defendants are aware of no other contract, and are confident that BGH can point to no other contract, which provides that the Trustmark Defendants must indemnify BGH in this situation. Therefore, the allegations which underlie BGH's contractual indemnity claim are groundless as a matter of law and Count II should be dismissed in its entirety.

Finally, as noted above, there are no damages in this case for which the Trustmark Defendants may potentially be liable. For this additional reason, this count does not state a cause of action against the Trustmark Defendants and should be dismissed.

### c.    Count   III   (Implied   Indemnity)   Should   Be Dismissed

In Count III, BGH seeks implied indemnity "to the extent, if any, plaintiff was damaged by Trustmark's and/or Starmark's failure to properly process her health insurance application and/or failure to receive health benefits." To begin with,

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

Alaska law does not recognize a cause of action for implied tort indemnity. AVCP Regional Housing Authority v. R.A. Vranckaert Co., Inc., 47 P.3d 650, 653 and 657 (Alaska 2002); Vertecs Corp. v. Reichhold Chemicals, 661 P.2d 619, 626 (Alaska 1983); Carriere v. Cominco Alaska, Inc., 823 F. Supp. 680, 688 (D. Alaska 1993). To the extent that Count III purports to state a claim for implied tort indemnity, it does not state a viable cause of action and should be dismissed.

Regarding implied contractual indemnity, the Alaska Supreme Court has stated that such indemnity:

> . . . rests on the principle that a contract to perform a service contains an implied promise: "1) the indemnitor will perform the service in a proper manner, or 2) the indemnitor will discharge foreseeable damages resulting from improper performance, unless 3) the indemnitee's own participation in causing the damages precludes recovery."

AVCP, 47 P.3d at 657 (quoting Fairbanks North Star Borough v. Kandik Construction, 823 P.2d 632, 636 (Alaska 1991)). Further, to recover on an implied contractual indemnity claim, BGH cannot be liable, except vicariously, to Ms. Virtue, and must have obtained from Ms. Virtue a release of liability for all direct claims which she may have had against the Trustmark Defendants. AVCP, 47 P.3d at 658.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

Under these standards, BGH does not have a cause of action for implied contractual indemnity. It is the law of this case that Ms. Virtue's damages did not arise from anything the Trustmark Defendants did in processing her application. Rather, plaintiff's damages arose from BGH's actions regarding the application. Thus, no failure by the Trustmark Defendants to properly perform its services could have caused any damages to Ms. Virtue. It further follows from the law of the case that BGH's own participation caused Ms. Virtue's damages. Consequently, any liability BGH may have to Ms. Virtue is direct, not vicarious. It is also undisputed that BGH has neither settled with Ms. Virtue nor obtained a release of any liability from Ms. Virtue for any claims she may have against the Trustmark Defendants. Id. Therefore, the standards for implied contractual indemnity cannot be met by BGH under the law of the case.

Moreover, any implied indemnity alleged by BGH cannot be based on the Plan itself. Ms. Virtue has no colorable claim to benefits under the Plan and, thus, the Trustmark Defendants owed no duties to BGH under that plan as regards Ms. Virtue. Trustmark Defendants are aware of no other contract, and are confident that BGH can point to no other contract, which would

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

support an implied indemnity cause of action against the Trustmark Defendants.

In addition, as discussed above, there are no damages in this case for which the Trustmark Defendants may potentially be liable. Absent damages, this count does not state a cause of action against the Trustmark Defendants.

Therefore, for the reasons stated above, Count III should be dismissed in its entirety.

### d.   Count IV (Negligence) Should Be Dismissed

In Count IV, BGH alleges that the Trustmark Defendants are liable in negligence "to the extent plaintiff's complaint alleges she was damaged by the failure to properly process her health insurance application and enroll her, and/or by the failure to provide group health benefits to her," and alleges that the Trustmark Defendants had "common law and statutory duties of reasonable care" to BGH and to Ms. Virtue.

Essential elements in a negligence cause of action are duty, breach of duty, and damages or injury. See Walden v. Department of Transp., 27 P.3d 297, 301 (Alaska 2001); Lyons v. Midnight Sun Transp. Services, Inc., 928 P.2d 1202, 1204 (Alaska 1996). Because Ms. Virtue never had a colorable claim to benefits due to the actions of BGH, the Trustmark

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

Defendants owed no duties to either Ms. Virtue or to BGH regarding Ms. Virtue's application. Since no duty existed, the Trustmark Defendants could not have breached any duty. Thus, the elements of duty and breach are absent.

Therefore, as the law of this case establishes that the elements of negligence cannot be proved by BGH, Count IV should be dismissed in its entirety.

        **e.**   **Count V (Breach of Implied Covenant Of Good Faith And Fair Dealing) Should Be Dismissed**

Count V is a mix of allegations of bad faith based on alleged violations of Alaska statutes and an Alaska regulation, and an alleged breach of the implied covenant of good faith and fair dealing.

First, BGH alleges that the Trustmark Defendants violated AS 21.36.125 (the Unfair Claims Settlement Practices Act), and 3 AAC 26.040 (regarding claim communication) regarding Ms. Virtue's claim under BGH's Plan. However, since Ms. Virtue did not have any claim for benefits, she could not have had any valid claim under the Plan. Absent such a valid claim, AS 21.36.125 and 3 AAC 26.040 are inapplicable and cannot support a cause of action against the Trustmark Defendants.

BGH also alleges that the Trustmark Defendants violated AS 21.54.040 by requiring Ms. Virtue to fill out an enrollment

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

application for health insurance. AS 21.54.040 provides: "An individual application may not be required from a person covered under a blanket health insurance policy or contract, nor is it necessary for the insurer to furnish each person a certificate." BGH's claim is without merit because AS 21.54.040 applies only to a "blanket health insurance policy," and the Plan at issue in this case is not a "blanket health policy." The term "blanket health policy" is defined in AS 21.54.070 to include only certain very specifically enumerated groups, none of which include BGH.[7] Instead, the

---

[7] AS 21.54.070 provides:

Blanket health insurance is declared to be that form of health insurance covering groups of persons as enumerated in one of the following subdivisions:

(1) under a policy or contract issued to a common carrier or to an operator, owner, or lessee of a means of transportation, who or which shall be considered the policyholder, covering a group of persons who may become passengers defined by reference to their travel status on the common carrier or the means of transportation;

(2) under a policy or contract issued to an employer, who shall be considered the policyholder, covering a group of employees, dependents, or guests, defined by reference to specified hazards incident to an activity or activities or operations of the policyholder;

(3) under a policy or contract issued to a college, school, or other institution of learning, a school district or districts, or school jurisdictional unit,

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

or to the head, principal, or governing board of an educational unit, who or which shall be considered the policyholder covering students, teachers, or employees;

(4) under a policy or contract issued to a religious, charitable, recreational, educational, or civic organization, or branch of them, which shall be considered the policyholder, covering a group of members or participants defined by reference to specified hazards incident to an activity or activities or operations sponsored or supervised by the policyholder;

(5) under a policy or contract issued to a sports team, camp, or sponsor of them, which shall be considered the policyholder, covering members, campers, employees, officials, or supervisors;

(6) under a policy or contract issued to a volunteer fire department, first aid, civil defense, or other volunteer organization, which shall be considered the policyholder, covering a group of members or participants defined by reference to specified hazards incident to an activity or activities or operations sponsored or supervised by the policyholder;

(7) under a policy or contract issued to a newspaper or other publisher, which shall be considered the policyholder, covering its carriers;

(8) under a policy or contract issued to an association, including a labor union, that has a constitution and bylaws and that has been organized and is maintained in good faith for purposes other than that of obtaining insurance, which shall be considered the policyholder, covering a group of members or participants defined by reference to specified hazards incident to an activity or activities or operations sponsored or supervised by the policyholder;

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

Plan at issue is a "group health policy" as is defined in AS 21.54.060.[8] In fact, BGH's own third-party complaint refers

---

(9) under a policy or contract issued to cover any other risk or class of risks that, in the discretion of the director, may be properly eligible for blanket accident and sickness insurance; the discretion of the director may be exercised on an individual risk basis or class of risks, or both.

[8] AS 21.54.060 provides in relevant part:

Group health insurance is that form of health insurance covering groups of persons as defined below, with or without one or more members of their families or one or more of their dependents, or covering one or more members of the families or one or more dependents of the groups of persons and issued upon the following basis:

(1) under a policy issued to an employer or trustees of a fund established by an employer, who shall be considered the policyholder, insuring employees of the employer for the benefit of persons other than the employer; in this paragraph the term "employees" includes the officers, managers, and employees of the employer, the individual proprietor or partner if the employer is an individual proprietor or partnership, the officers, managers, and employees of subsidiary or affiliated corporations, the individual proprietors, partners, and employees of individuals and firms if the business of the employer and the individual or firm is under common control through stock ownership, contract, or otherwise; in this paragraph, "employees" may include retired employees; a policy issued to insure employees of a public body may provide that the term "employees" includes elected or appointed officials; the policy may provide that the term "employees" includes the trustees or their employees, or both, if their duties are principally connected with the trusteeship; a policy issued to insure employees of a corporation may provide that the term

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

to the BGH policy as a "group" policy — see Revised Third-Party Complaint at ¶¶ 3, 8, 9, 11, 30, 38—and also refers to BGH's "group" number under the policy — see id. at ¶¶ 12, 13, 16, 29, 30, 32(a), 40, 41.   Under the statutory scheme, a "group" policy is clearly separate and distinct from a "blanket" policy, and AS 21.54.040 simply does not apply to a "group" policy.   Therefore, since this matter does not involve a "blanket" policy, AS 21.54.040 is inapplicable and cannot support a cause of action against the Trustmark Defendants.

As for the allegation of breach of the implied covenant of good faith and fair dealing, the implied covenant can only arise from a contract between the parties.   See Casey v. Semco Energy, Inc., 92 P.3d 379, 384 (Alaska 2004)("The covenant of good faith and fair dealing is implied in all contracts in Alaska.").   There is no contract in this case from which the implied covenant of good faith and fair dealing can exist.   As was discussed above, because Ms. Virtue had no contract with the Trustmark Defendants, no implied covenant of good faith and fair dealing existed to be breached.   Trustmark Defendants are aware of no other contract, and are confident that BGH can

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

"employees" includes directors of the corporation, whether or not the directors receive compensation; . . . .

point to no other contract, which would support an allegation of breach of the implied covenant of good faith and fair dealing. Therefore, Count V should be dismissed in its entirety.

In addition, as discussed above, there are no damages in this case for which the Trustmark Defendants may potentially be liable. For this additional reason, Count V does not state a cause of action against the Trademark Defendants and should be dismissed.

### f.   Count VI (Equitable Estoppel) Should Be Dismissed

In Count VI, BGH alleges that the Trustmark Defendants are "estopped to deny Ms. Virtue coverage under the terms of the Plan." However, the court's Order recognizes that, because Ms. Virtue had no colorable claim to benefits, she was never entitled to coverage. The Trustmark Defendants cannot be estopped into providing coverage to which Ms. Virtue had no entitlement. This is especially so since the Order also recognizes that the reason Ms. Virtue had no coverage was because of the actions of BGH. Therefore, Count VI should be dismissed in its entirety.

Additionally, damages, an essential element of equitable estoppel, are absent because there are no damages in this case

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

for which the Trustmark Defendants may potentially be liable. See Waage v. Cutter Biological Div. of Miles Laboratories, Inc., 926 P.2d 1145, 1149 n.7 (Alaska 1996) ("The elements of a . . . equitable estoppel claim are a fraudulent concealment, justifiable reliance, and damage"). For this additional reason, Count VI does not state a cause of action against the Trademark Defendants and should be dismissed.

### g.    Count VII (Breach Of Fiduciary Duty) Should Be Dismissed

In Count VII, BGH alleges that the Trustmark Defendants "owed fiduciary duties to BGH and its employees in the administration of the Plan." Where these alleged fiduciary duties are supposed to have arisen from is not mentioned by BGH, but it is assumed that the third-party complaint refers to the fiduciary duties which may be imposed by ERISA. However, the Order established that ERISA was not applicable because Ms. Virtue was not a plan participant; thus, the Trustmark Defendants could not have had any fiduciary duties under ERISA in this matter. That is, because Ms. Virtue was never a plan participant due to the actions of BGH, the Trustmark Defendants cannot have owed any fiduciary duties to Ms. Virtue or to BGH regarding Ms. Virtue. There being no fiduciary duties, the Trustmark Defendants could not have

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET, SUITE 200
ANCHORAGE, ALASKA 99501-2238
(907) 276-5727
FAX (907) 276-2953

breached any fiduciary duties. Thus, Count VII should be dismissed in its entirety.

### h. Count VIII (Punitive Damages) Should Be Dismissed

Count VIII for punitive damages is not a separate cause of action in itself, but is based on the other allegations and causes of action in the third-party complaint. Because those other allegations and causes of action must be dismissed, it follows that the claim for punitive damages must also be dismissed in its entirety.

### III. CONCLUSION

This matter is a claim against Bethel Group Home for violating an employment agreement and committing fraud. BGH realizes there is no claim against Trustmark Defendants in the above-captioned matter. Plaintiff, Melissa Virtue, realizes there is no claim against Trustmark Defendants in the above-captioned matter. This court has previously recognized implicitly that there can be no claim against the Trustmark Defendants. However, BGH's counsel has brought an unfounded third-party complaint with no viable claims.

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953

For the reasons stated above, the court is respectfully requested to dismiss the Revised Third-Party Complaint against the Trustmark Defendants in its entirety and with prejudice.

DATED this 1st day of September, 2006, at Anchorage, Alaska.

RICHMOND & QUINN
Attorneys for Third-Party
Defendants

By:      s/ William A. Earnhart
RICHMOND & QUINN, PC
360 "K" Street, Suite 200
Anchorage, Alaska 99501
Ph:  (907) 276-5727
Fax: (907) 276-2953
wearnhart@richmondquinn.com
Alaska Bar. No. 9411099

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically served this 1st day of September, 2006 to:

Jim J. Valcarce
COOK ROOSA & VALCARCE
Box 409
Bethel, Alaska 99559-0409

Cynthia L. Ducey
DELANEY WILES HAYES GERETY ELLIS & YOUNG
1007 W. 3rd Ave., Ste. 400
Anchorage, Alaska 99501-1936

Richard Friedman
FRIEDMAN RIBIN & WHITE
1126 Highland Ave.
Bremerton, WA 98337-3218

Margaret Simonian   (courtesy copy)
FRIEDMAN RUBIN & WHITE
1227 W. 9th Ave., 2nd Floor
Anchorage, Alaska 99501-3218


        /s/ William A. Earnhart
        RICHMOND & QUINN

2241\001\PLD\SJM (ALL CLAIMS)

LAW OFFICES
RICHMOND & QUINN
A PROFESSIONAL CORPORATION
360 K STREET SUITE 200
ANCHORAGE, ALASKA 99501-2038
(907) 276-5727
FAX (907) 276-2953