Cynthia L. Ducey
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska  99501
(907) 279-3581
(907) 277-1331 fax
cld@delaneywiles.com

Attorneys for Bethel Group Home, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MELISSA VIRTUE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BETHEL GROUP HOME, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |
| BETHEL GROUP HOME, INC., | ) |
| | ) |
| Third Party | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TRUSTMARK GROUP HEALTH | ) |
| BENEFITS PLAN, through | ) |
| TRUSTMARK INSURANCE CO., | ) |
| plan underwriter and insurer, | ) |
| STARMARKETING AND | ) |
| ADMINISTRATION, INC., aka | ) |
| STARMARK, d/b/a Plan Sponsor/ | ) |
| Administrator, | ) |
| | ) |
| Third Party | ) |
| Defendants. | ) |
| _____ | ) Case No. 4:05-cv-0021 CV (RRB) |

## BETHEL GROUP HOME'S MOTION FOR A CONTINUANCE TO CONDUCT DISCOVERY TO RESPOND TO AND OPPOSE STARMARK'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant, Bethel Group Home, Inc., (hereinafter "BGH"), by and through its attorneys of record, Delaney Wiles, Inc., files this motion for a continuance to conduct discovery to respond to the motion for summary judgment filed by Third-party Defendants Trustmark Group Health Benefits Plan, through Trustmark Insurance Co., plan underwriter and insurer, Starmarketing and Administration Inc., aka Starmark, d/b/a Plan Sponsor/Administrator (collectively "Starmark").[1] In summary, the Court should grant BGH's motion for a continuance to conduct discovery because (1) BGH has not yet been able to conduct sufficient discovery of Starmark because of Starmark's failure to produce a knowledgeable 30(b)(6) representative on all subjects designated and other Starmark employees involved with Melissa Virtue's health insurance application; (2) the proposed discovery of Starmark may establish a material issue of fact demonstrating Starmark's intentional or negligent actions in processing Melissa Virtue's application caused Virtue's and BGH's damages; (3) BGH's motion is timely as discovery does not close for nine months; and (4) BGH will be severely prejudiced in attempting to respond to Starmark's motion for summary judgment given the lack of meaningful discovery yet to take place and because BGH is currently busy preparing for trial in the original state court case filed by Virtue that begins on October 9, 2006.

### FACTUAL AND PROCEDURAL BACKGROUND

BGH was a public benefit nonprofit corporation engaged in the charitable purpose of providing treatment and therapeutic care for minor children.  Exh. A at Tr. [68:2-70:12] (Janowiec

---

[1] In this motion reference to Starmark includes its parent corporation Trustmark, and the Plan. Starmark was the administrator of the health insurance plan.

ΔELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                                    Page 2 of 29

Deposition).  BGH contracted with Trustmark Insurance Company to provide employees with

group health benefits. BGH secured a policy underwritten by Trustmark Insurance Company and

administered by Starmark (collectively "Starmark").  Exh. B at 1-51 (Certificate of Insurance);

Exh. C at 1-41 (Administration Guide); Exh. D at Tr. [17:18-19:3] (Wendell Deposition).

Melissa Virtue was an employee of BGH who applied for health insurance through

Starmark in April 2002.  Virtue claims that BGH and Starmark caused her to not become enrolled

with health insurance, *see* Exh. E (Alaska Legal Services Letters), and has filed suit against BGH

for BGH's actions in processing her application.  *See* Virtue's Complaint.  This portion of the case

was remanded to state court on November 21, 2005, and the Bethel Court set trial on an expedited

discovery and trial schedule, with three months for discovery and trial set for October 9, 2006.

Starmark received an enrollment application from Virtue on May 13, 2002 but refused to

process Virtue's application for coverage.  Instead notified Virtue by form letter dated May 15,

2002, that it needed more information to process her application.  Exh. F at 1 (Starmark

Notification to Virtue); Exh. D at Tr. [27:5-21] (Wendell Deposition).   Starmark did this even

though it already possessed the information it requested in the form sent back to Virtue and even

though it was BGH that submitted the application on its letterhead stationary.  Exh. D at Tr. [33:6-

38:22] (Wendell Deposition); Exh. F at 1 (Starmark  Notification to Virtue); Exh. G at 1 (Virtue's

Application).  Starmark made no attempt to notify BGH that there was any omission or needed

information.  If Starmark had processed the application when it was received, Virtue would have

had benefits at the soonest date she was eligible May 1, 2002.  Exh. D at Tr. [46:7-9; 77:3-7]

(Wendell Deposition).

Virtue initially sued only BGH in state court.  BGH moved to amend the pleadings to add

Starmark as a third-party defendant on June 22, 2005.  The motion was unopposed and was

Delaney Wiles, Inc.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)

granted. Claims asserted by BGH against Trustmark/Starmark included a claim for apportionment of fault to Starmark for any damages suffered by plaintiff. *See* BGH amended answer and third-party complaint, Count I, at 8-9. On August 29, 2005, Starmark removed the action to United States District Court. *See* Notice of Removal dated August 29, 2005. Following a motion to remand filed by Virtue on September 28, 2005, this Court remanded the claims Virtue made against BGH. However, this Court retained jurisdiction of the claims BGH asserted against Starmark, and the apportionment of fault claim implicated in the underlying state court lawsuit involving the claims Virtue asserted against BGH. Following remand, the state court set trial on an expedited basis to begin in about three weeks on October 9, 2006, the federal court case, including discovery in the federal court case, is still in its infancy.

In January 2005 before Starmark was a party to these proceedings, BGH noticed the deposition of Starmark pursuant to Alaska R. Civ. Proc. 30(b)(6). Exh.H (Notice of 30(b)(6) Deposition dated January 5, 2005). However, Starmark failed to produce a 30(b)(6) representative that was able to "testify as to matters known or reasonably available to the organization" regarding numerous topics. Before the Starmark deposition could be re-convened, discovery in the case was effectively stayed after the first removal of the case by BGH through the time of the ruling by this Court following the second removal of the case by Starmark because Melissa Virtue's counsel took the position that due to the procedural posture of the case, discovery was stayed until it was clear which court(s) would hear the case. Exh. I (Plaintiff's Letters Dated March 15, 2005, April 19, 2005, July 13, 2005, July 18, 2005).

When BGH tried to reschedule Starmark's deposition in May 2006, so that Starmark could produce a 30(b)(6) representative who could testify knowledgeably about the previous designated topics that were not properly answered and numerous other topics, Starmark's attorney moved to

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                                    Page 4 of 29

quash the deposition because it was not convenient for his schedule and because he claimed that

despite Starmark having over a year to prepare for the continuation of the 30(b)(6) deposition,

Starmark did not have enough time to produce a knowledgeable 30(b)(6) representative. Exh. J

(Notice of 30(b)(6) Deposition dated May 17, 2006). This Court granted the motion, citing

Starmark's attorneys' schedule conflicts. *See* Docket 36. BGH has also not yet deposed any of

the Starmark employees who handled and processed Virtue's application and made the decision to

not enroll Virtue and provide her with health insurance even though BGH and Virtue had provided

Starmark with all of the information it needed. In essence, other than exchanging initial

disclosures, the parties have not yet engaged in discovery since Starmark has been a party to the

federal case. Discovery in the federal court case does not close for another nine months, i.e., on

June 22, 2007. *See* Order Dated February 27, 2006. No trial date has yet been set in the federal

court case. *Id.*

## ARGUMENT

**I.    A Rule 56(f) Continuance To Conduct Discovery Should Be Granted Since Starmark
Failed To Answer Questions on Designated Subjects And Produce Requested
Documents And BGH Needs Additional Information**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party against whom a

claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may . . . move

with or without supporting affidavits for a summary judgment in the party's favor upon all or any

part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate if the Court finds that "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits . . . show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However when meaningful

discovery has not occurred the non-moving party is entitled to a continuance. Fed. R. Civ. P.

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                    Page 5 of 29

56(f). Rule 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." *Id.*

When a summary judgment motion is filed "early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). The Ninth Circuit has concluded that although "Rule 56(f) facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A Rule 56(f) based "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Burlington*, 323 F.3d at 773 (citing *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir.1992); *see also Sames v. Gable*, 732 F.2d 49, 52 (3d Cir.1984) (same)); *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (describing "the usual generous approach toward granting Rule 56(f) motions").

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)

An important aspect of a Rule 56(f) affidavit is that it need not contain evidentiary facts going to the merits of the case; rather, it is merely a sworn statement explaining why these facts cannot yet be presented. *See* Wright, Miller, & Kane, 10B *Fed. Prac. & Proc. Civ.* 3d § 2740.

> Under rule 56(f) the adversary need not even present the proof creating the minimal doubt on the issue of fact which entitles him to a full trial; it is enough if he shows the circumstances which hamstring him in presenting that proof by affidavit in opposition to the motion. Thus Rule 56(f) allows a party who has no specific material contradicting his adversary's presentation to survive a summary-judgment motion by presenting valid reasons justifying his failure of proof. Courts even have allowed parties with no clear idea of what specific facts they hope to obtain to overcome a summary-judgment motion, at least temporarily.

Wright, Miller, & Kane, 10B Fed. Prac. & Proc. Civ. 3d § 2740. The denial of a Rule 56(f) application is generally disfavored where the party opposing summary judgment makes a timely application that specifically identifies relevant information, and there is some basis for believing that the information sought actually exists. *See VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (holding that it was an abuse of discretion to deny outright credit card company's request for further discovery on issue of public confusion). Applying these rules, various courts have allowed a continuance and permitted a party to conduct discovery to oppose a motion for summary judgment. *See, e.g., Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (holding it was abuse of discretion not to allow discovery); *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986) (holding that it was an abuse of discretion to deny outright credit card company's request for further discovery); *Glen Eden Hosp., Inc. v. Blue Cross & Blue Shield, Inc.*, 740 F.2d 423, 427 (6th Cir.1984) (finding an abuse of discretion when counsel's affidavit satisfied the requirements of Rule 56(f), referred to attempted discovery of facts solely within the possession or knowledge of the defendant, sought information that was

ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)

identified with specificity, not cumulative, and directly related to plaintiff's theory); *Miller v. Daimler Chrysler Corp.*, 219 F.R.D. 331, 332-33 (D. Del. 2003) (same).

### A.    BGH's Request For A Continuance Is Timely

Discovery in this case does not close for another nine months, i.e., on June 22, 2007. *See* Order Dated February 27, 2006. No trial date has yet been set in the federal court case. *Id.* The parties have not yet engaged in any meaningful discovery other than exchanging the initial disclosures and preliminary witness lists since BGH's third-party complaint against Starmark was filed. While BGH had previously deposed Starmark's 30(b)(6) representative in January 2005, this was before Starmark was a party to these proceedings. Moreover, as set forth in more detail below, Starmark's 30(b)(6) representative was not able to answer numerous questions. And, while BGH subsequently attempted to depose Starmark representatives in May, 2006, it was unable to do so because Starmark cited scheduling conflicts to quash a subpoena that would have permitted BGH to complete the deposition of Starmark. *See* Order at Docket No. 36. Additionally, BGH has not deposed the Starmark employees who, among other things, processed Ms. Virtue's application, and made the decision not to enroll her.

In the meantime, BGH has been litigating the state court case, which has proceeded on an accelerated discovery schedule, and required BGH to respond to numerous pretrial deadlines and the rapidly approaching trial, which has required BGH's attorney's full attention. For example, BGH prepared, drafted and filed two extensive motions for summary judgment in the state court case, due July 1, 2006. Expert witness reports were due August 7, 2006. BGH has also filed three motions in limine, and responded to pretrial deadlines for exhibits, jury instructions, trial briefs, deposition designations, etc. in the state court case, as well as preparing for trial which will start on October 9, 2006, and is expected to last two weeks. *See* affidavit of Cynthia L. Ducey.

DELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc., Case No. 4:05-cv-0021 (RRB)*                    Page 8 of 29

In sum under these circumstances, BGH's request for a continuance to conduct discovery to be able to respond to Starmark's motion for summary judgment is timely. Because a Rule 56(f) based continuance of a motion for summary judgment for purposes of discovery should be granted where the request is timely and should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence," *see Burlington*, 323 F.3d at 773, and there is no evidence BGH is not diligent where BGH still has 9 months to conduct discovery, the Court should grant BGH's request for a continuance.

### B.    The Prior 30(b)(6) Deposition Is Inadequate And Incomplete

Federal Rule of Civil Procedure 30(b)(6) states:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. ***The persons so designated shall testify as to matters known or reasonably available to the organization.*** This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

Fed. R. Civ. P. 30(b)(6) (emphasis added). Although Rule 30(b)(6) directs that the notice of deposition describe with reasonable particularity the matters on which the deposition is to focus, it cannot be used to limit what is asked of a designated witness at his or her deposition. *See* Wright, Miller, & Marcus, 8A Fed. Prac. & Proc. Civ.2d § 2103. The purpose of the rule is to ensure that the party produces a witness prepared to testify on the identified subjects. *Id.* However, the matters set forth in the deposition notice constitute the minimum, not the maximum, about which a deponent must be prepared to speak. *Id.* (citing *Detoy v. City and County of San Francisco*, 196

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

F.R.D. 362, 366-67 (N.D. Cal. 2000).  In other words, when a deponent is produced pursuant to

Rule 30(b)(6), that rule does not define the scope of the deposition. *Id.*  Rule 26(b)(1) defines the

scope of discovery unless otherwise ordered by the court.  *Id.*  Therefore, the deposition of a

corporation's Rule 30(b)(6) designee would proceed, but the scope of the deposition would not be

limited by the language of the deposition notice.  *Cabot Corp. v. Yamulla Enterprises, Inc.*, 194

F.R.D. 499, 500 (D.C. Pa. 2000)).  A corporation who produces a 30(b)(6) representative who is

not knowledgeable about the case wholly frustrates the purpose of a 30(b)(6) deposition and

subjects the corporation to potential sanctions.  *Black Horse Lane Assoc., L.P. v. Dow Chemical

Corp.*, 228 F.3d 275, 304 (3d Cir. 2000).

As will be explained below, before the federal case was even filed, in January 2005 BGH

previously noticed the deposition of Starmark pursuant to Alaska Civil Rule of Procedure

30(b)(6), and designated numerous topics for which testimony was sought:

> 1.     Complete copy of the group health insurance policy
> (policies) or certificates of insurance issued under Starmark group
> number  SM 46761E, to employees of Bethel Group Home, Inc., of
> Bethel, Alaska, which was in effect between January through June
> 2002.
>
> 2.     Complete and true copies of Starmark records, reflecting
> chronological entries of apparent attempted enrollment activity on
> behalf of BGH employee Melissa Virtue under this policy number in
> May-June 2002.
>
> 3.     True and complete copies of notations on a "Special enrollee
> form" bearing the code "TMR date 06/14/2002 VCN:
> 216501491001" and a "Group premium – fast file" form bearing the
> code "TMR date 06/14/2002 VCN:216501491001" faxed from
> Attorney Steve McDaniel to Attorney Jim Valcarce on November 1,
> 2004.
>
> 4.     All documents that may identity the Starmark employees,
> whose identifiers appear to be "YJ5" and "JKA", who are referenced
> on the May – June 2002 chronological entries.

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)

5.    Guidelines, Procedures, policies, memos, and handbooks that explain Starmark's underwriting and enrollment procedures under policy number SM 46761E; including new enrollee processing time, effective date of coverage, pre-existing condition limitations, and procedures relating to certificates of prior creditable coverage.

6.    Procedures, Policies, guidelines or memos regarding pre-existing conditions and coverages to be retroactively granted on what constitutes a pre-existing condition and how such claims are evaluated and processed.

7.    All documents mentioning "Melissa A. Virtue; SSN 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; dob: 11/15/72" in the possession of Trustmark/Starmark insurance.

8.    Documents that identify specific Starmark claims administration office and personnel who would have processed claims under certificates of insurance identified in item #1, above.

*See* Exh. H (January 5, 2005 Deposition Notice).

Starmark designated and produced Bernadine Wendell on January 4, 2005, in the Alaska state court action involving Virtue and BGH. This deposition took place before Starmark was a party to the case, which occurred on August 10, 2005, and before the state and federal cases had been bifurcated. Starmark's 30(b)(6) witness could not answer questions on many of the subjects designated and lacked knowledge regarding numerous topics. Thus Starmark failed to produce a 30(b)(6) representative that was able to "testify as to matters known or reasonably available to the organization." *See* Fed. R. Civ. P. 30(b)(6). Starmark also failed to produce various documents that were requested as well. BGH has never taken Starmark's 30(b)(6) deposition in the federal court case. Irrespective of BGH's right to take a 30(b)(6) deposition, BGH has the right to receive documents from Starmark as a party under Civil Rule 34, and to take Starmark's deposition as party in the federal court case.

Prior to taking Starmark's deposition in January 2005, all participants recognized that this would not be the only 30(b)(6) deposition taken of Starmark and that BGH would be able to

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                    Page 11 of 29

complete the deposition at a later time. *See* Affidavit of Counsel dated May 23, 2006. In fact, during the deposition, Mr. McDaniel, counsel for Starmark, stated that he would make individuals such as Penny Gregory, who were more knowledgeable about certain topics to be designated and made available for future depositions. *See* Exh. D at Tr. [42:17-43:2, 104:2-15]. The depositions of Penny Gregory or any other Starmark employee, have not yet taken place.

The need for a supplemental and more comprehensive 30(b)(6) deposition was made evident throughout the 30(b)(6) deposition of Starmark that took place on January 4, 2005. *See* Exh. D at Tr. [1-108]. Despite being required to produce a corporate representative that was knowledgeable about the issues raised in the notice and the case, *see* Fed. R. Civ. P. 30(b)(6), Starmark only produced Ms. Wendell, and she lacked knowledge about numerous topics. *See id.* For example, Ms. Wendell did not know how claims were handled under the policy, *see* Exh. D at Tr. [48:1-3], and stated that Penny Gregory would be the corporate representative who would possess such information, *see id.* at Tr. [48:4-9]. But, Starmark did not produce Ms. Gregory at the 30(b)(6) deposition in January 2005, or documents sought in the notice at that time, or in the year and half since then.

Ms. Wendell was asked if she could testify regarding the terms, conditions, and benefits of Melissa Virtue's health insurance coverage regarding a possible preexisting condition, and Ms. Wendell had no knowledge regarding Starmark's policies regarding this matter. *See id.* at Tr. [53:15-18]. Neither was Ms. Wendell able to testify regarding Starmark's claim handling procedures for receipt, processing and determination of claims for health benefits by BGH employees and any impact preexisting conditions would affect how the claim would be handled. *See id.* at Tr. [53:15-18]. Ms. Wendell was also ignorant regarding where or how Starmark kept records of copies of correspondence from Virtue and BGH. *See id.* at Tr. [41:20-42:5]. Ms.

ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                    Page 12 of 29

Wendell could not even testify who BGH might be able contact in the Starmark organization to obtain the information. *See id.* at Tr. [42:9-15]. Ms. Wendell had no knowledge regarding and had not even researched the benefit or claims departments for records regarding Virtue, as that was beyond her authority. *See id.* at Tr. [43:5-11]. Ms. Wendell could not answer any questions regarding how timely or late enrollees impact the determination of a claim or application as it relates to preexisting conditions. *See id.* at Tr. [53:1-18]. Ms. Wendell did not know with certainty how premiums for BGH were calculated and the specific basis for that calculation. *See id.* at Tr. [78:3-79:9]. Ms. Wendell did know who was responsible for making marks on form SM 46761E. *See id.* at Tr. [25:14-18]. Ms. Wendell did not know who made handwritten notations on other documents in Starmark's possession. *See id.* at Tr. [35:11-15, 36:5:11]. Ms. Wendell was not qualified to testify regarding what medical conditions would constitute a preexisting condition under Starmark's policy. *See id.* at Tr. [72:24-73:3]. Ms. Wendell could not testify regarding how often Starmark receives an application where an applicant fills out the application requesting coverage and one of the waiver boxes is also checked. *See id.* at Tr. [73:23-74:8]. All of these topics were within the scope of the notice and documents relating to the topics had been requested, but not produced. Wendell admitted that other Starmark employees, such as Yolanda Johnson, Justine Kane and Penny Gregory either processed Virtue's application or would have information regarding the application and Starmark's procedures. *See id.* at Tr. [21:4-22:4, 42:17-25].

In May 2006, BGH sought to continue the 30(b)(6) deposition of Starmark and have Starmark produce all of the previously requested documents, as well as additional documents:

1.  All materials received from Bethel Group Home on behalf of Melissa Virtue;

2.  Documents stating when Melissa Virtue was eligible for health insurance coverage through her employment at Bethel Group Home;

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                    Page 13 of 29

3.  All written correspondence and records of verbal correspondence by Melissa Virtue to Trustmark/Starmark and from Trustmark/Starmark to Melissa Virtue;

4.  Any claims made by Virtue for coverage under the policy;

5.  Any applications for insurance submitted by Melissa Virtue;

6.  Any materials addressing the terms, conditions, and benefits of Melissa Virtue's health insurance coverage;

7.  For the time period 1/1/02 – 12/31/02 Trustmark/Starmark's Claim Handling Procedures or procedures for receipt, processing and determination of claims for health benefits made by employees of Bethel Group Home under the Group Health  policy;

8.  Trustmark/Starmark's Phone Records for any telephone calls to or from Melissa Virtue or Bethel Group Home on Behalf of Melissa Virtue or any note, message, memorandum memorializing such calls;

9.  The identity of the Trustmark/Starmark employee that received any telephone call from Melissa Virtue and the substance of the calls;

10. All documents received by Trustmark/Starmark from Mark Regan and/or Alaska Legal Services on Melissa Virtue's behalf and any response to those documents or record of those documents by Trustmark/Starmark, including but not limited to Attachment B and C, affixed hereto;

11. Materials demonstrating Trustmark's Starmark's profitability for the time period 2000-2002;

12. Procedures or policies for handling health insurance applications that are incomplete or completed incorrectly, that check some but not all boxes in the waiver of coverage section or that completely waive coverage, and where the application for waiver of coverage is ambiguous, incomplete in any respect,  or unclear;

13. How to look up an employer's group number on Trustmark/Starmark's computers or in their paper filing system in 2002;

14. Complete and true copies of Trustmark/Starmark records, reflecting chronological entries of apparent attempted enrollment activity on behalf of BGH employee Melissa Virtue under this policy number in May-June 2002;

15. Guidelines, Procedures, policies, memos, and handbooks that explain Trustmark/Starmark's underwriting and enrollment procedures under policy

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc., Case No. 4:05-cv-0021 (RRB)*

number SM 46761E; including new enrollee processing time, effective date of coverage, pre-existing condition limitations, and procedures relating to certificates of prior creditable coverage;

16.    Procedures, Policies, guidelines or memos regarding pre-existing conditions and coverage to be retroactively granted on what constitutes a pre-existing condition and how such claims are evaluated and processed;

17.    Documents that identify specific Starmark claims administration office and personnel who would have processed claims submitted by employees of Bethel Group Home; and

18.    Authentication of a true copy of the group health insurance policy (policies) or certificates of insurance issued under Starmark group number SM 46761E, to employees of Bethel Group Home, Inc., of Bethel, Alaska, which was in effect between January through June 2002.

*See* Exh. J (May 17, 2006 Deposition Notice). When BGH tried to resume Starmark's 30(b)(6) deposition in May 2006, so that Starmark could produce the requested materials and a 30(b)(6) representative who could actually testify knowledgeably about the previous designated topics that were not properly answered and numerous other topics, Starmark's attorney successfully quashed the deposition because it was not convenient for his schedule and because he claimed that despite Starmark having over a year to prepare for the continuation of the 30(b)(6) deposition, Starmark did not have enough time to produce a knowledgeable 30(b)(6) representative. Exh. J (Notice of 30(b)(6) Deposition dated May 17, 2006). Consequently, BGH has not obtained numerous documents and information that would create a material issue of fact foreclosing Starmark's motion for summary judgment on all of BGH's claims.

In sum, for these reasons, BGH's prior deposition of Starmark's 30(b)(6) representative was inadequate and BGH should be permitted to move forward with discovery to obtain information to oppose Starmark's motion for summary judgment.

**C.     Starmark's Statement Of Undisputed Facts Is Misleading And Disputed**

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

Starmark presents a misleading statement of facts in support of its motion for summary judgment. *See* Motion at 1-19. While BGH seeks time to conduct additional discovery to demonstrate that the facts Starmark has asserted in support of its motion are vigorously contested and do no establish that Starmark is entitled to prevail on its motion for summary judgment, the limited discovery that has taken place so far even demonstrates material issues of fact that would preclude summary judgment in Starmark's favor.

For example, Starmark asserts that Virtue would not have been enrolled into its policy because under the terms of Starmark's policy, Virtue would have only been covered on May 1, 2006, Virtue only worked three days after mid-April, and Starmark's policy required her to work "for five consecutive days after mid-April." *See* Motion at 7. However, the facts marshaled to date demonstrate at minimum, a factual dispute regarding this issue. For example, contrary to Starmark's assertion, Virtue actually worked five consecutive days after mid-April, i.e., she worked on April 17th through the 21st. Exh. H at 1 (Time Sheets) (attached to Starmark's Motion). Moreover, the plaintiff also worked three more days in May, i.e., from May 12 through the 14th. *Id.* at 2. Contrary to Starmark's claim that Virtue would have to work "five consecutive days," Starmark's own Certificate of Insurance actually states only that the applicant must be at work for "five scheduled work days immediately before your effective date." Exh. B at 33 (Certificate of Insurance) (attached to Starmark's Motion). It is not apparent from Virtue's time sheets what her five scheduled work days were prior to the effective date of coverage, i.e., as opposed to her five days that she actually worked as reflected on her time sheets. Exh. H at 1 (Time Sheets) (attached to Starmark's Motion). Virtue's schedule for April and May 2002 has not yet been discovered.

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                    Page 16 of 29

More significant, under Starmark's own Certificate of Insurance, an employee was not required to work five scheduled days if the person was not at work due to "hospital confinement," and Virtue was hospitalized on April 22, 2002. Exh. B at 50 (Certificate of Insurance) (attached to Starmark's Motion). Thus, Starmark's argument is factually incorrect. However, as explained in detail below, BGH has not been able to fully depose Starmark's 30(b)(6) representative and Starmark has not produced its policies and procedures to determine exactly how Starmark applies these rules and determined effective date of coverage in practice. Once BGH is able to conduct discovery, BGH will establish material facts in dispute foreclosing Starmark's motion for summary judgment.

Starmark asserts that Virtue's multiple sclerosis was a pre-existing condition. *See* Motion at 6-7. However, it is not apparent from Starmark's policy that this would have prevented Starmark from enrolling her, i.e., as opposed to enrolling her and simply not compensating her or covering her for any medical expenses related to any possible pre-existing condition. However, BGH has not yet been able to discover from Starmark, even though Starmark was previously required to produce information regarding Starmark's claim handling procedures and guidelines regarding pre-existing conditions at the 30(b)(6) deposition:

> Explanation of claims handling procedures and guidelines under policy number SM 46761E regarding pre-existing conditions, pre-existing conditions limitations, claims handling for late enrollees, any written Starmark procedures and guidelines on: a) what constitutes a pre-existing condition and how such claims are evaluated, processed, and determined.

*See* Exh. H (January 5, 2005 Deposition Notice). Once BGH is able to discovery this information from Starmark, BGH will be able to further oppose Starmark's motion on this ground.

Starmark also states that the reason the plaintiff was not enrolled in the policy was because of BGH's actions. *See* Motion for Summary Judgment at 16-19. Specifically, Starmark asserts

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                    Page 17 of 29

that the application was not timely submitted, Starmark did not have all of the information it needed to process the application, the application had waived coverage, BGH did not expect Virtue to have coverage, and BGH did not pay any premium for Virtue's policy. *See, e.g.*, Motion at 1-19. The limited discovery that has taken place reveals at the very least that Starmark's arguments on these issues are factually incorrect and there is a factual dispute regarding these issues.

For example, in regards to the timeliness question, any argument that Virtue's application was not timely submitted by BGH is directly contradicted by Starmark's 30(b)(6) representative's admission that Virtue's application was timely submitted and she was a timely enrollee. Exh. D at Tr. [76:19-21, 76:23-77:2] (Wendell Deposition); Exh. C at 8 (Administration Guide).

In regards to whether Starmark lacked information to process the application, the following limited facts that BGH has been able to discover so far show that Starmark did not lack this information. Starmark received a cover letter with the enrollment application. Exh. G at 1 (Virtue's Application). The cover letter was on Bethel Group Home's stationary and stated: "Please enroll Ms. Melissa Virtue, as per the enclosed application, on Bethel Group Home health plan." *Id.* Starmark did not process Virtue's application and enroll her, claiming they needed additional information: the employee group number or group name. Exh. F at 1 (Starmark Notification to Virtue). However, Starmark had this information with the application, since BGH's cover letter on letterhead stationary, requesting that she be enrolled, was attached to Virtue's application and received by Starmark. Exh. D at Tr. [33:6-38:22] (Wendell Deposition). Moreover, because Starmark had BGH's group name through its receipt of the cover letter on BGH's stationary, it could have found the group number in its database. *Id.* at Tr. [34:7-38:16]. Inexplicably, Starmark failed to take any steps to identify the group number by simply searching

DELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                    Page 18 of 29

the company database by the group name. The company had the ability to do so, although sometimes, depending on how it is entered into the computer it may be difficult to find. *Id.* at Tr. [36:16-21]. The copy of plaintiff's application in Starmark's possession has a handwritten notation on the line for "Group Name" with the name "Bethel Group Home" even though plaintiff never responded to the query. *Id.* at Tr. [34:7-38:16]. Additionally, in the Starmark computerized enrollment history, an unidentified Starmark employee wrote in the BGH name and group number. *Id.* at Tr. [19:2- 22:4].

Starmark's assertion that the application waived coverage, and Starmark's implication that BGH marked boxes waiving coverage is also factually disputed, even with the limited discovery that has taken place so far. *See* Motion at 13-17. First, no one knows who marked the boxes. Virtue herself admitted: "I can't say how those check marks got there." Exh. K at Tr. [114:2] (Virtue's Deposition). Janowiec similarly had no idea how the check marks got there. Exh. A at Tr. [147:17-23] (Janowiec's Deposition). Starmark's reliance on Kenneth Alexander's affidavit implying the Paul Janowiec, the executive director of BGH marked the boxes should be disregarded. Alexander has been convicted four times for crimes of dishonesty and is biased against BGH because BGH terminated Alexander for embezzling and for stealing a computer, which caused the State of Alaska to prosecute him. Exh. L (Alexander's Criminal History). Given that Virtue, Janowiec, and Alexander all deny marking the waiver box, it is just as reasonable to assume an employee of Starmark marked the waiver box. Allowing BGH to depose the Starmark employees who handled the application may further establish Starmark's possible wrongful actions in marking the application.

The waiver should be held ineffective under the terms of Starmark's Administration Guide. Starmark's Administration Guide requires that any employee waiving coverage, check both boxes

)ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                                                 Page 19 of 29

and provide a reason for declining coverage. Exh. D at Tr. [60-61] (Wendell Deposition); Exh. C

at 14 (Administration Guide). However, on the plaintiff's application, the waiver section

contained no checks actually waiving coverage or providing a reason for the waiver. Exh. G at 5

(Virtue's Application). These failures were inconsistent with the Administration Guide's

requirements and thus ineffective as a matter of law. Exh. C at 14 (Administration Guide); Exh. D

at Tr. [61:24-62:4] (Wendell Deposition).

Starmark's assertion that BGH did not expect Virtue to have coverage is also factually

disputed. *See* Motion at 7-11. BGH assumed Virtue had been successfully enrolled because

following Virtue's resignation, BGH sent Starmark a notice requesting Starmark terminate

coverage because Virtue was no longer working for BGH. Exh. M at 1 (BGH Notice to Starmark

June 14, 2002); Exh. D at Tr. [26:21-27:2] (Wendell Deposition). BGH would not have sent a

notice to Starmark requesting Starmark terminate coverage if BGH thought that Virtue had not

been enrolled.

Starmark's asserts that BGH did not pay any premium for Virtue's policy. *See* Motion at

7. But, the limited discovery BGH has been able to take to date demonstrates that the implication

of this fact is disputed. As was typical with many group policies, when Starmark billed BGH or

other small employers, which was monthly, the bill would show new employees or terminated

employees and retroactive adjustments to the bills were made. If there was a new employee

Starmark retroactively billed for them. Exh. D Tr. [101:18-102:4] (Wendell Deposition).

Starmark admitted that the soonest BGH would have been aware that the plaintiff's application

was not processed was in July 2002, when they would have received a billing showing whether

she was added to the policy. Exh. D at Tr. [101:21-102:4] (Wendell Deposition). Thus, the fact

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                                    Page 20 of 29

that BGH did not pay a premium to Starmark before Virtue's resignation in May 2002, has no

legal significance.

In sum, Starmark's assertion that there are no factual disputes is belied by the limited

information BGH been able to discover so far. If BGH is permitted to fully engage in the

discovery process with Starmark, BGH will likely find numerous other documents and witness

testimony demonstrating Starmark's unlawful actions and create a material issues contested fact to

oppose Starmark's summary judgment motion.

**D.        There Is No Law Of The Case Regarding Starmark's Unlawful Actions**

Starmark argues in its motion for summary judgment that it is the law of the case "that (1)

plaintiff was not a participant in the BGH health plan, (2) *because of the actions of BGH*.

Therefore no claim can be made against the Trustmark Defendants." *See* Opposition at 20

(emphasis added). Starmark relies on this theory as the predicate foundation for its entire motion

for summary judgment. *See id.* at 6, 20-39. In support of its argument, Starmark relies solely on

this Court's ruling on plaintiff's motion to remand. *See id.* at 3. Contrary to what Starmark

asserts the Court ruled, in its order, this Court actually ruled:

> The Ninth Circuit has previously determined that "[a] former
> employee is a plan participant only if [s]he has 'a reasonable
> expectation of returning to covered employment or [has] a colorable
> claim to vested benefits.'" *See Harris v. Provident Life & Accident*,
> 26 F.3d 930, 933 (9th Cir. 1994) (citation omitted). Defendant has
> failed to establish that plaintiff meets this test or is a Plan
> participant. ERISA, consequently, does not apply and Federal
> jurisdiction is lacking. The matter must therefore be remanded to
> State court.

*See* Docket No. 31 at 1.

Nowhere in the Court's order did the Court rule that the reason the plaintiff was not a

participant in the BGH health plan was because of the actions of BGH. *See id.* This is not

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                    Page 21 of 29

surprising given that the issue of who was the cause of the plaintiff not becoming enrolled in the

health plan was not before the Court.  Rather the only issue before the Court was whether the

Court should grant the plaintiff's motion to remand because federal jurisdiction under ERISA was

not proper.  Because the Court made no such ruling regarding who was the cause of plaintiff not

becoming a participant in the health plan, it cannot be the law of the case that BGH and not

Starmark was the cause of plaintiff's damages for failing to obtain health insurance.   Starmark

would therefore not be entitled to summary judgment on these grounds.

Moreover, once BGH is permitted to engage in discovery, further evidence should be

discovered establishing that Starmark was the reason plaintiff was not a participant in the health

plan in opposition to Starmark's motion for summary judgment on these grounds.  However, as

previously explained, the limited discovery that has taken place so far demonstrates that

Starmark's failure to properly process the plaintiff's application caused the plaintiff to not become

enrolled into the policy.

### E.    BGH Seeks Discovery Of Relevant And Material Information To Establish Starmark's Negligence and Breach of Contract Regarding Virtue's Application, And The Viability Of BGH's Claims Against Starmark

BGH has the right to "obtain discovery regarding any matter, not privileged, that is

relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).  Relevant information for

purposes of discovery is information "reasonably calculated to lead to the discovery of admissible

evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992).  BGH

will seek production of evidence from Starmark, and to depose Starmark's 30(b)(6) representative,

party representative, and employees regarding, among other things, all materials received from

BGH on behalf of Melissa Virtue; documents stating when Melissa Virtue was eligible for health

insurance coverage through her employment at BGH; all written correspondence and records of

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                           Page 22 of 29

verbal correspondence by Melissa Virtue to Trustmark/Starmark and from Trustmark/Starmark to Melissa Virtue; a copy of all of the health insurance materials related to Virtue and BGH; records for any telephone calls to or from Melissa Virtue or Bethel Group Home on Behalf of Melissa Virtue or any note, message, memorandum memorializing such calls; etc.; the identity of the Starmark employee(s) that received any telephone call from Melissa Virtue and the substance of the calls, policies procedures, guideline memos or handbooks regarding underwriting and enrollment procedures, pre-existing conditions, process for handling incomplete or inaccurate applications, determination of who handled Virtue's application, who had the opportunity to alter the application, etc. *See, e.g.*, Exh. H (January 5, 2005 Deposition Notice); Exh. J (May 17, 2006 Deposition Notice).

This and the other information BGH seeks is directly relevant to determine what exactly happened with Starmark's processing of Virtue's health insurance application and establishing Starmark's unlawful conduct, which is one of the critical facts at issue in the case. *See* Fed. R. Evid. 401. BGH is therefore entitled to these documents and to depose Trustmark's 30(b)(6) representatives and employees regarding this information. This information will assist in defense of all of BGH's counts against Starmark to oppose Starmark's motion for summary judgment.

In regards to the apportionment of fault count, and the negligence counts, these counts involve who was negligent in processing Virtue's health insurance application, i.e., Virtue, BGH, or Starmark and responsible for causing Virtue's and in turn BGH's damages. Starmark argues in its motion that it is the law of the case that it was the actions of BGH that caused Virtue to not have health insurance with Starmark any damages in this case rests entirely with BGH, and not Starmark. As explained above, Starmark's argument in this regard is not well taken. *See*

)ELANEY WILES, INC.
SUITE 400
1007 WEST 3RD AVENUE
\NCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)

Discussion supra at 21-22.[2]  To further demonstrate with specific facts to oppose Starmark's

motion for summary judgment, BGH should be permitted to conduct discovery of Starmark,

specifically all Starmark employees who handled the application, made decisions regarding the

application, made the decision to communicate with Virtue but not BGH, and made the decision to

not immediately enroll Virtue into Starmark's health insurance program despite Starmark already

possessing all of the information that was necessary to process the application, i.e., the group

name, which is the stated reason Starmark failed to enroll Virtue. Exh. F at 1 (Starmark

Notification to Virtue).  This discovery may establish Starmark's negligence and Starmark's

responsibility for all or part of Virtue's and BGH's damages for Starmark's actions in causing

Virtue to not become enrolled with health insurance.

    If BGH obtains discovery on issues it previously attempted to obtain, but Starmark failed

to provide, such as all materials and correspondence to Starmark from Virtue and BGH, *see* Exh. J

(May 17, 2006 Deposition Notice), BGH may be able to compile further facts that Starmark's

written notification reason for failing to enroll Virtue, i.e., a lack of group name or number was

unlawful because Starmark had this information.  BGH also seeks information regarding

Starmark's claims handling procedures and policies to determine if Starmark failed to follow its

own procedures and polices in handling Virtue's application.

---

[2]    The fact that ERISA is not implicated for removal purposes on plaintiff's claims against BGH, does not obviate the fact that BGH may bring state common law causes of actions, i.e., negligence, apportionment of fault, breach of contract, etc., against Starmark for Starmark's unlawful acts in causing Virtue's and BGH's damages by failing to properly process the application and enroll Virtue. *See, e.g.*, *Hagen Ins., Inc. v. Roller*, 139 P.3d 1216 (Alaska 2006) (where injured worker brought action against insurer, alleging that insurer negligently failed to secure insurance for worker's business, leaving worker without coverage for an on-the-job injury and compensation was sought for past and future medical expenses that was not covered because there was no insurance coverage, worker was entitled to damages); *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172-73 (9th Cir. 2004) (concluding that state law breach of contract claim was outside did not implicate ERISA).

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                    Page 24 of 29

)ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
,NCHORAGE, ALASKA
(907) 279-3581

To reiterate, BGH has already discovered some facts which demonstrate Starmark acted wrongfully in processing Virtue's application and causing her damages. Starmark's notice to Virtue stated that they did not enroll her because Starmark did not know the group name *or* number. Exh. F at 1 (Starmark Notification to Virtue). However, Starmark had BGH's group name because BGH's cover letter on letterhead stationary, requesting that she be enrolled, was attached to Virtue's application and received by Starmark. Exh. D at Tr. [33:6-38:22] (Wendell Deposition). Moreover, because Starmark had BGH's group name through its receipt of the cover letter on BGH's stationary, it could have found the group number in its database. *Id.* at Tr. [34:7-38:16]. Years after the fact, Starmark is apparently now claiming that it did not enroll Virtue because of certain waiver boxes were marked on the application. However, Starmark's new defense is pretextual because under the terms of Starmark's own Administration Guide, any employee waiving coverage, was required to check both waiver boxes and provide a reason for declining coverage. Exh. C at 14 (Administration Guide). On the plaintiff's application, the wavier section contained no checks actually waiving coverage and she did not provide a reason for the waiver. Exh. G at 5 (Virtue's Application).[3] In sum, once BGH is able to depose the Starmark employees who handled her application and made the unlawful decision not to enroll Virtue, BGH may be able to demonstrate that fault for Virtue's damages for not having health insurance was caused by Starmark's actions.

In regards to the counts involving contractual and implied indemnity, breach of the implied covenant of good faith and fair dealing, equitable estoppel, and breach of fiduciary duty, BGH has yet to specifically depose Starmark regarding these counts or obtain much documentary evidence

---

[3] Starmark also argues that any contractual duties cannot be a basis for apportionment. *See* Motion at 25. However, the Alaska Supreme Court has never held that AS 09.17.080 only applies to tort claims, and facially AS 09.17.080 applies to apportionment of damages in all actions involving the "fault" of more than one person.

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                    Page 25 of 29

regarding these claims. *See* Affidavit of Counsel. Moreover, the predicate basis for Stamark's

motion for summary judgment is its previously discussed law of the case argument that Virtue's

damages did not arise from any act Starmark did in processing Virtue's application, but arose from

BGH's actions. *See* Motion at 25-26. Through discovery, BGH may discover which Starmark

employees unlawfully breached the contract between BGH and Starmark by failing to properly

process Virtue's application and enroll Virtue into BGH's group health plan after BGH expressly

requested Starmark enroll Virtue into BGH's plan, failed to notify BGH of any problem with the

application, and failed to defend and indemnify BGH once it became apparent in November 2002

that Virtue was blaming Starmark for her failure to obtain health insurance because of Starmark's

unlawful actions and Starmark was responsible for Virtue's damages. Once BGH obtains this and

other information regarding these counts, BGH may be able to obtain demonstrate that BGH is

entitled to prevail on these counts.

Specifically, in regards to the contract, indemnity, and good faith and fair dealing claims,

Starmark argues that there was no contract between BGH and Starmark. *See, e.g.*, Motion at 26,

28, 34. However, the limited discovery that has taken place to date, demonstrates that there was a

contract between BGH and Starmark. BGH contracted with Trustmark Insurance Company to

provide its employees with group health benefits. BGH secured a policy underwritten by

Trustmark Insurance Company and administered by Starmark (collectively "Starmark"). Exh. B at

1-51 (Certificate of Insurance); Exh. C at 1-41 (Administration Guide); Exh. D at Tr. [17:18-19:3]

(Wendell Deposition). Starmark had also enrolled other employees into BGH's group health

policy. The reason Starmark did this was because of a contractual relationship between BGH and

Starmark. BGH is entitled to conduct discovery regarding the parties relationship to discover facts

regarding the contractual relationship, the course and scope of the dealing between the parties,

ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
NCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                    Page 26 of 29

how Starmark breached this agreement, etc. Once BGH is able to conduct discovery regarding these claims, BGH may be able to marshall facts opposing Starmark's motion for summary judgment.

In regards to the punitive damages count, once BGH is able to depose a knowledgeable 30(b)(6) representative and other Starmark employees, BGH may be able to establish that Starmark acted intentionally and with a financial motive in failing to enroll Virtue. *See* Affidavit of Counsel. Specifically, discovery may establish that after Virtue had telephoned Starmark regarding the status of her application, Starmark was placed on notice that Virtue wanted to be enrolled in health insurance and that Starmark nonetheless unlawfully denied Virtue's application because it did not want the financial cost of insuring someone who they knew was sick and entitled to coverage. *See* Affidavit of Counsel; AS 09.17.029(c)(3) (stating punitive damages are warranted where the acts were committed for financial gain).

In sum, BGH will seek production of documents and depositions of Starmark's representatives and employees to establish that Starmark acted unlawfully in processing Virtue's application. Because the apportionment of fault count (as well as the other counts) implicates which party checked the waiver of coverage box, why Starmark did not immediately enroll Virtue into the policy and provide her coverage, BGH is entitled to discover all facts relating Starmark's actions involving Virtue's application. If BGH learns through discovery that a Starmark employee altered the application, that a Starmark employee purposefully failed to notify BGH of any problem with the application because of Virtue's telephone calls to Starmark inquiring about the status of her application when Starmark knew Virtue was having expensive medical bills, Starmark failed to follow its own policies and procedures for handling applications and notifying employers of potential problems with an employee's application, and Starmark failed to enroll

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)                    Page 27 of 29

Virtue to save money and thus not having to pay her medical bills, Starmark would clearly be responsible, in whole or in part for Virtue's and BGH's damages. The Court should therefore grant BGH's motion to conduct discovery so that BGH has the opportunity to establish Starmark's unlawful actions in processing Virtue's health insurance application.

## II.    Parties' Stipulation To Extend Time For Filing BGH's Opposition To Starmark's Motion For Summary Judgment

For the reasons set forth in this motion, BGH requests the Court permit BGH to conduct discovery of Starmark to permit BGH to gather the facts to demonstrate that Starmark's motion for summary judgment lacks merit. However, BGH and Starmark have stipulated that in the event the Court denies BGH's request for a continuance to conduct further discovery, BGH's opposition to Starmark's motion for summary judgment will be due 15 days after receipt of the Court's ruling. However, because BGH is currently busy preparing for trial in the state court case that begins on October 9, 2006, BGH does not have time before trial to oppose Starmark's motion for summary judgment. Therefore, in the event the Court denies BGH's request for a continuance to conduct further discovery, BGH requests the Court extend the time for BGH to oppose Starmark's motion for summary judgment until 15 days after the jury reaches a verdict in the state court case.[4]

### CONCLUSION

In sum, for the reasons set forth above, in the exhibits and in the attached affidavits, the Court should grant BGH's motion seeking a continuance to conduct discovery to oppose Starmark's motion for summary judgment because the request is timely, the discovery is relevant to this case and will create a material issue of fact precluding summary judgment.

---

[4] It is possible that the cases between Virtue and BGH, and BGH and Starmark may be settled. The parties have been in settlement talks with a mediator, but to date the parties have not been able to reach a resolution.

)ELANEY WILES, INC.
SUITE 400
007 WEST 3RD AVENUE
ANCHORAGE, ALASKA
(907) 279-3581

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.*, Case No. 4:05-cv-0021 (RRB)                Page 28 of 29

DELANEY WILES, INC.
Attorneys for Defendant and
Third Party Plaintiff Bethel Group Home

Dated: 9/22/06

s/Cynthia L. Ducey
Cynthia L. Ducey #8310161
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska 99501
(907) 279-3581
(907) 277-1331 fax
cld@delaneywiles.com


s/Eric Ringsmuth
Eric Ringsmuth #0305019
Delaney Wiles, Inc.
1007 W. 3rd Avenue, Suite 400
Anchorage, Alaska 99501
(907) 279-3581
(907) 277-1331 fax
ear@delaneywiles.com


**CERTIFICATE OF SERVICE:**

This certifies that an electronic copy
of the above document was served upon:


William Earnhart


Cynthia L. Ducey
121974

**Motion For A Rule 56 Continuance**
*Virtue v. Bethel Group Home, Inc.,* Case No. 4:05-cv-0021 (RRB)