1  IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

2     FOURTH JUDICIAL DISTRICT COURT AT BETHEL

3                    - - -                    CERTIFIED COPY

4

5

6  MELISSA VIRTUE,              )
                                )
7             Plaintiff,        )
                                )
   vs.                          )No. 4BE-04-19 Civil
8                               )
   BETHEL GROUP HOME, INC.,     )
9                               )
              Defendant.        )
10 _____)

11

12

13

14                  DEPOSITION OF

15               BERNADINE WENDELL

16            LAKE FOREST, ILLINOIS

17               JANUARY 4, 2005

18

19

20  ATKINSON-BAKER, INC.
21  COURT REPORTERS
    500 North Brand Boulevard, Third Floor
22  Glendale, California  91203
    (800) 288-3376
23
    REPORTED BY:  HEATHER PERKINS, CSR NO. 84-3714
24
    FILE NO.:  9E0ADB7
25

1     IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

2       FOURTH JUDICIAL DISTRICT COURT AT BETHEL

3             - - -

4

5

6  MELISSA VIRTUE,       )
                      )

7          Plaintiff,  )
                      )

8    vs.              )No. 4BE-04-19 Civil
                      )

9  BETHEL GROUP HOME, INC.,  )
                      )

10         Defendant.  )
    _____)

11

12        Deposition of BERNADETTE WENDELL,

13  taken on behalf of Defendant, at 400 Field

14  Drive, Lake Forest, Illinois, commencing at

15  3:05 o'clock p.m., Tuesday, January 4th, 2005,

16  before Heather Perkins-Reiva, CSR NO. 84-3714.

1                    A P P E A R A N C E S:

2         COOKE, ROOSA & VALCARCE
          BY:  MR. JIM J. VALCARCE
3         900 3rd Avenue, Box 409
          Bethel, Alaska  99559
4         (907) 543-2744
          (Appeared telephonically.)
5
              On behalf of the Plaintiff;
6

7         DELANEY, WILES, HAYES, GERETY, ELLIS &
          YOUNG, INC.
8         BY:  MR. JAMES J. FAYETTE
               MS. CYNTHIA L. DUCEY
9         1007 West 3rd Avenue
          Suite 400
10        Anchorage, Alaska  99501
          (907) 279-3581
11        (Appeared telephonically.)

12                    and

13        LAW OFFICE OF SCOTT G. THOMAS
          BY:  MR. RICHARD JACOBSON
14        500 West Madison Street
          Suite 2790
15        Chicago, Illinois  60661
          (312) 930-5500
16
              On behalf of the Defendant;
17

18        TRUSTMARK INSURANCE COMPANY
          BY:  MR. STEPHEN J. MC DANIEL
19        400 Field Drive
          Lake Forest, Illinois  60045
20        (847) 283-4136

21            On behalf of the Deponent.

22
       Also Present:
23
       Ms. Carolyn Magura (Telephonically).
24

25                    *      *      *

```
1                          I N D E X

2      WITNESS                              PAGE

3      MS. BERNADETTE WENDELL

4           By Mr. Fayette

5               Examination          06, 87, 101

6           By Mr. Valcarce

7               Examination          80, 100, 103

8

9      EXHIBITS                    MARKED FOR ID

10     Defendant's Deposition Exhibit

11     No. 1   Employee Enrollment Form          05

12     No. 2   Groupfacts Text Data Maintenance  05

13     No. 3   Special Enrollee Form             05

14     No. 4   Group Premium/Fast File           05

15     No. 5   Administration Guide              05

16     No. 6   11/26/02 Regan Letter to Starmark 05

17     No. 7   (Withdrawn)                       05

18     No. 8   (Withdrawn)                       05

19     No. 9   Certificate of Insurance          18

20     No. 10  Status on New Employee Addition   09

21

22

23

24

25
```

| | | |
|---|---|---|
| 1 | | (Documents marked as Defendant's |
| 2 | | Deposition Exhibits 1 through 8 |
| 3 | | for identification.) |
| 4 | | (Witness duly sworn.) |
| 5 | 15:05:42 | MR. FAYETTE:  We are on the record. |
| 6 | 15:05:42 | I guess the way I will begin is |
| 7 | 15:05:46 | the case is Virtue v. Bethel Group Home.  The |
| 8 | 15:05:50 | case number is 4BE-04-19 Civil. |
| 9 | 15:05:54 | The place to begin, I think, is |
| 10 | 15:05:56 | for the parties to identify themselves.  I |
| 11 | 15:05:58 | will begin.  My name is James Fayette.  My law |
| 12 | 15:06:02 | firm is Delaney Wiles.  I'm participating |
| 13 | 15:06:04 | telephonically in Anchorage, Alaska. |
| 14 | 15:06:06 | I would ask opposing counsel and |
| 15 | 15:06:08 | the parties in Chicago to identify themselves. |
| 16 | 15:06:10 | MR. VALCARCE:  Jim Valcarce on behalf |
| 17 | 15:06:12 | of the Plaintiff. |
| 18 | 15:06:14 | MR. MC DANIEL:  Steven McDaniel, |
| 19 | 15:06:16 | in-house counsel for Starmark and Trustmark, |
| 20 | 15:06:20 | and the witness. |
| 21 | 15:06:22 | THE WITNESS:  Bernadette Wendell, |
| 22 | 15:06:24 | second vice president, Starmark |
| 23 | 15:06:26 | administration. |
| 24 | 15:06:26 | MR. JACOBSON:  And I'm Richard |
| 25 | 15:06:28 | Jacobson, local counsel for Jay Fayette. |

| | |
|---|---|
| 1 | 15:06:38 | BERNADETTE WENDELL, |

1    15:06:38                BERNADETTE WENDELL,

2                 having been first duly sworn, was called as a

3                 witness herein, was examined and testified as

4                 follows:

5                          E X A M I N A T I O N

6                 BY MR. FAYETTE:

7    15:06:38      Q.   I will begin:  Ms. Wendell, this is

8    15:06:40    Mr. Fayette in Anchorage.

9    15:06:42             Can you hear me all right?

10   15:06:44    A.   Sure.  Yes, I can.

11   15:06:44    Q.   Thank you for being available today.

12   15:06:46             Can I ask, then, to begin with

13   15:06:50    questions of you, then?

14   15:06:52             I missed it:  Could you state

15   15:06:56    your title, please, again with

16   15:06:58    Trustmark/Starmark Insurance?

17   15:06:58    A.   Second vice president of

18   15:07:00    administration.

19   15:07:02    Q.   And how long have you held that

20   15:07:04    position, ma'am?

21   15:07:06    A.   That position I have had for a year

22   15:07:08    now.  I have been with Starmark for 15 years.

23   15:07:12    Q.   Can you give me a very, very brief

24   15:07:14    thumbnail sketch of the various positions you

25   15:07:18    have held with this firm?

| | | |
|---|---|---|
| 1 | 15:07:18 | A.   The positions I have held with the |
| 2 | 15:07:22 | firm have been administration positions, |
| 3 | 15:07:24 | starting out with an account representative, |
| 4 | 15:07:28 | all the way through management, to a second VP |
| 5 | 15:07:30 | position.  I have had some duties in a |
| 6 | 15:07:32 | marketing area at some point in time for a |
| 7 | 15:07:34 | couple of years. |
| 8 | 15:07:36 | Q.   And Mr. Mc Daniel tells us that you |
| 9 | 15:07:40 | are designated the person most knowledgeable |
| 10 | 15:07:42 | and authorized to speak for Trustmark/Starmark |
| 11 | 15:07:46 | Insurance as to the issues that are listed on |
| 12 | 15:07:48 | our notice of deposition; is that correct? |
| 13 | 15:07:54 | A.   Yes. |
| 14 | 15:07:54 | Q.   All right.  You are familiar, I take |
| 15 | 15:07:56 | it, with the issues afoot in this lawsuit, the |
| 16 | 15:08:00 | issues regarding Ms. Virtue's application and |
| 17 | 15:08:08 | for Starmark group health insurance in |
| 18 | 15:08:12 | mid-2002?  You are familiar with that? |
| 19 | 15:08:14 | A.   Yes. |
| 20 | 15:08:14 | Q.   Have you had a chance to review the |
| 21 | 15:08:16 | items actually listed in this deposition |
| 22 | 15:08:18 | notice? |
| 23 | 15:08:20 | A.   Yes. |
| 24 | 15:08:22 | Q.   What I would like to do is begin with |
| 25 | 15:08:26 | this afternoon's development, since our time |

1    15:08:32    here this afternoon is limited.

2    15:08:32              Were you present in the room when

3    15:08:34    Mr. Mc Daniel informed the parties here,

4    15:08:38    before you were sworn, about recently

5    15:08:40    discovered documents relating to Melissa

6    15:08:42    Virtue?

7    15:08:42      A.    Yes.

8    15:08:44      Q.    Let me just cut there:  Can you go

9    15:08:46    ahead and just tell us what documents you

10   15:08:50    discovered in your research in preparation for

11   15:08:50    today's deposition?

12   15:08:52      A.    I discovered what we consider a status

13   15:08:54    of new employee addition form; and attached to

14   15:08:58    that was the employee enrollment form, front

15   15:09:02    and back sides; and, also, a memo from Bethel

16   15:09:06    Group Home attached, dated May 13th of 2002,

17   15:09:12    as stamped in here, but dated by them

18   15:09:16    April 17th of 2002.

19   15:09:18      Q.    So how many pages of documents, then,

20   15:09:20    have you just indicated?

21   15:09:22      A.    I have three pages.

22   15:09:24      MR. FAYETTE:  And I will ask

23   15:09:26    Mr. Jacobson's assistance.

24   15:09:28              Mr. Jacobson, are you there in a

25   15:09:28    position to mark these three pages as

Exhibit 1
Page 008 of 108                                        8

| | | |
|---|---|---|
| 1 | 15:09:32 | exhibits? |
| 2 | 15:09:32 | MR. JACOBSON:  Yes, I will. |
| 3 | 15:09:32 | The record should reflect that |
| 4 | 15:09:32 | one of the three pages is a double-sided page. |
| 5 | 15:09:38 | MR. MC DANIEL:  Can you take our copy? |
| 6 | 15:09:40 | MR. JACOBSON:  Sure. |
| 7 | 15:09:42 | I'm marking a copy of the newly |
| 8 | 15:09:44 | discovered document as Exhibit No. 9. |
| 9 | 15:09:48 | MR. FAYETTE:  Actually, what I would |
| 10 | 15:09:48 | ask you to do, Mr. Jacobson, is mark that as |
| 11 | 15:09:52 | Exhibit 10 since the other numbers are already |
| 12 | 15:09:54 | spoken for. |
| 13 | 15:10:06 | Okay.  Is that done? |
| 14 | 15:10:06 | MR. JACOBSON:  The exhibit has been so |
| 15 | 15:10:08 | marked, and it is being tendered to the |
| 16 | 15:10:10 | witness. |
| 17 | 15:10:10 | (Document marked as Defendant's |
| 18 | 15:10:10 | Exhibit 10 for identification.) |
| 19 | 15:10:12 | BY MR. FAYETTE: |
| 20 | 15:10:12 | Q.   Ms. Wendell, can you go ahead and tell |
| 21 | 15:10:14 | us how you came about discovering these new |
| 22 | 15:10:16 | documents? |
| 23 | 15:10:16 | A.   Reviewing the underwriting file and |
| 24 | 15:10:18 | administration file that we called from |
| 25 | 15:10:22 | off-site, I noticed that there was |

| | | |
|---|---|---|
| 1 | 15:10:24 | documentation that was a computer printout |
| 2 | 15:10:26 | that stated that there was returned mail on |
| 3 | 15:10:30 | this particular individual.  So I had someone |
| 4 | 15:10:32 | research our return mail area. |
| 5 | 15:10:36 | I was unsure as to whether or not |
| 6 | 15:10:38 | we would have something back to 2002, but I |
| 7 | 15:10:40 | had them search for it anyway, and we did find |
| 8 | 15:10:44 | this documentation that indicated we were |
| 9 | 15:10:46 | returning this because we could not identify |
| 10 | 15:10:48 | the company or the group number. |
| 11 | 15:10:50 | MR. FAYETTE:  I'm going to go through |
| 12 | 15:10:52 | that in detail, but before I ask my next |
| 13 | 15:10:54 | question, I will note for the record that just |
| 14 | 15:10:56 | a moment ago my supervising attorney, |
| 15 | 15:10:58 | Ms. Cynthia Ducey, D-u-c-e-y, joined us in the |
| 16 | 15:11:02 | conference room.  There is no one else in our |
| 17 | 15:11:06 | conference room in Anchorage. |
| 18 | 15:11:08 | BY MR. FAYETTE: |
| 19 | 15:11:08 | Q.   All right.  So tell me then, |
| 20 | 15:11:10 | Ms. Wendell, specifically what documents you |
| 21 | 15:11:12 | found, and just explain them, if you would. |
| 22 | 15:11:14 | A.   The first document is a status on a |
| 23 | 15:11:16 | new employee addition.  It is dated May 15th |
| 24 | 15:11:20 | of 2002.  It is addressed to Melissa A. Virtue |
| 25 | 15:11:24 | at 427 Napaskiak in Bethel, Alaska, 99559.  It |

1    15:11:32    says that we are processing a request, and

2    15:11:36    there has been a delay.  We are returning it.

3    15:11:38    The enrollment form is being returned for the

4    15:11:40    name of the company and the group number.  We

5    15:11:44    are asking that they respond within ten days

6    15:11:46    for consideration, and it is signed by Melissa

7    15:11:52    Melendez, group administration department.

8    15:11:56         MR. FAYETTE:  I hesitate to delay this

9    15:12:00    further, but this is a new development.

10   15:12:00         I will ask Mr. Mc Daniel:  Can

11   15:12:02    you tell us, are your staff in a position to

12   15:12:06    fax those three or four pages to the parties

13   15:12:10    here before we continue with questioning?

14   15:12:12         MR. MC DANIEL:  Yes, we can have that

15   15:12:12    faxed to you.

16   15:12:14         MR. FAYETTE:  Then let me suggest,

17   15:12:16    Madam Court Reporter, if we can go off record,

18   15:12:18    and keep me on the speakerphone.  I will

19   15:12:22    provide the parties' fax numbers.  I think

20   15:12:24    that may be helpful.  So my request is we go

21   15:12:26    off record.

22   15:12:28         MR. VALCARCE:  Wait.  Before we do

23   15:12:30    that, this is the whole point:  This is a

24   15:12:32    30(b)(6) deposition, and I assume there is

25   15:12:36    going to be lots of other documents that are

| | | |
|---|---|---|
| 1 | 15:12:38 | before him, that we don't have.  So why don't |
| 2 | 15:12:38 | we just fax them all at one time. |
| 3 | 15:12:42 | How thick are the documents |
| 4 | 15:12:44 | there, Steve, as far as the documents that are |
| 5 | 15:12:44 | going to be produced today at this deposition? |
| 6 | 15:12:48 | MR. MC DANIEL:  I don't know what has |
| 7 | 15:12:52 | been identified already here, but we have |
| 8 | 15:12:56 | basically four pages that haven't been |
| 9 | 15:13:00 | produced to you and opposing counsel |
| 10 | 15:13:06 | previously.  We have the certificate of |
| 11 | 15:13:08 | insurance, which is 60 pages, which was faxed |
| 12 | 15:13:12 | to both of you today, and then we have the |
| 13 | 15:13:14 | original three pages of documents that were |
| 14 | 15:13:18 | produced to both of you attorneys previously. |
| 15 | 15:13:24 | MR. FAYETTE:  So, Jim, if I may:  The |
| 16 | 15:13:26 | only new documents, unless I'm really missing |
| 17 | 15:13:28 | something, is these three pages, one of which |
| 18 | 15:13:32 | is double-sided.  You indicated that you had |
| 19 | 15:13:34 | received the other exhibits that we faxed to |
| 20 | 15:13:36 | you yesterday.  So I honestly think it would |
| 21 | 15:13:38 | be gainful to take two minutes off record, or |
| 22 | 15:13:40 | maybe five, and allow the folks in Chicago to |
| 23 | 15:13:44 | fax those documents to us, and then we can |
| 24 | 15:13:46 | question intelligently. |
| 25 | 15:13:50 | MR. VALCARCE:  Well, let's get those |

| | | |
|---|---|---|
| 1 | 15:13:50 | faxed, and why don't you just proceed on with |
| 2 | 15:13:52 | other questions so we don't have to stop this, |
| 3 | 15:13:54 | and then we can just come back to it when they |
| 4 | 15:13:56 | are faxed. |
| 5 | 15:13:58 | MR. FAYETTE:  That's fine. |
| 6 | 15:13:58 | I will give my fax number, Jim, |
| 7 | 15:14:00 | if you would give yours:  My fax number in |
| 8 | 15:14:02 | Anchorage is (907) 277-1331. |
| 9 | 15:14:10 | MR. VALCARCE:  And, Steve, you have |
| 10 | 15:14:12 | got mine there:  (907) 543-2746. |
| 11 | 15:14:24 | MR. MC DANIEL:  Yes.  We should have |
| 12 | 15:14:24 | both of those from the fax this morning. |
| 13 | 15:14:26 | (Brief pause.) |
| 14 | 15:14:28 | BY MR. FAYETTE: |
| 15 | 15:14:28 | Q.   Ms. Wendell, then I will return to |
| 16 | 15:14:30 | questions for you, if I may? |
| 17 | 15:14:32 | A.   Sure. |
| 18 | 15:14:32 | Q.   Can I ask you questions, then, about |
| 19 | 15:14:34 | the documents that you have probably just |
| 20 | 15:14:36 | given to somebody? |
| 21 | 15:14:38 | A.   I have copies of the documents in |
| 22 | 15:14:42 | front of me. |
| 23 | 15:14:42 | Q.   Take me through that chain of events |
| 24 | 15:14:44 | again.  Can you tell us when Starmark |
| 25 | 15:14:46 | Insurance received this application for |

```
 1    15:14:48    Melissa Virtue?

 2    15:14:48        A.    The application is stamped received by

 3    15:14:52    Trustmark Insurance Company May 13th of 2002.

 4    15:14:58        Q.    And then what was defective or what

 5    15:15:04    was wrong with that application?

 6    15:15:06        A.    They did not indicate a group name or

 7    15:15:08    group number at the time.  So we could not

 8    15:15:12    attach her to any group.

 9    15:15:14        Q.    In other words, when I look at the

10    15:15:16    first page of the form, has the enrollee

11    15:15:18    filled out those entries?  Is that what you

12    15:15:20    are telling me?

13    15:15:22        A.    Filled out which entries?

14    15:15:24        Q.    Tell me what I'm going to see on the

15    15:15:26    first page of the form.

16    15:15:28        A.    Of the enrollment form?

17    15:15:30              On the first page of the

18    15:15:30    enrollment form, you are going to see she has

19    15:15:34    filled out her name, et cetera, but she has

20    15:15:36    not given us a group name or a group number.

21    15:15:38        Q.    So then on May 13th, 2002, what did

22    15:15:42    Starmark Insurance do with that form?

23    15:15:44        A.    What we did is on May 15th -- I just

24    15:15:48    read to you the status of the new employee

25    15:15:50    addition that we attached.  That's our form
```

| | | |
|---|---|---|
| 1 | 15:15:52 | that we sent out.  On May 15th, we sent that |
| 2 | 15:15:56 | form to Ms. Virtue, along with a copy of this |
| 3 | 15:16:00 | enrollment form, telling her that we could not |
| 4 | 15:16:04 | process it because we did not have a group |
| 5 | 15:16:06 | number, and that we needed her to respond |
| 6 | 15:16:08 | within ten days for consideration. |
| 7 | 15:16:12 | Q.   Can you tell us what address Starmark |
| 8 | 15:16:16 | used to send that back to Ms. Virtue? |
| 9 | 15:16:20 | A.   We used the address of 427 Napaskiak |
| 10 | 15:16:24 | in Bethel, Alaska, 99559. |
| 11 | 15:16:30 | Q.   All right.  And what is the next event |
| 12 | 15:16:38 | that happened with respect to Ms. Virtue? |
| 13 | 15:16:42 | A.   Well, the next event that happened is |
| 14 | 15:16:44 | that we never received any further |
| 15 | 15:16:48 | communication from Ms. Virtue on this |
| 16 | 15:16:54 | application.  She had checked waiver of |
| 17 | 15:16:58 | coverage.  So this was just kept in the file |
| 18 | 15:17:00 | that we just pulled it from, where it was |
| 19 | 15:17:02 | unattached mail. |
| 20 | 15:17:08 | Q.   And I'm assuming Starmark kept a |
| 21 | 15:17:22 | photocopy of this document? |
| 22 | 15:17:24 | A.   Right.  We kept a copy of the |
| 23 | 15:17:26 | document, yes. |
| 24 | 15:17:26 | Q.   And that's the document that's being |
| 25 | 15:17:28 | faxed to us right now? |

| | | |
|---|---|---|
| 1 | 15:17:28 | A.    Yes. |
| 2 | 15:17:30 | Q.    And what happened to the original? |
| 3 | 15:17:32 | A.    The original would have been returned |
| 4 | 15:17:34 | to Ms. Virtue.  Whatever we received from her, |
| 5 | 15:17:40 | we would have sent back with this status of |
| 6 | 15:17:42 | new employee addition for her to add the group |
| 7 | 15:17:46 | number on and name.  So we would have sent |
| 8 | 15:17:48 | back the original, and we would have kept a |
| 9 | 15:17:50 | copy. |
| 10 | 15:17:50 | Q.    When you received that application, |
| 11 | 15:17:52 | was there any other memoranda that was |
| 12 | 15:17:54 | received from the employer or on her behalf? |
| 13 | 15:17:58 | Any record of any other memoranda that you |
| 14 | 15:18:00 | received along with that application on |
| 15 | 15:18:02 | May 13th, 2002? |
| 16 | 15:18:04 | A.    Right.  There was a memo from Bethel |
| 17 | 15:18:06 | Group Home dated April 17th of 2002. |
| 18 | 15:18:08 | Q.    Can you please describe that to me? |
| 19 | 15:18:10 | A.    Letterhead of Bethel Group Home, |
| 20 | 15:18:14 | Incorporated.  It is addressed to Starmark at |
| 21 | 15:18:16 | 400 Field Drive in Lake Forest, Illinois, |
| 22 | 15:18:20 | 60045-2581; and reason for new enrollment, it |
| 23 | 15:18:26 | says:  "Please enroll Ms. Melissa Virtue, as |
| 24 | 15:18:28 | per the enclosed application, on Bethel Group |
| 25 | 15:18:32 | Home health plan.  Kenneth Alexander." |

| | | |
|---|---|---|
| 1 | 15:18:34 | Q.   I'm sorry.  I cut off your answer. |
| 2 | 15:18:38 | Please give us the signature block again. |
| 3 | 15:18:40 | A.   Kenneth Alexander. |
| 4 | 15:18:42 | Q.   So Starmark would have kept a |
| 5 | 15:18:44 | photocopy of that, as well, obviously? |
| 6 | 15:18:46 | A.   Yes. |
| 7 | 15:18:48 | Q.   All right.  I'm going to leave that |
| 8 | 15:18:58 | subject for just a moment, and I'm going to |
| 9 | 15:19:00 | change subjects. |
| 10 | 15:19:00 | In preparation for this |
| 11 | 15:19:04 | deposition, did you -- and, perhaps, with |
| 12 | 15:19:08 | Mr. Mc Daniel's assistance -- prepare a |
| 13 | 15:19:10 | certificate of insurance which would have been |
| 14 | 15:19:12 | issued to Melissa Virtue had she been enrolled |
| 15 | 15:19:16 | under Group No. SM 46761E? |
| 16 | 15:19:24 | A.   Yes. |
| 17 | 15:19:26 | Q.   And Mr. Mc Daniel has provided me, and |
| 18 | 15:19:30 | I believe Mr. Valcarce, with a document that |
| 19 | 15:19:34 | is some 58-pages long.  The first page says |
| 20 | 15:19:40 | "Certificate of Insurance."  Do you know what |
| 21 | 15:19:44 | I'm talking about? |
| 22 | 15:19:44 | A.   Yes, sir. |
| 23 | 15:19:46 | MR. FAYETTE:  And I will ask |
| 24 | 15:19:46 | Mr. Jacobson's assistance. |
| 25 | 15:19:48 | Mr. Jacobson, do you have the |

| | | |
|---|---|---|
| 1 | 15:19:52 | document I'm describing?  If so, I will ask |
| 2 | 15:19:54 | you to mark it as Exhibit 9. |
| 3 | 15:19:56 | MR. JACOBSON:  Very well. |
| 4 | 15:19:58 | We are going to mark the copy of |
| 5 | 15:20:00 | the certificate of insurance as Exhibit 9. |
| 6 | 15:20:04 | (Document marked as Defendant's |
| 7 | 15:20:04 | Exhibit 9 for identification.) |
| 8 | 15:20:06 | MR. JACOBSON:  And I'm tendering it |
| 9 | 15:20:08 | back to the witness. |
| 10 | 15:20:14 | BY MR. FAYETTE: |
| 11 | 15:20:14 | Q.   Ms. Wendell, with Exhibit 9 in hand, |
| 12 | 15:20:16 | can you tell us what that is? |
| 13 | 15:20:18 | A.   It is a certificate of insurance. |
| 14 | 15:20:18 | Q.   And what is that? |
| 15 | 15:20:20 | A.   It is the file document that we issue |
| 16 | 15:20:22 | to all eligible enrolled members of particular |
| 17 | 15:20:28 | groups for their health coverage. |
| 18 | 15:20:30 | Q.   And what significance does Exhibit 9 |
| 19 | 15:20:32 | have in this case? |
| 20 | 15:20:34 | A.   What significance does it have in this |
| 21 | 15:20:36 | case? |
| 22 | 15:20:36 | Q.   In other words, I will ask it this |
| 23 | 15:20:42 | way:  Is that certificate of insurance the |
| 24 | 15:20:44 | certificate of insurance that would have been |
| 25 | 15:20:44 | issued to Melissa Virtue had she been enrolled |

| | | |
|---|---|---|
| 1 | 15:20:48 | in April or May of 2002 under this Bethel |
| 2 | 15:20:52 | Group Home number? |
| 3 | 15:20:54 | A.    Yes. |
| 4 | 15:20:54 | Q.    And so that we are clear, the page in |
| 5 | 15:21:00 | the top right-hand corner of the document you |
| 6 | 15:21:02 | have bears sort of a fax superscript number, |
| 7 | 15:21:06 | 002, and the last page should have 053.  Is |
| 8 | 15:21:10 | that what you have? |
| 9 | 15:21:20 | MR. MC DANIEL:  His copy has a fax |
| 10 | 15:21:22 | thing on it. |
| 11 | 15:21:22 | MR. JACOBSON:  Jim, this copy doesn't |
| 12 | 15:21:26 | bear the fax number.  That's only on your end, |
| 13 | 15:21:28 | apparently. |
| 14 | 15:21:28 | BY MR. FAYETTE: |
| 15 | 15:21:28 | Q.    Does your copy there in Chicago have |
| 16 | 15:21:30 | fax numbers down at the very bottom? |
| 17 | 15:21:32 | A.    No.  We won't have those numbers on |
| 18 | 15:21:38 | it. |
| 19 | 15:21:38 | Q.    The first page says certificate of |
| 20 | 15:21:40 | insurance.  The last substantive page has an |
| 21 | 15:21:50 | amendment and the signatures of Mr. Thomas and |
| 22 | 15:21:52 | Mr. Gramm? |
| 23 | 15:21:54 | A.    Yes. |
| 24 | 15:21:54 | MR. FAYETTE:  I will ask, again, for |
| 25 | 15:21:58 | Mr. Jacobson's assistance, and to pull out |

```
 1   15:22:02   what has been designated Exhibit 2.  It should

 2   15:22:06   be one page alone.  It has some typewritten,

 3   15:22:16   six lines of chronological entries, and then a

 4   15:22:18   handwritten Bethel Group Home number.

 5   15:22:20              Do you have that in hand,

 6   15:22:22   Mr. Jacobson?

 7   15:22:22              MR. JACOBSON:  I do, and it has been

 8   15:22:24   put in front of the witness.

 9   15:22:24   BY MR. FAYETTE:

10   15:22:26      Q.   Ms. Wendell, can you tell us what this

11   15:22:26   document is?

12   15:22:28      A.   This document is the computer printout

13   15:22:30   that I referred to earlier, that was in our

14   15:22:34   underwriting admin file when I reviewed it,

15   15:22:38   indicating that we have received an

16   15:22:42   application, that we returned it, and that we

17   15:22:46   received no response, and we closed it out.

18   15:22:52      Q.   Would it be a fair statement that this

19   15:22:54   page is a printout of a computerized

20   15:22:56   chronological system where Starmark personnel

21   15:23:02   can make ongoing entries on any given case?

22   15:23:06   Is that a fair description?

23   15:23:06      A.   Yes.

24   15:23:08      Q.   And so the entries that are on here

25   15:23:10   are made, as the events occur, by Starmark
```

| | | |
|---|---|---|
| 1 | 15:23:16 | people who are charged with enrolling new |
| 2 | 15:23:22 | members or such, right? |
| 3 | 15:23:24 | A.    Yes. |
| 4 | 15:23:24 | Q.    And so can you tell us who would have |
| 5 | 15:23:28 | made these entries in May and in June of 2002? |
| 6 | 15:23:34 | They look like employee identifiers there. |
| 7 | 15:23:38 | A.    Yes. |
| 8 | 15:23:38 | Q.    Okay.  Explain that to us. |
| 9 | 15:23:40 | A.    The entries, the first three lines, |
| 10 | 15:23:42 | lines 1, 2 and 3, would have been made by YJ5, |
| 11 | 15:23:46 | which is Yolanda Johnson.  Number 4 would have |
| 12 | 15:23:50 | been made by Yolanda Johnson also.  Lines 5 |
| 13 | 15:23:54 | and 6 would have been Justine Kane. |
| 14 | 15:23:58 | Q.    And where do Ms. Johnson and |
| 15 | 15:24:00 | Ms. Kane -- or where were they in 2002? |
| 16 | 15:24:04 | A.    They work in the add-on area that |
| 17 | 15:24:08 | processes incoming additions to existing |
| 18 | 15:24:10 | groups. |
| 19 | 15:24:10 | Q.    And where is that? |
| 20 | 15:24:12 | A.    It is in my administration area for |
| 21 | 15:24:14 | Starmark. |
| 22 | 15:24:18 | Q.    Can I impose upon you to spell the |
| 23 | 15:24:20 | names of the employees you have just given us? |
| 24 | 15:24:22 | A.    Yolanda, Y-o-l-a-n-d-a, Johnson, |
| 25 | 15:24:26 | J-o-h-n-s-o-n; and Justine Kane, |

| | | |
|---|---|---|
| 1 | 15:24:28 | J-u-s-t-i-n-e, K-a-n-e. |
| 2 | 15:24:34 | Q.   And are those two employees still with |
| 3 | 15:24:36 | Trustmark/Starmark? |
| 4 | 15:24:38 | A.   Yes. |
| 5 | 15:24:42 | Q.   Can you explain the six entries, then, |
| 6 | 15:24:44 | just in your own words?  Just take them one by |
| 7 | 15:24:48 | one, and tell us what is happening here. |
| 8 | 15:24:50 | A.   Okay.  Line 1, Melissa Virtue, that |
| 9 | 15:24:54 | means that we received an app on her.  There |
| 10 | 15:24:56 | was no group number.  We received it on |
| 11 | 15:24:58 | May 5th of 2002. |
| 12 | 15:25:00 | Q.   I'm sorry.  I'm going to stop you and |
| 13 | 15:25:02 | interrupt. |
| 14 | 15:25:02 | The document I have here says |
| 15 | 15:25:08 | 5/15/02. |
| 16 | 15:25:08 | A.   I'm sorry, May 15th.  You are right. |
| 17 | 15:25:10 | 5/15/02, May 15th of 2002.  It was the |
| 18 | 15:25:14 | employee that was applying.  The application, |
| 19 | 15:25:22 | her hire date is January 21st of 2002, and I |
| 20 | 15:25:28 | believe that there has been an error.  This |
| 21 | 15:25:34 | date here was 4/17.  It should be 4/17 of 2001 |
| 22 | 15:25:40 | because that date we put there is the date |
| 23 | 15:25:42 | that they signed the application. |
| 24 | 15:25:44 | So we received it on May 15th of |
| 25 | 15:25:46 | 2002.  It was an employee application.  She |

| | | |
|---|---|---|
| 1 | 15:25:48 | signed it on April 17th of 2002.  Her date of |
| 2 | 15:25:54 | hire was January 21st of 2002. |
| 3 | 15:25:56 | Q.    Let me stop you. |
| 4 | 15:25:58 | Let's go back to the first line. |
| 5 | 15:26:00 | Ms. Johnson's entry seems to be 5/15/02, yet |
| 6 | 15:26:06 | didn't you tell us a moment ago that your copy |
| 7 | 15:26:08 | of the application is marked 5/13/2002? |
| 8 | 15:26:12 | A.    Well, it is stamped in as 5/13 in |
| 9 | 15:26:16 | Trustmark mail services, but we received it in |
| 10 | 15:26:18 | our department on 5/15. |
| 11 | 15:26:20 | Q.    So there is no problem here? |
| 12 | 15:26:22 | A.    No. |
| 13 | 15:26:22 | Q.    Let me restate that. |
| 14 | 15:26:26 | Are you telling us, then, that it |
| 15 | 15:26:28 | hit the mail room on May 13th and it took two |
| 16 | 15:26:32 | days to get to Ms. Johnson? |
| 17 | 15:26:32 | A.    Yes. |
| 18 | 15:26:34 | Q.    Then on the second line, DOH, is that |
| 19 | 15:26:36 | shorthand for date of hire? |
| 20 | 15:26:38 | A.    Yes. |
| 21 | 15:26:38 | Q.    Would it be a fair statement that all |
| 22 | 15:26:40 | Ms. Johnson is doing is copying down what the |
| 23 | 15:26:42 | employee puts on the application? |
| 24 | 15:26:44 | A.    In most part, yes. |
| 25 | 15:26:46 | Q.    Is it Ms. Johnson's job to go |

| | | |
|---|---|---|
| 1 | 15:26:50 | independently and verify that in some way? |
| 2 | 15:26:52 | A.   No. |
| 3 | 15:26:54 | Q.   Now, tell us about the third line. |
| 4 | 15:26:56 | A.   The third line says on 5/15/02, this |
| 5 | 15:27:00 | went to returns, which means that we returned |
| 6 | 15:27:02 | the application. |
| 7 | 15:27:04 | Q.   And you have already told us |
| 8 | 15:27:10 | Ms. Johnson or someone in her office kept a |
| 9 | 15:27:14 | photocopy of the documents? |
| 10 | 15:27:14 | A.   Yes. |
| 11 | 15:27:14 | Q.   And then returned the application to |
| 12 | 15:27:18 | the applicant's address as shown on the |
| 13 | 15:27:22 | application? |
| 14 | 15:27:22 | A.   Yes. |
| 15 | 15:27:22 | Q.   And then tell us about the fourth |
| 16 | 15:27:24 | line. |
| 17 | 15:27:24 | A.   The fourth line says on 6/6 of 2002, |
| 18 | 15:27:28 | there was no response.  We closed it out. |
| 19 | 15:27:32 | Q.   Now, what is happening between 5/15/02 |
| 20 | 15:27:36 | and 6/6/02? |
| 21 | 15:27:40 | A.   The letter that we sent to Melissa |
| 22 | 15:27:42 | Virtue, we told her that we had no group |
| 23 | 15:27:46 | number, and we asked them to respond in ten |
| 24 | 15:27:48 | days for consideration.  So we wait ten days |
| 25 | 15:27:50 | before we close something out and/or go back |

```
 1   15:27:54   and review the application.

 2   15:27:56      Q.   But if anybody had picked up the

 3   15:27:58   phone, say, and called the employer

 4   15:28:00   individually to straighten out some problem, I

 5   15:28:02   take it that would be recorded somewhere on

 6   15:28:06   Exhibit 2; is that correct?

 7   15:28:06      A.   Yes.

 8   15:28:08      Q.   So are you telling us that because

 9   15:28:10   there is no entry on Exhibit 2 that that

10   15:28:12   didn't happen?

11   15:28:14      A.   To the best of my knowledge.

12   15:28:22      Q.   And do you know why?

13   15:28:26      A.   It is not normal procedure.

14   15:28:40      Q.   Can you tell us this:  Explain who put

15   15:28:44   this mark on the form, on Exhibit 2,

16   15:28:46   SM 46761E?

17   15:28:50      A.   I don't know who.  It would be someone

18   15:28:54   within my department, but I don't know who.

19   15:28:56      Q.   All right.  Return to Exhibit 10.

20   15:29:06   That's the documents that you have discussed

21   15:29:12   here already, the documents that you received

22   15:29:12   on May 13th.

23   15:29:14      A.   Yes.

24   15:29:14      Q.   Is the employee's employer, is that

25   15:29:18   listed on that document anywhere?
```

```
 1    15:29:20    A.    Yes.

 2    15:29:22    Q.    What does it say?

 3    15:29:24    A.    Bethel Group Home.

 4    15:29:26    Q.    Now, you said that it wasn't procedure

 5    15:29:30    for someone in Ms. Johnson's office to pick up

 6    15:29:32    the phone and contact the employer

 7    15:29:34    individually.  Is that a written procedure?

 8    15:29:38    A.    No, it is not a written procedure.

 9    15:29:44    Q.    Tell us about the fifth line.

10    15:29:46    A.    On 6/25 the U.S. Postal returned the

11    15:29:56    letter we sent to Ms. Virtue for insufficient

12    15:30:02    address.  There is also a P.O. Box that was

13    15:30:04    noted on the application.  So we sent it back

14    15:30:08    out to the P.O. Box address.

15    15:30:10    Q.    And that's the last entry on my

16    15:30:16    exhibit.  Do you know what happened after

17    15:30:18    that?

18    15:30:18    A.    Yes, I do.

19    15:30:18    Q.    Okay.  Go ahead.

20    15:30:20    A.    It is probably in your other exhibits.

21    15:30:20    Q.    Okay.

22    15:30:26    A.    What happened is that we received

23    15:30:28    correspondence from the Bethel Group on 6/14

24    15:30:34    of 2002 that says that she had resigned for

25    15:30:40    personal reasons and that her employment was
```

| | | |
|---|---|---|
| 1 | 15:30:42 | terminated.  So there was no further action |
| 2 | 15:30:44 | taken. |
| 3 | 15:30:48 | MR. FAYETTE:  And you are right.  You |
| 4 | 15:30:50 | have segwayed into my next exhibit. |
| 5 | 15:30:52 | I will ask Mr. Jacobson's |
| 6 | 15:30:52 | assistance and to take out the one-page |
| 7 | 15:30:56 | exhibit designated Exhibit 3. |
| 8 | 15:30:58 | MR. JACOBSON:  Special enrollee form, |
| 9 | 15:31:00 | correct? |
| 10 | 15:31:02 | MR. FAYETTE:  Correct. |
| 11 | 15:31:02 | MR. JACOBSON:  Okay.  The exhibit is |
| 12 | 15:31:04 | being tendered to the witness, No. 3. |
| 13 | 15:31:06 | BY MR. FAYETTE: |
| 14 | 15:31:08 | Q.  Ms. Wendell, can you tell us what this |
| 15 | 15:31:10 | Exhibit 3 is? |
| 16 | 15:31:10 | A.  This Exhibit 3 is a form that we use |
| 17 | 15:31:14 | for special enrollment, and on it Bethel Group |
| 18 | 15:31:20 | has told us that Ms. Virtue has terminated her |
| 19 | 15:31:26 | coverage because of a job termination, and the |
| 20 | 15:31:30 | other reason was that she resigned for |
| 21 | 15:31:32 | personal reasons. |
| 22 | 15:31:34 | Q.  And let's look at the marks at the top |
| 23 | 15:31:40 | of the page.  Well, those look like '04 marks. |
| 24 | 15:31:44 | But from any mark on that page, |
| 25 | 15:31:44 | can you tell us when Starmark received this |

| | | |
|---|---|---|
| 1 | 15:31:48 | special enrollee form? |
| 2 | 15:31:48 | A.    6/14 of 2002. |
| 3 | 15:31:50 | Q.    And please tell us what marking on |
| 4 | 15:31:54 | this exhibit you are looking at. |
| 5 | 15:31:56 | A.    I'm looking at the line on the bottom |
| 6 | 15:31:58 | of the page that says TMR date, 6/14/2002, |
| 7 | 15:32:04 | VCN. |
| 8 | 15:32:04 | Q.    There is a big long number there? |
| 9 | 15:32:06 | A.    Yes. |
| 10 | 15:32:08 | Q.    Can you tell us what that means? |
| 11 | 15:32:08 | A.    That means that this came in through |
| 12 | 15:32:10 | our claims scanning area.  We have an area |
| 13 | 15:32:16 | that we submit claims through, and they get |
| 14 | 15:32:18 | scanned, and that comes from our scanner of |
| 15 | 15:32:22 | claims.  So this document came in through our |
| 16 | 15:32:28 | claims and benefits area. |
| 17 | 15:32:28 | Q.    And where is that area? |
| 18 | 15:32:30 | A.    Oh, you know, I don't really know |
| 19 | 15:32:34 | where that is being processed now.  I'm sorry. |
| 20 | 15:32:36 | Q.    Do you know where it was in 2002? |
| 21 | 15:32:38 | A.    I really don't. |
| 22 | 15:32:40 | Q.    What does "VCN" mean? |
| 23 | 15:32:44 | A.    I'm sorry.  You are beyond my |
| 24 | 15:32:46 | knowledge of why they used that coding.  I'm |
| 25 | 15:32:48 | not sure. |

| | | |
|---|---|---|
| 1 | 15:32:48 | Q.   Well, that claims area, do you know if |
| 2 | 15:32:54 | it was in Chicago or in some other state? |
| 3 | 15:32:58 | A.   I really don't know. |
| 4 | 15:33:02 | Q.   Where do you find Exhibit 3?  Where |
| 5 | 15:33:10 | has this been kept since 2002? |
| 6 | 15:33:12 | A.   It was in the underwriting file/admin |
| 7 | 15:33:14 | file that we pulled from off-site. |
| 8 | 15:33:20 | Q.   And the handwriting that's on here, |
| 9 | 15:33:22 | where it says group name, the Bethel Group, |
| 10 | 15:33:26 | and such, do you know whose handwriting that |
| 11 | 15:33:28 | is? |
| 12 | 15:33:28 | A.   No, sir. |
| 13 | 15:33:30 | Q.   Okay.  Go ahead. |
| 14 | 15:33:32 | Did you say yes or no? |
| 15 | 15:33:34 | A.   I said "no, sir." |
| 16 | 15:33:36 | Q.   Well, is that a Starmark employee's |
| 17 | 15:33:42 | handwriting or what? |
| 18 | 15:33:42 | A.   I don't know. |
| 19 | 15:33:44 | Q.   Could this be a record of a telephone |
| 20 | 15:33:46 | call, or is this a form that's -- |
| 21 | 15:33:48 | A.   This form is not used for that reason. |
| 22 | 15:33:50 | This form is a form that's handed out to our |
| 23 | 15:33:54 | employers in their employee admin kit to use |
| 24 | 15:33:58 | for the administration of their group.  This |
| 25 | 15:34:00 | is not an internal form.  It is an external |

| | | |
|---|---|---|
| 1 | 15:34:04 | form. |
| 2 | 15:34:04 | MR. FAYETTE:  I will ask |
| 3 | 15:34:06 | Mr. Jacobson's assistance, and turn to the |
| 4 | 15:34:06 | one-page exhibit that we designated Exhibit 4. |
| 5 | 15:34:10 | The top of it says "Group Premium." |
| 6 | 15:34:16 | MR. JACOBSON:  Okay.  It is the one |
| 7 | 15:34:16 | that looks like a file card? |
| 8 | 15:34:18 | MR. FAYETTE:  Yes. |
| 9 | 15:34:18 | MR. JACOBSON:  All right.  The exhibit |
| 10 | 15:34:22 | has been put to the witness, Exhibit 4. |
| 11 | 15:34:32 | BY MR. FAYETTE: |
| 12 | 15:34:32 | Q.  Turning to Exhibit 4, can you tell us |
| 13 | 15:34:34 | what that is, Ms. Wendell? |
| 14 | 15:34:36 | A.  This is actually what is called a fact |
| 15 | 15:34:40 | file form.  It is really not a form.  It is |
| 16 | 15:34:44 | our claims and benefits area has an envelope, |
| 17 | 15:34:46 | and attached to the envelope is a tear-off, |
| 18 | 15:34:50 | which is called this fact file, and that |
| 19 | 15:34:52 | envelope and fact file is used to submit |
| 20 | 15:34:54 | claims. |
| 21 | 15:35:00 | Q.  Okay.  And where was this document, |
| 22 | 15:35:04 | Exhibit 4, found? |
| 23 | 15:35:06 | A.  It was also found in our group and |
| 24 | 15:35:08 | administration file. |
| 25 | 15:35:08 | Q.  Do you know when this document was |