1    15:35:10    created?

2    15:35:10        A.    It came on the same, 6/14/2002,

3    15:35:16    submission.

4    15:35:18        Q.    And how do you know that?

5    15:35:18        A.    It is stamped and dated on the bottom

6    15:35:20    of the form with a TMR date and VCN number.

7    15:35:30        Q.    And turning back to Exhibit 2, can you

8    15:35:34    tell us why Starmark's receipt of these two

9    15:35:36    documents on June 14th is not noted on the

10    15:35:40    chronological entry document, Exhibit 2?

11    15:35:44        A.    No, sir, I cannot.

12    15:35:44        Q.    Should it have been?

13    15:35:46        A.    I'm sorry?

14    15:35:48        Q.    I said should it have been?

15    15:35:50        A.    Not necessarily because this was

16    15:35:52    closed out.

17    15:35:54        Q.    When was it closed out?

18    15:35:56        A.    Well, this was closed out on 6/6/2002.

19    15:36:00    There was no response.  So we closed it out.

20    15:36:12        Q.    Turning back to Exhibit 2, I will

21    15:36:16    direct your attention to what you were telling

22    15:36:16    me about, events on June 25th.

23    15:36:20        A.    Yes.

24    15:36:22        Q.    Do I understand you correctly:  You

25    15:36:24    are telling us that someone at Starmark

1    15:36:26    re-sent the documents to the applicant's post

2    15:36:32    office box, right?

3    15:36:34        A.    Yes.

4    15:36:34        Q.    And are you telling us, then, turning

5    15:36:38    to Exhibit 10, the first page of Exhibit 10,

6    15:36:42    that that post office box would be the

7    15:36:46    applicant's post office box as shown on her

8    15:36:48    application?

9    15:36:50        A.    Wait a minute.

10   15:36:56              I'm sorry.  Can you repeat that

11   15:36:58    again?  I'm sorry.

12   15:36:58        Q.    Are you telling us that the

13   15:37:00    application would have been returned, then, to

14   15:37:04    the post office box as shown on page 1 of

15   15:37:06    Exhibit 10, that being Box 2643, Bethel?

16   15:37:12        A.    Yes.

17   15:37:12        Q.    And we are agreed that there is no

18   15:37:14    record of those documents being returned to

19   15:37:16    Starmark, correct?

20   15:37:18        A.    Correct.

21   15:37:20        Q.    When Starmark sent these documents

22   15:37:24    back, can you tell us what would have been

23   15:37:28    sent back to an applicant?  Did she get a

24   15:37:36    cover letter or an explanatory letter or just

25   15:37:38    a returned document?

1   15:37:40      A.   Actually, it would have been

2   15:37:42   Exhibit 10.

3   15:37:44      Q.   I'm sorry.  Go ahead and describe

4   15:37:46   that.  If the applicant had gotten it,

5   15:37:48   received it, what would have been in there?

6   15:37:50      A.   She would have received a status on

7   15:37:52   new employee addition form, which explains

8   15:37:54   that the group number was missing, and she

9   15:37:56   would have gotten her application returned.

10  15:37:58      Q.   Did it request additional information?

11  15:38:02      A.   It says:  "The processing request has

12  15:38:04   been delayed.  Please correct and return the

13  15:38:06   employee enrollment form for the name of

14  15:38:08   company or group number," and then we

15  15:38:10   handwrote on the bottom:  "Please respond

16  15:38:14   within ten days for consideration."  So we

17  15:38:18   would have just re-sent that to that P.O. Box.

18  15:38:22      Q.   On June 25th?

19  15:38:22      A.   Yes.

20  15:38:26      Q.   Now, these documents that we have

21  15:38:32   discussed so far this afternoon, are these the

22  15:38:34   only documents in Starmark's possession that

23  15:38:40   mention Melissa Virtue?

24  15:38:42      A.   Yes.

25  15:38:54         MR. FAYETTE:  What I'm going to do is,

1    15:38:56    I think at this point, counsel, I'm going to

2    15:38:58    ask that we go off record for a minute or two

3    15:39:00    so we can take a look at our fax machine, so I

4    15:39:04    can take a look at this exhibit.

5    15:39:04            So unless there is anybody that

6    15:39:06    has got any objection, I'm going to ask that

7    15:39:08    we go off record here for the next couple of

8    15:39:10    minutes.

9    15:39:12        MR. JACOBSON:  Okay.  We will leave

10   15:39:12    the phone connected.

11   15:39:14        MR. FAYETTE:  Why don't we leave the

12   15:39:16    phone connected.

13   15:39:16        MR. JACOBSON:  Okay.  We are off

14   15:39:18    record.

15   15:39:20            (Recess taken.)

16   15:42:48    BY MR. FAYETTE:

17   15:42:48    Q.  I have in hand, then, a four-page fax

18   15:42:50    that appears to be Exhibit 10.  I will ask

19   15:42:58    Ms. Wendell to take that up.

20   15:43:00    A.  Okay.

21   15:43:04    Q.  I don't know what page of the

22   15:43:06    exhibit it is, but let's turn to the letter

23   15:43:10    from Mr. Alexander.  It is on Bethel Group

24   15:43:16    Home stationery.

25   15:43:18    A.  Yes.

| | | |
|---|---|---|
| 1 | 15:43:20 | Q.    Okay.   The date stamp that appears in |
| 2 | 15:43:22 | the right-hand corner there, May 13th, 2002, I |
| 3 | 15:43:24 | will direct your attention to that. |
| 4 | 15:43:26 | Are you telling us then, |
| 5 | 15:43:28 | Mr. Wendell, that that's the day that Starmark |
| 6 | 15:43:30 | received this document? |
| 7 | 15:43:30 | A.    That was the date received by our mail |
| 8 | 15:43:34 | services. |
| 9 | 15:43:34 | Q.    Got it. |
| 10 | 15:43:34 | Now, below that, there appears to |
| 11 | 15:43:38 | be a line under "Bethel Group Home health |
| 12 | 15:43:40 | plan" and a question mark.  Do you know who |
| 13 | 15:43:46 | added that question mark and that |
| 14 | 15:43:48 | underlineation? |
| 15 | 15:43:50 | A.    No, I do not. |
| 16 | 15:43:52 | Q.    And you are looking at a photocopy or |
| 17 | 15:43:54 | an original? |
| 18 | 15:43:56 | A.    I think it is a photocopy. |
| 19 | 15:44:06 | Q.    Turning to the first page of the |
| 20 | 15:44:08 | employee enrollment form, the one with |
| 21 | 15:44:14 | Starmark's logo in the upper left corner -- |
| 22 | 15:44:16 | A.    Yes. |
| 23 | 15:44:18 | Q.    -- below that it says:  "Employer |
| 24 | 15:44:20 | information:  Bethel Group Home." |
| 25 | 15:44:22 | A.    Yes. |

Exhibit
Page 035 of 108

| 1 | 15:44:22 | Q. And it appears to be in different |
| 2 | 15:44:24 | handwriting than the applicant's biographical |
| 3 | 15:44:28 | information; agreed? |
| 4 | 15:44:30 | A. Agreed. |
| 5 | 15:44:30 | Q. Do you know whose handwriting that is |
| 6 | 15:44:34 | where it says "group name"? |
| 7 | 15:44:36 | A. No, I do not. |
| 8 | 15:44:36 | Q. Is that the way that Starmark received |
| 9 | 15:44:38 | it, or can you tell us if someone at Starmark, |
| 10 | 15:44:42 | perhaps, added that name to that line? |
| 11 | 15:44:44 | A. I don't know. |
| 12 | 15:44:48 | Q. I'm sorry, what was the name of the |
| 13 | 15:45:02 | Starmark person -- was it Ms. Johnson that |
| 14 | 15:45:04 | would have received this? |
| 15 | 15:45:06 | A. Yes. |
| 16 | 15:45:06 | Q. Is there any reason that she can't |
| 17 | 15:45:08 | query your data base alphabetically to figure |
| 18 | 15:45:12 | out the group number for Bethel Group Home? |
| 19 | 15:45:16 | A. We do have that capability; however, |
| 20 | 15:45:18 | depending on how it was entered into the |
| 21 | 15:45:20 | system, sometimes it is difficult to find. |
| 22 | 15:45:24 | Q. We are agreed, though, there was no |
| 23 | 15:45:26 | record of any attempt to query alphabetically? |
| 24 | 15:45:30 | A. There is no record of that. |
| 25 | 15:45:30 | Q. And now I will turn to the one-page |

Exhibit
Page 036 of 108

1   15:45:34   document that says:   "Status on new employee

2   15:45:36   addition."   It has got Starmark's name in the

3   15:45:40   upper left-hand corner.

4   15:45:40      A.   Yes.

5   15:45:42      Q.   And then there is a signature at the

6   15:45:44   bottom, but I can't read it on my copy.   It

7   15:45:46   says:  "Group administration department."   At

8   15:45:48   the very bottom is a CC line.   Can you explain

9   15:45:50   that to us?

10  15:45:50      A.   The CC line, the signature is Melissa

11  15:45:54   Melendez.

12  15:45:54      Q.   And who is Melissa Melendez?

13  15:45:58      A.   Another member of the administration

14  15:46:00   department that handles add-ons.

15  15:46:02      Q.   And where it says here:  "Comments:

16  15:46:04   Please respond within ten days for

17  15:46:06   consideration," where does that ten days come

18  15:46:08   from?

19  15:46:10      A.   That is just a procedural time that we

20  15:46:14   allow insureds to respond back to us, so that

21  15:46:18   we can give them timely response on the

22  15:46:22   request.

23  15:46:22      Q.   But is that a written policy or

24  15:46:24   procedure?

25  15:46:24      A.   No.

1    15:46:28    Q.    And looking at the boxes that are

2    15:46:30    checked on this document, are we agreed that

3    15:46:34    the only reason this was returned is because

4    15:46:36    of the box that says name of company or group

5    15:46:40    number?

6    15:46:40    A.    Yes.

7    15:46:48    Q.    We are also agreed that documents

8    15:46:52    submitted with the employee enrollment form

9    15:46:54    clearly identify Bethel Group Home?  We agree

10   15:46:58    about that; don't we?

11   15:47:00    A.    I'm sorry.  Can you repeat that again?

12   15:47:02    Q.    We are agreed that the document

13   15:47:04    submitted with the application, that you

14   15:47:06    received on May 13th, clearly identifies

15   15:47:08    Bethel Group Home, agreed?

16   15:47:10    A.    Yes.

17   15:47:12    Q.    And this form is written -- I'm

18   15:47:16    returning now to the "Status on New Employee

19   15:47:18    Addition" form.

20   15:47:20            The only box that's checked here

21   15:47:22    is name of company or group number, right?

22   15:47:24    A.    Yes.

23   15:47:24    Q.    And that's written in the disjunctive;

24   15:47:28    in other words, doesn't it suffice that

25   15:47:32    Starmark knows the name of the company or the

1    15:47:34    group number?

2    15:47:34      A.    Not necessarily.

3    15:47:36      Q.    But that's all this form asks for,

4    15:47:38    right?

5    15:47:38      A.    Yes.

6    15:47:56      Q.    A question about that:  Why weren't

7    15:48:00    these documents sent to the employer, in this

8    15:48:04    case Bethel Group Home?  Can you speak to

9    15:48:08    that?

10   15:48:08      A.    It is our procedures to return the

11   15:48:10    application to the employee.

12   15:48:14      Q.    Right.  And, again, are those

13   15:48:18    procedures written, or it is just the way that

14   15:48:20    folks are trained?

15   15:48:20      A.    It is just the way they are trained.

16   15:48:26          MR. FAYETTE:  I will ask

17   15:48:26    Mr. Jacobson's assistance to take out some

18   15:48:28    letters that he has with him.  They begin with

19   15:48:34    Exhibit 6.

20   15:48:42          MR. JACOBSON:  Exhibit 6 is a one-page

21   15:48:44    letter dated November 26th, 2002.

22   15:48:50          MR. FAYETTE:  And if Mr. Jacobson

23   15:48:52    would present that to the witness.

24   15:48:54              Can you look at what we have

25   15:48:56    marked at Exhibit 6?

1    15:48:58              MR. JACOBSON:  Okay.  The witness is

2    15:49:00    examining the exhibit.

3    15:49:02              MR. FAYETTE:  Let me know when you are

4    15:49:04    done, Ms. Wendell.

5    15:49:14              THE WITNESS:  Okay.

6    15:49:16    BY MR. FAYETTE:

7    15:49:18        Q.    Is this the first time you have seen

8    15:49:22    this letter dated November 26th?

9    15:49:24        A.    Yes.

10   15:49:32        Q.    So you have no record of this letter

11   15:49:34    ever having been received by Starmark?

12   15:49:38        A.    Not by Starmark administration.

13   15:49:42        Q.    Well, is the address for Starmark

14   15:49:44    correct on that letter dated November 26th?

15   15:49:46        A.    Yes.

16   15:49:48        Q.    And down to the zip code and the

17   15:49:54    plus-four addition there?

18   15:49:54        A.    Yes.

19   15:49:58        Q.    If a letter like that had been sent to

20   15:50:02    Starmark at 400 Field Drive, Lake Forest,

21   15:50:06    Illinois, with that zip code, do you know

22   15:50:08    where it would have gone?

23   15:50:08        A.    Well, it would not have come to

24   15:50:14    administration because it is dealing with

25   15:50:16    outstanding medical bills.  My area does not

1   15:50:20   deal with the claims, nor benefits payable.

2   15:50:22   So this probably would have been forwarded on

3   15:50:24   to our benefit area.

4   15:50:30       Q.   And is it possible there are records

5   15:50:32   in that benefit area that you haven't found in

6   15:50:34   your preparation for this deposition?

7   15:50:36       A.   I guess it is possible.  I do not have

8   15:50:40   access to the benefits records.

9   15:50:46       Q.   Well, can you tell us generally what

10  15:50:48   would have happened if the benefits records

11  15:50:50   area had received a letter like that one dated

12  15:50:52   November 26th?

13  15:50:52       A.   I have no idea.

14  15:50:56       Q.   Is it possible the letter would have

15  15:50:58   been discarded without any action at all?

16  15:51:00       A.   You know what?  I don't know.  I would

17  15:51:02   say not.  It is not company policy anywhere to

18  15:51:06   discard letters without taking action, but I

19  15:51:10   can't really speak to that as I don't know.

20  15:51:12       Q.   Where, then, would be the best place

21  15:51:14   to research to see if Starmark has a record of

22  15:51:18   receipt of that letter dated November 26th?

23  15:51:20       A.   I don't know.  I really don't know.

24  15:51:22       Q.   Well, just a moment ago you mentioned

25  15:51:24   the benefits area.  Did I have that right?

```
 1  15:51:30    A.   Yes, we do have a benefits area.  How
 2  15:51:32  they keep their procedures and files and
 3  15:51:34  letters, I don't know.  I'm not privy to that
 4  15:51:36  information.  So I really couldn't tell you.
 5  15:51:38  I don't know.
 6  15:51:38    Q.   Could you tell us who would be able to
 7  15:51:40  tell us?
 8  15:51:40    A.   I really don't know.
 9  15:51:46    Q.   Do you know the name of the
10  15:51:52  administrator, the people in charge of that
11  15:51:54  area?
12  15:51:54    A.   Oh, gosh.
13  15:51:58        MR. MC DANIEL:  Excuse me, Jay.
14  15:52:02          This is a point that Bernie and I
15  15:52:04  didn't discuss yet.
16  15:52:06        MR. FAYETTE:  Okay, that's fine.
17  15:52:08        MR. MC DANIEL:  But I can tell her, in
18  15:52:10  front of us all, that I contacted our claim
19  15:52:16  office in Jackson, Minnesota, and the claims
20  15:52:18  supervisor that has been identified as a
21  15:52:20  knowledgeable person is Penny Gregory; and
22  15:52:24  when Bernie and I talked this morning, Penny
23  15:52:28  Gregory was one of the people that she would
24  15:52:30  have contacted at our claim office, and that
25  15:52:32  is the person that has been designated by the
```

| | | |
|---|---|---|
| 1 | 15:52:34 | claim office to answer any questions you might |
| 2 | 15:52:36 | have on this case. |
| 3 | 15:52:36 | MR. FAYETTE:  Okay.  I will take that. |
| 4 | 15:52:40 | BY MR. FAYETTE: |
| 5 | 15:52:40 | Q.   But are you telling us, Ms. Wendell, |
| 6 | 15:52:42 | that you, in preparation for this deposition, |
| 7 | 15:52:44 | have not researched the benefit area or the |
| 8 | 15:52:48 | claims area for records regarding Ms. Virtue? |
| 9 | 15:52:52 | Is that correct or not? |
| 10 | 15:52:52 | A.   That's correct.  That is beyond my |
| 11 | 15:52:54 | authority. |
| 12 | 15:52:54 | Q.   Understood.  Understood. |
| 13 | 15:52:56 | Can we talk now about new |
| 14 | 15:53:00 | enrollee procedures? |
| 15 | 15:53:00 | A.   Sure. |
| 16 | 15:53:02 | Q.   Can you tell us how new enrollee |
| 17 | 15:53:06 | procedures work for employees who are |
| 18 | 15:53:08 | enrolling under the Bethel Group Home policy |
| 19 | 15:53:12 | number?  And I guess I would ask you to start |
| 20 | 15:53:14 | with what's the enrollee required to do, and |
| 21 | 15:53:16 | then I will go from there. |
| 22 | 15:53:18 | A.   Well, the employer, as the |
| 23 | 15:53:20 | administrator, it is his responsibility to |
| 24 | 15:53:22 | advise the employee of their rights and submit |
| 25 | 15:53:24 | a written enrollment form to Starmark for |

| | | |
|---|---|---|
| 1 | 15:53:28 | consideration for coverage. |
| 2 | 15:53:30 | Q.   Okay.   So what is the enrollee |
| 3 | 15:53:42 | required to do in addition to filling out the |
| 4 | 15:53:46 | application? |
| 5 | 15:53:46 | A.   Filling out the application is their |
| 6 | 15:53:50 | total responsibility. |
| 7 | 15:53:50 | Q.   Can you tell us about processing time |
| 8 | 15:53:54 | for consideration?   That implies to me that |
| 9 | 15:53:58 | there is a period of time where Starmark needs |
| 10 | 15:54:00 | to review an application. |
| 11 | 15:54:00 | A.   It depends on if the application has |
| 12 | 15:54:02 | been completed with full detail that has been |
| 13 | 15:54:06 | requested.   If the application is complete, |
| 14 | 15:54:10 | and has total information, then we process our |
| 15 | 15:54:14 | applications in 24 hours. |
| 16 | 15:54:18 | Q.   And then can you speak to effective |
| 17 | 15:54:20 | date of coverage? |
| 18 | 15:54:22 | A.   It depends on the group's waiting |
| 19 | 15:54:24 | period as to when effective date of coverage |
| 20 | 15:54:28 | is given. |
| 21 | 15:54:30 | Q.   And do you know what the waiting |
| 22 | 15:54:30 | period is for the Bethel Group Home under this |
| 23 | 15:54:34 | policy number? |
| 24 | 15:54:34 | A.   Ninety days. |
| 25 | 15:54:38 | Q.   All right.   Can you explain |

| | | |
|---|---|---|
| 1 | 15:54:48 | preexisting condition limitations? |
| 2 | 15:54:52 | A.  If an employee is considered timely, |
| 3 | 15:54:58 | which means that they have signed their |
| 4 | 15:55:02 | application within their 90-day waiting |
| 5 | 15:55:04 | period, plus the 31-day enrollment period, and |
| 6 | 15:55:08 | that application is signed and complete, they |
| 7 | 15:55:10 | will be given an effective date of the first |
| 8 | 15:55:14 | of the month following the date of that |
| 9 | 15:55:16 | application.  They will be preempt 12 months, |
| 10 | 15:55:26 | and then given credit for prior coverage |
| 11 | 15:55:30 | against those 12 months if they are timely. |
| 12 | 15:55:34 | If they are late, it is 18 |
| 13 | 15:55:36 | months, and we give them credit for any prior |
| 14 | 15:55:40 | time served or prior coverage that they have |
| 15 | 15:55:44 | had. |
| 16 | 15:55:44 | Q.  I want you to assume, then, that |
| 17 | 15:55:46 | Starmark had received -- did you know that the |
| 18 | 15:55:48 | date that appears on Ms. Virtue's application |
| 19 | 15:55:50 | is April 17th, 2002? |
| 20 | 15:55:52 | A.  Yes. |
| 21 | 15:55:54 | Q.  That's the one that you received on |
| 22 | 15:55:56 | May 13th? |
| 23 | 15:55:56 | A.  Yes. |
| 24 | 15:55:58 | Q.  If Starmark had received that |
| 25 | 15:56:08 | application in April of 2002, what would have |

| | | |
|---|---|---|
| 1 | 15:56:10 | been the first day of coverage for Ms. Virtue |
| 2 | 15:56:14 | in this case? |
| 3 | 15:56:14 | A.   Ms. Virtue's date of hire was |
| 4 | 15:56:16 | January 21st of 2002.  Ninety days later is |
| 5 | 15:56:24 | April 21st of 2002.  She signed her |
| 6 | 15:56:26 | application on April 17th.  She was in her |
| 7 | 15:56:28 | 90-day waiting period.  If she had not checked |
| 8 | 15:56:30 | that she had waived coverage, we would have |
| 9 | 15:56:34 | given her a May 1st effective date, and given |
| 10 | 15:56:36 | her credit for the fact that she had coverage |
| 11 | 15:56:42 | with Aetna starting March -- oh, that's kind |
| 12 | 15:56:54 | of strange. |
| 13 | 15:56:56 | We would have questioned whether |
| 14 | 15:56:58 | or not we would have given her credible |
| 15 | 15:57:00 | coverage.  Her proof of prior coverage states |
| 16 | 15:57:06 | that her effective date of her prior coverage |
| 17 | 15:57:08 | was March of 2002; she was applying April 17th |
| 18 | 15:57:14 | of 2002, but she says it terminated November |
| 19 | 15:57:18 | 26th of 2002. |
| 20 | 15:57:20 | So if we would have processed |
| 21 | 15:57:20 | this application, we would have questioned |
| 22 | 15:57:22 | whether or not she would have gotten prior |
| 23 | 15:57:26 | credible coverage due to the dates that she |
| 24 | 15:57:28 | has given us on her application. |
| 25 | 15:57:30 | Q.   You would have requested additional |

| | | |
|---|---|---|
| 1 | 15:57:32 | information? |
| 2 | 15:57:32 | A.    Yes. |
| 3 | 15:57:32 | Q.    Assume that date, that November 2002 |
| 4 | 15:57:36 | date, is incorrectly written.  Assume that it |
| 5 | 15:57:38 | is really November 26th, 2001.  Then explain |
| 6 | 15:57:42 | the effect on prior credible coverage. |
| 7 | 15:57:44 | A.    Well, I can't, because then she would |
| 8 | 15:57:46 | have more than a 60-day gap in coverage, and |
| 9 | 15:57:50 | she wouldn't get any credible coverage.  You |
| 10 | 15:57:52 | can't have more than a 60-day gap in coverage |
| 11 | 15:57:56 | to get your credible coverage.  If you do, you |
| 12 | 15:57:58 | don't get it. |
| 13 | 15:57:58 | Q.    So how would that affect preexisting |
| 14 | 15:58:00 | condition? |
| 15 | 15:58:00 | A.    She would have 12 months of |
| 16 | 15:58:02 | preexisting because she would not get any |
| 17 | 15:58:06 | reduction of that preexisting as a timely |
| 18 | 15:58:08 | enrollee. |
| 19 | 15:58:10 | Q.    Now, a moment ago, you just said her |
| 20 | 15:58:12 | date of hire was January 21st of 2002.  I am |
| 21 | 15:58:16 | assuming you were just repeating the date that |
| 22 | 15:58:18 | appears on the face of the application? |
| 23 | 15:58:20 | A.    That's all I can repeat is the |
| 24 | 15:58:20 | information she has provided on this |
| 25 | 15:58:22 | application. |

1    15:58:24    Q.    Okay.   Can you explain how claims are

2    15:58:32    handled under this policy?

3    15:58:34    A.    No, I cannot.

4    15:58:34    Q.    You may have already answered this:

5    15:58:42    Who would be the person who could?

6    15:58:42    A.    I believe that Steve stated that Penny

7    15:58:46    Gregory would be your contact as far as

8    15:58:46    benefits and how they are paid if there was

9    15:58:48    coverage under this policy.

10   15:58:50    Q.    I think you are right.

11   15:58:52              Do you recognize her as someone

12   15:58:54    that works in Jackson, Minnesota?

13   15:58:56    A.    Yes.

14   15:59:02    Q.    To what degree are you able to discuss

15   15:59:10    processing of claims where preexisting

16   15:59:12    conditions are at issue?

17   15:59:14    A.    Unfortunately, I am not able to

18   15:59:16    discuss the processing of claims in general.

19   15:59:18    I do not get involved and do not have any

20   15:59:20    knowledge of how that happens.   I am not

21   15:59:22    familiar with the handling of that and how the

22   15:59:26    systems work there.

23   15:59:26    Q.    You would defer those questions to

24   15:59:28    Ms. Gregory?

25   15:59:30    A.    Yes.

1   15:59:32        Q.    Likewise, on Exhibit 10, that you have

2   15:59:40   before you, if you look at -- it might be on

3   15:59:44   page 2 on your copy -- the questions that

4   15:59:48   relate to preexisting conditions, where the

5   15:59:50   applicant is asked about that sort of thing.

6   15:59:50        A.    Yes.

7   15:59:56        Q.    And I'm referring to the Section A.

8   16:00:04   It says:  "Medical Information, Section A,"

9   16:00:06   and in Question 1 the applicant is asked a

10  16:00:08   series of questions that begin with back and

11  16:00:10   colon, tumor/cancer, and such.

12  16:00:10        A.    Yes.

13  16:00:14        Q.    If I were to ask you questions,

14  16:00:16   Ms. Wendell, about, in the enrollment process,

15  16:00:18   what happens if there is positive responses to

16  16:00:20   any of these, could you speak to that?

17  16:00:22        A.    Yes.

18  16:00:24        Q.    Okay.  Go ahead, then.  Assume that an

19  16:00:26   applicant makes a positive response to

20  16:00:30   Section A, Question 1; back, colon,

21  16:00:34   tumor/cancer, some such thing.

22  16:00:36        A.    We have medical questionnaires that we

23  16:00:38   would either send them or make a phone call

24  16:00:40   and ask them to complete.  We use that

25  16:00:42   information purely for gathering data.  We

| | | |
|---|---|---|
| 1 | 16:00:48 | cannot decline coverage.  You know, all |
| 2 | 16:00:50 | coverage is guaranteed.  So it is not used for |
| 3 | 16:00:56 | any type of declination of coverage.  It is |
| 4 | 16:00:58 | used basically for information on experience. |
| 5 | 16:01:04 | Q.    Well, how does that match with the |
| 6 | 16:01:06 | information you told me about periods of |
| 7 | 16:01:08 | credible coverage? |
| 8 | 16:01:10 | A.    I don't understand the question.  I'm |
| 9 | 16:01:12 | sorry. |
| 10 | 16:01:12 | Q.    I thought you said just a moment ago |
| 11 | 16:01:14 | that you can't deny coverage. |
| 12 | 16:01:16 | A.    We can't deny issuing coverage, but |
| 13 | 16:01:20 | there are preexisting limitations that are |
| 14 | 16:01:22 | allowed by state law.  As long as you have a |
| 15 | 16:01:26 | timely enrollee, you are allowed to have a |
| 16 | 16:01:30 | preexisting clause, which we do. |
| 17 | 16:01:32 | Q.    Which would have what effect, then, on |
| 18 | 16:01:36 | treatment for that condition? |
| 19 | 16:01:36 | A.    I don't know how they pay that.  I do |
| 20 | 16:01:40 | know that you do have the ability to have |
| 21 | 16:01:44 | preexisting. |
| 22 | 16:01:52 | Q.    Do you know the effect on enrollment |
| 23 | 16:01:54 | if an applicant provides incomplete |
| 24 | 16:02:00 | information on this section, this section |
| 25 | 16:02:02 | about medical history? |

| | | |
|---|---|---|
| 1 | 16:02:04 | A.   If they do not answer |
| 2 | 16:02:08 | questions -- well, it depends on your size of |
| 3 | 16:02:12 | the group.  As you know, Section B says the |
| 4 | 16:02:14 | questions to all individuals for groups with |
| 5 | 16:02:16 | less than ten medical lives and all new |
| 6 | 16:02:20 | enrollees in force. |
| 7 | 16:02:20 | So depending on where you fall |
| 8 | 16:02:22 | into this category, we would ask you to fill |
| 9 | 16:02:24 | in Questions 1 through 5 or 6 and 7 depending |
| 10 | 16:02:28 | on what size group you are. |
| 11 | 16:02:28 | If they are not all completed, |
| 12 | 16:02:30 | depending on what category you fall into, we |
| 13 | 16:02:34 | will return that application and ask you to |
| 14 | 16:02:34 | complete those.  We will not process the |
| 15 | 16:02:36 | application without the completion of this |
| 16 | 16:02:38 | form. |
| 17 | 16:02:38 | Q.   You mentioned a medical questionnaire. |
| 18 | 16:02:42 | Can you explain that to me? |
| 19 | 16:02:44 | A.   They are just basic medical |
| 20 | 16:02:46 | questionnaires.  Let's say, for instance, that |
| 21 | 16:02:48 | someone had diabetes.  This medical |
| 22 | 16:02:52 | questionnaire just asks more information.  If |
| 23 | 16:02:56 | somebody checked diabetes, they would ask more |
| 24 | 16:02:58 | information, like are you on medication or |
| 25 | 16:03:00 | what kind of medication.  They would just ask |

| | | |
|---|---|---|
| 1 | 16:03:02 | them more specifics about what they checked |
| 2 | 16:03:04 | that they did not tell us on this form. |
| 3 | 16:03:06 | Q.   And what about on the form where it |
| 4 | 16:03:08 | says you may receive a call from the home |
| 5 | 16:03:10 | office?  Can you explain that? |
| 6 | 16:03:14 | It is on the right side, |
| 7 | 16:03:14 | underneath the big blank section. |
| 8 | 16:03:18 | A.   Okay.  I see it. |
| 9 | 16:03:18 | Q.   Do you know about that? |
| 10 | 16:03:20 | A.   Yes.  We would use that if we had to |
| 11 | 16:03:22 | ask them information about their medical |
| 12 | 16:03:28 | diagnosis or treatment that they have stated |
| 13 | 16:03:32 | there when they are doing any type of |
| 14 | 16:03:34 | underwriting. |
| 15 | 16:03:34 | Q.   Well, why would you do that?  Why |
| 16 | 16:03:36 | would people at the home office take that step |
| 17 | 16:03:38 | to ask more information? |
| 18 | 16:03:40 | A.   Why? |
| 19 | 16:03:42 | Q.   Yes.  Why?  What's the purpose? |
| 20 | 16:03:44 | A.   Because we use that for our experience |
| 21 | 16:03:48 | purposes.  We need to know what type of |
| 22 | 16:03:52 | medical conditions we have that are expected |
| 23 | 16:03:54 | on a group. |
| 24 | 16:04:00 | Q.   Well, would that information be used |
| 25 | 16:04:02 | to evaluate preexisting conditions? |

| | | |
|---|---|---|
| 1 | 16:04:04 | A.   We do not use that, no.   I mean, I |
| 2 | 16:04:08 | don't on this end use it in administration. |
| 3 | 16:04:12 | Our basic, with preexisting, is it is a basic |
| 4 | 16:04:14 | rule:   You have 12 or 18 months, depending on |
| 5 | 16:04:18 | whether you are timely or late, and depending |
| 6 | 16:04:20 | on what state you are in.   Some states have |
| 7 | 16:04:22 | shorter or longer preexisting rules depending |
| 8 | 16:04:26 | on their legislation, but preexisting is not |
| 9 | 16:04:30 | set based on the type of medical condition you |
| 10 | 16:04:34 | have.   State law doesn't allow that.   State |
| 11 | 16:04:36 | law only allows you to set preexisting on |
| 12 | 16:04:40 | their statutes, and what they have, and |
| 13 | 16:04:42 | whether you are late or timely. |
| 14 | 16:04:42 | Q.   Well, does the information in |
| 15 | 16:04:44 | Question 6 or 7 affect how claims evaluates |
| 16 | 16:04:48 | preexisting condition? |
| 17 | 16:04:48 | A.   I can't answer that question.   I don't |
| 18 | 16:04:50 | know. |
| 19 | 16:05:14 | Q.   Do you know where Starmark has a |
| 20 | 16:05:16 | written definition of the term "preexisting |
| 21 | 16:05:18 | condition" in your policy or procedure manual? |
| 22 | 16:05:24 | A.   I believe there might be a definition |
| 23 | 16:05:26 | in your certificate of insurance. |
| 24 | 16:05:28 | Q.   Okay. |
| 25 | 16:05:28 | A.   If I can find it. |

| | | |
|---|---|---|
| 1 | 16:05:36 | You might want to turn to your |
| 2 | 16:05:42 | Exhibit 9, certificate of insurance.  It is |
| 3 | 16:05:50 | actually page 9, and there is also a |
| 4 | 16:05:54 | definitions page, I guess 39.  There is a |
| 5 | 16:06:00 | definition of a preexisting condition on that |
| 6 | 16:06:02 | page, and there is also the benefit |
| 7 | 16:06:04 | limitations for preexisting conditions. |
| 8 | 16:06:08 | It tells you that no benefits |
| 9 | 16:06:08 | will be paid for any condition specifically |
| 10 | 16:06:10 | excluded from coverage by elimination rider, |
| 11 | 16:06:12 | which we don't rider anymore, but benefits for |
| 12 | 16:06:16 | covered expenses that result from care or |
| 13 | 16:06:18 | treatment of preexisting condition will not be |
| 14 | 16:06:20 | considered as covered charges until the early |
| 15 | 16:06:22 | of 12 months or 18 months if you are a late |
| 16 | 16:06:26 | enrollee. |
| 17 | 16:06:26 | I'm kind of paraphrasing, but it |
| 18 | 16:06:28 | is in your certificate of insurance about |
| 19 | 16:06:30 | payment of preexisting and how it is handled. |
| 20 | 16:06:36 | Q.   Bear with me.  I'm checking through my |
| 21 | 16:06:40 | notes here. |
| 22 | 16:06:40 | A.   Okay. |
| 23 | 16:06:40 | Q.   Can you tell us whether or not |
| 24 | 16:06:42 | Starmark -- we discussed late enrollees, |
| 25 | 16:06:44 | right? |

1    16:06:44    A.    Yes.

2    16:06:46    Q.    Can you explain what is a late

3    16:06:46    enrollee?

4    16:06:48    A.    A late enrollee is someone who doesn't

5    16:06:50    apply for coverage within their waiting period

6    16:06:54    and their enrollment period of the extended 31

7    16:06:56    days.

8    16:06:56    Q.    Well, who can be a late enrollee?

9    16:07:00    A.    Who can be a late enrollee?

10    16:07:04    Q.    Yes.

11    16:07:04    A.    I guess I don't understand the

12    16:07:08    question.

13    16:07:14    Q.    Well, what conditions apply before you

14    16:07:18    fall into this category?  Can anybody be a

15    16:07:20    late enrollee?

16    16:07:20    A.    You are a late enrollee if you are

17    16:07:24    hired by your employer, and you do not fill

18    16:07:26    out your applications and supply to Starmark

19    16:07:38    within your waiting period or your enrollment

20    16:07:46    period.

21    16:07:46    Q.    Okay.  And then what's the outer limit

22    16:07:58    of when you can be a late enrollee?

23    16:08:02    A.    I guess I don't understand what you

24    16:08:04    mean.

25    16:08:04    Q.    How late can you apply?  In other

| | | |
|---|---|---|
| 1 | 16:08:06 | words, can Ms. Virtue apply right now? |
| 2 | 16:08:08 | A.    She is no longer an active employee. |
| 3 | 16:08:10 | Q.    What about for periods of time when |
| 4 | 16:08:14 | she was? |
| 5 | 16:08:14 | A.    I don't understand what you mean.  She |
| 6 | 16:08:16 | already did apply. |
| 7 | 16:08:18 | Q.    Okay.  And as you sit here now, what's |
| 8 | 16:08:26 | the reason she was denied coverage? |
| 9 | 16:08:28 | A.    She wasn't denied coverage. |
| 10 | 16:08:30 | Q.    I beg your pardon? |
| 11 | 16:08:32 | A.    She wasn't denied coverage. |
| 12 | 16:08:34 | Q.    Okay.  I'm sorry. |
| 13 | 16:08:36 | Then what's the reason she was |
| 14 | 16:08:38 | not enrolled? |
| 15 | 16:08:38 | A.    The reason she wasn't enrolled was |
| 16 | 16:08:40 | twofold:  Number one, she never responded to |
| 17 | 16:08:44 | our inquiries.  We closed her out. |
| 18 | 16:08:48 | Number two, she checked the back |
| 19 | 16:08:52 | of her enrollment form saying that she was |
| 20 | 16:08:54 | waiving coverage for the employee for both |
| 21 | 16:08:56 | medical and dental. |
| 22 | 16:09:00 | Q.    Okay. |
| 23 | 16:09:00 | A.    But we never really got that far |
| 24 | 16:09:02 | because she never responded back to us. |
| 25 | 16:09:08 | Q.    Okay.  What's the first record that |

| | | |
|---|---|---|
| 1 | 16:09:08 | you have that anybody at Starmark noticed that |
| 2 | 16:09:12 | she checked the waiver boxes? |
| 3 | 16:09:14 | A.    Oh, I don't know that. |
| 4 | 16:09:20 | Q.    And you would agree that, at least in |
| 5 | 16:09:22 | June of 2002, up to June 25th, the people in |
| 6 | 16:09:28 | Ms. Johnson's office are seeking more |
| 7 | 16:09:30 | information, right? |
| 8 | 16:09:32 | A.    They returned the information to her, |
| 9 | 16:09:36 | yes. |
| 10 | 16:09:36 | Q.    So it is not like they saw the waiver |
| 11 | 16:09:38 | boxes, and then just said, "That's the end of |
| 12 | 16:09:40 | the issue," right? |
| 13 | 16:09:42 | A.    Right. |
| 14 | 16:09:42 | Q.    So sitting here right now, you can't |
| 15 | 16:09:46 | tell us the first point in time where Starmark |
| 16 | 16:09:54 | saw the waiver boxes on the second page, |
| 17 | 16:09:56 | right? |
| 18 | 16:09:56 | A.    I can't tell you that.  I have no |
| 19 | 16:10:00 | documentation.  So I do not know. |
| 20 | 16:10:02 | Q.    And is it possible that that was just |
| 21 | 16:10:04 | noticed for the first time in preparation for |
| 22 | 16:10:06 | this process, this deposition? |
| 23 | 16:10:06 | A.    I doubt that. |
| 24 | 16:10:10 | Q.    Well, why do you say that? |
| 25 | 16:10:10 | A.    Because we are pretty thorough when we |

| | | |
|---|---|---|
| 1 | 16:10:14 | go through these applications.  So I would |
| 2 | 16:10:16 | doubt that this would be the first time |
| 3 | 16:10:18 | somebody would have noticed it. |
| 4 | 16:10:18 | Q.   But it is certainly true that nobody |
| 5 | 16:10:22 | noticed that at about the point where |
| 6 | 16:10:26 | Ms. Melendez sent her the status memorandum, |
| 7 | 16:10:32 | right? |
| 8 | 16:10:32 | A.   Yes. |
| 9 | 16:10:36 | Q.   If an application for enrollment is |
| 10 | 16:10:40 | mistakenly received late by Starmark, what |
| 11 | 16:10:48 | procedures does Starmark use to process |
| 12 | 16:10:52 | mistakenly late received applications? |
| 13 | 16:10:54 | A.   I don't understand what you mean by |
| 14 | 16:10:56 | "mistakenly late." |
| 15 | 16:10:58 | Q.   Assume clerical error. |
| 16 | 16:11:00 | A.   A clerical error? |
| 17 | 16:11:02 | Q.   You don't get it until a matter of |
| 18 | 16:11:04 | weeks have passed from the employee's original |
| 19 | 16:11:10 | eligibility date. |
| 20 | 16:11:12 | Is that a clear hypothetical? |
| 21 | 16:11:16 | A.   Repeat that again. |
| 22 | 16:11:18 | Q.   Assume that through clerical error the |
| 23 | 16:11:20 | application is received late, by a matter of |
| 24 | 16:11:24 | weeks.  Can you speak to what procedures |
| 25 | 16:11:26 | Starmark uses to process a late received |

1    16:11:30    application?

2    16:11:30        A.    If they are late by a matter of weeks,

3    16:11:32    and they are a new hire, they would be

4    16:11:38    processed as a late enrollee.

5    16:11:42        Q.    And are these procedures written down

6    16:11:44    anywhere?

7    16:11:44        A.    Yes.

8    16:11:46        Q.    Specifically?

9    16:11:48        A.    You should be able to find them in the

10   16:11:52    administration manual.  Do you have an

11   16:11:54    employer's administration guide?

12   16:11:56        Q.    You know, I think we do.

13   16:12:00            MR. FAYETTE:  I will ask for

14   16:12:00    Mr. Jacobson's help here:  There is a document

15   16:12:02    that we have designated Exhibit 5.

16   16:12:08            MR. JACOBSON:  It is entitled "Welcome

17   16:12:10    to Starmark."

18   16:12:12            MR. FAYETTE:  That's the first page I

19   16:12:12    have, and then at the very bottom there is a

20   16:12:14    Bates stamp 10938.

21   16:12:18            MR. JACOBSON:  All right.  That

22   16:12:18    exhibit is being tendered to the witness.

23   16:12:24    BY MR. FAYETTE:

24   16:12:24        Q.    Ms. Wendell, when you have had a

25   16:12:26    moment to check over that, can you tell us

Exhibit
Page 059 of 108

| | | |
|---|---|---|
| 1 | 16:12:28 | what that is? |
| 2 | 16:12:28 | A.   This is our administration guide that |
| 3 | 16:12:30 | we issue to each of our groups as they enroll |
| 4 | 16:12:34 | with us; not to the members, to the groups. |
| 5 | 16:12:36 | Q.   And it is a 50-something page |
| 6 | 16:12:40 | document, so you might want a minute to look |
| 7 | 16:12:42 | through it, but can you assure us that that's |
| 8 | 16:12:44 | the administration guide that employers would |
| 9 | 16:12:48 | have relied upon in 2002, at least that the |
| 10 | 16:12:52 | Bethel Group Home would have relied upon in |
| 11 | 16:12:54 | 2002? |
| 12 | 16:12:54 | A.   Yes, I believe so. |
| 13 | 16:12:56 | Q.   And now, to answer the question asked |
| 14 | 16:12:58 | a moment ago, I asked you a question about |
| 15 | 16:13:02 | late enrollees and if these policies are |
| 16 | 16:13:04 | written down anywhere.  Can you direct me to |
| 17 | 16:13:06 | where that would be in this document, in |
| 18 | 16:13:08 | Exhibit 5? |
| 19 | 16:13:10 | A.   Yes, I think so. |
| 20 | 16:13:26 | Page 7, under who is eligible, |
| 21 | 16:13:40 | when is someone eligible, and how to enroll |
| 22 | 16:13:42 | new employees and dependents. |
| 23 | 16:13:46 | Q.   Just bear with me, just for a second. |
| 24 | 16:13:50 | You agree that this is the |
| 25 | 16:13:56 | administration manual that Bethel Group Home |

```
1    16:13:58   would have relied upon in this particular case

2    16:14:02   in 2002, right?

3    16:14:02      A.   I believe so.

4    16:14:04      Q.   Could you turn to page 13?

5    16:14:12      A.   Okay.

6    16:14:14      Q.   I will direct your attention to the

7    16:14:16   very bottom of the page.  The Bates stamp

8    16:14:18   number, the five-digit number that we have put

9    16:14:20   on this, is page 10951.

10   16:14:24      A.   Yes.

11   16:14:24      Q.   This is a section that talks about

12   16:14:26   waiving coverage.

13   16:14:28      A.   Yes.

14   16:14:28      Q.   Would you agree these are the rules

15   16:14:30   that pertain to when an employee could waive

16   16:14:38   coverage under the group plan?

17   16:14:40      A.   Yes.

18   16:14:40      Q.   And what's the last sentence there?

19   16:14:42      A.   In the waiver section, two boxes must

20   16:14:44   be checked, coverage declined and the reason.

21   16:14:48      Q.   And then turn to that page of

22   16:14:52   Exhibit 10, if you would.

23   16:14:58      A.   Okay.

24   16:15:00      Q.   Is that why, on the second page of

25   16:15:02   Exhibit 10, in this waiver section, where the
```

| | | |
|---|---|---|
| 1 | 16:15:04 | two boxes are checked, below that there is a |
| 2 | 16:15:08 | line that says:  "Reason for waiving |
| 3 | 16:15:10 | coverage," colon? |
| 4 | 16:15:12 | A.   Okay. |
| 5 | 16:15:14 | Q.   Is that why the form asks for that? |
| 6 | 16:15:16 | A.   Is that why the form asks for that? |
| 7 | 16:15:26 | I guess, yes. |
| 8 | 16:15:28 | Q.   And in Ms. Virtue's case, on the |
| 9 | 16:15:34 | second page of Exhibit 10, the reason is not |
| 10 | 16:15:36 | filled in?  Are we agreed about that? |
| 11 | 16:15:38 | A.   Yes. |
| 12 | 16:15:42 | Q.   You can set that aside. |
| 13 | 16:15:44 | Do you agree that before coverage |
| 14 | 16:15:58 | is waived, Starmark should get a reason? |
| 15 | 16:16:06 | A.   No. |
| 16 | 16:16:06 | Q.   Why not? |
| 17 | 16:16:08 | A.   Because it really doesn't make any |
| 18 | 16:16:14 | difference technically.  If they don't have a |
| 19 | 16:16:18 | good reason, we are not going to tell them |
| 20 | 16:16:20 | they have to take coverage. |
| 21 | 16:16:22 | Q.   Well, that's inconsistent with what it |
| 22 | 16:16:26 | says on page 13 of Exhibit 5, right? |
| 23 | 16:16:30 | A.   Yes. |
| 24 | 16:16:36 | Q.   A moment ago I asked you a series of |
| 25 | 16:16:40 | questions about clerical errors, processing |

```
1    16:16:42   errors, things coming in late, that sort of
2    16:16:44   thing.
3    16:16:44       A.   All right.
4    16:16:46       Q.   Can you tell us, from your personal
5    16:16:48   experience, what sort of errors in enrolling
6    16:16:50   new enrollees has Starmark experienced?  What
7    16:16:56   are some examples you can think of?
8    16:16:58       A.   Whose errors?  Our errors?
9    16:17:00       Q.   Or anyone.  I'm asking for examples.
10   16:17:02   I'm asking for, in your experience, errors
11   16:17:06   that have resulted in late receipt of an
12   16:17:08   application.
13   16:17:08       A.   I'm trying to think.  I mean, we do
14   16:17:20   have some, but I don't see a whole lot of
15   16:17:22   errors that happen.
16   16:17:30               Reasons that an application would
17   16:17:32   be late?
18   16:17:34       Q.   Or incomplete.  I'm looking for
19   16:17:38   examples of clerical or administrative errors.
20   16:17:42       A.   I guess there have been times when we
21   16:17:48   have gotten applications late because of
22   16:17:50   administration changes in an employer's
23   16:17:56   office.
24   16:17:56       Q.   That sort of thing has happened?
25   16:17:58       A.   You know, to be perfectly honest, do I
```

| | | |
|--|--|--|
| 1 | 16:18:02 | actually remember an actual instance?  No. |
| 2 | 16:18:06 | Could I say that that possibly happened?  Yes, |
| 3 | 16:18:08 | but I can't give you an actual instance that |
| 4 | 16:18:10 | that was the case. |
| 5 | 16:18:12 | Q.    If you assume, in a case like that, |
| 6 | 16:18:16 | that the employer paid any back premiums due, |
| 7 | 16:18:20 | would Starmark deny coverage to an otherwise |
| 8 | 16:18:24 | eligible employee in that case? |
| 9 | 16:18:26 | A.    Would we deny coverage?  I guess each |
| 10 | 16:18:32 | situation would be different depending on how |
| 11 | 16:18:34 | late you are talking.  I mean, an application |
| 12 | 16:18:38 | can't be any more than 60 days stale dated |
| 13 | 16:18:40 | old.  So it depends on your definition of |
| 14 | 16:18:42 | "late" and when somebody would come back and |
| 15 | 16:18:46 | ask us to do that. |
| 16 | 16:18:46 | Q.    You just mentioned that an application |
| 17 | 16:18:50 | can't be more than 60 days stale dated old. |
| 18 | 16:18:52 | A.    Right. |
| 19 | 16:18:52 | Q.    Can you tell me where it says that? |
| 20 | 16:18:54 | A.    Let me look in the admin guide.  I |
| 21 | 16:19:02 | believe it says it in the administration |
| 22 | 16:19:04 | guide. |
| 23 | 16:19:04 | It actually says on the |
| 24 | 16:19:06 | application itself, under agreement and |
| 25 | 16:19:08 | authorization:  "I also understand that all |

Exhibit
Page 064 of 108

64

| | | |
|---|---|---|
| 1 | 16:19:12 | statements and answers made in this |
| 2 | 16:19:12 | application will be valid for 60 days from the |
| 3 | 16:19:16 | date signed." So anything after 60 days we |
| 4 | 16:19:20 | ask them for a new application. |
| 5 | 16:19:24 | Q. So that implies that you would accept |
| 6 | 16:19:28 | a new application after 60 days, right? They |
| 7 | 16:19:32 | would just send a new form in? |
| 8 | 16:19:34 | A. Depending on the situation. |
| 9 | 16:19:36 | Q. So you are saying it is possible that |
| 10 | 16:19:38 | if an employer paid back premiums, you would |
| 11 | 16:19:42 | process an application received more than 60 |
| 12 | 16:19:44 | days later, right? |
| 13 | 16:19:46 | A. It is really hard to say. I mean, it |
| 14 | 16:19:50 | depends on the situation and what occurred. |
| 15 | 16:19:52 | Q. Well, let's look at Exhibit 5, that's |
| 16 | 16:19:58 | the employer's administration manual. |
| 17 | 16:20:02 | A. Yes. |
| 18 | 16:20:02 | Q. If you could turn to page 12. |
| 19 | 16:20:10 | A. Okay. |
| 20 | 16:20:10 | Q. And I'm looking at Miscellaneous |
| 21 | 16:20:12 | Administration section. There is Section 1 |
| 22 | 16:20:16 | and then there is Section 2. |
| 23 | 16:20:16 | A. Yes. |
| 24 | 16:20:18 | Q. Could you read to me paragraph 2 |
| 25 | 16:20:20 | there, clerical errors? |

| | | |
|---|---|---|
| 1 | 16:20:22 | A.  "Clerical errors by the employer or by |
| 2 | 16:20:24 | us shall not invalidate coverage of a person |
| 3 | 16:20:30 | insured.  This includes errors in enrolling, |
| 4 | 16:20:32 | recording or reporting for coverage purposes. |
| 5 | 16:20:34 | Any premium not paid because of the error must |
| 6 | 16:20:36 | be paid in full at the time the error is |
| 7 | 16:20:38 | corrected." |
| 8 | 16:20:38 | Q.  Would that kind of clerical error |
| 9 | 16:20:42 | include not having a group number on the |
| 10 | 16:20:44 | application? |
| 11 | 16:20:44 | A.  I don't consider that a clerical |
| 12 | 16:20:46 | error. |
| 13 | 16:20:48 | Q.  Well, what do you consider that? |
| 14 | 16:20:50 | A.  No one made an error.  They didn't |
| 15 | 16:20:54 | supply it.  I don't consider it an error |
| 16 | 16:20:56 | because response wasn't made.  It wasn't |
| 17 | 16:20:58 | because the group number wasn't there.  The |
| 18 | 16:21:00 | reason coverage wasn't afforded is because |
| 19 | 16:21:02 | response wasn't made to inquiries by mail.  So |
| 20 | 16:21:04 | I don't think there was any error made |
| 21 | 16:21:06 | clerically on this one.  I think we did |
| 22 | 16:21:08 | everything we were supposed to do. |
| 23 | 16:21:10 | Q.  I'm going to ask you this:  Can you |
| 24 | 16:21:12 | tell us when coverage ends under this |
| 25 | 16:21:14 | certificate of insurance? |

66

Exhibit
Page 066 of 108

1    16:21:16     A.    When coverage ends?

2    16:21:18     Q.    Yes.

3    16:21:18     A.    The end of the month of employment.

4    16:21:24     Q.    So, in other words, assume that

5    16:21:28   somebody quits on the 15th of any given month.

6    16:21:30   When does coverage under the Starmark group

7    16:21:36   health policy --

8    16:21:36     A.    The end of that month.

9    16:21:36     Q.    So the 30th or the 31st, whatever the

10   16:21:38   last day is?

11   16:21:38     A.    Whatever the last day of that month

12   16:21:40   is, coverage ends.

13   16:21:48     Q.    I'm going to return to a concept I

14   16:21:50   just addressed a moment ago, and tell me if

15   16:21:52   you have completed your answer to it:  If,

16   16:21:56   because of an erroneous failure to submit her

17   16:21:58   application, Ms. Virtue submitted an

18   16:22:00   application today, would she have coverage for

19   16:22:02   the time period she was otherwise eligible for

20   16:22:04   enrollment, otherwise employed by Bethel Group

21   16:22:08   Home?

22   16:22:08     A.    No.

23   16:22:10     Q.    After completion of her waiting

24   16:22:12   period?

25   16:22:12     A.    No.

| | | |
|---|---|---|
| 1 | 16:22:12 | Q.   Okay.  Why not? |
| 2 | 16:22:14 | A.   Why would we not accept an application |
| 3 | 16:22:16 | today? |
| 4 | 16:22:16 | Q.   Well, I guess let me get clear on my |
| 5 | 16:22:20 | question.  I know it is a long question.  Here |
| 6 | 16:22:22 | is my question. |
| 7 | 16:22:24 | If, because of erroneous failure |
| 8 | 16:22:26 | to submit her application, Ms. Virtue |
| 9 | 16:22:28 | submitted her application today, would she |
| 10 | 16:22:32 | have coverage for the time period she was |
| 11 | 16:22:36 | otherwise eligible, meaning the time period |
| 12 | 16:22:38 | she was employed by Bethel Group Home after |
| 13 | 16:22:40 | completion of her waiting period? |
| 14 | 16:22:42 | A.   No. |
| 15 | 16:22:42 | Q.   Okay.  And why not? |
| 16 | 16:22:44 | A.   Because she did not respond to our |
| 17 | 16:22:50 | inquiries by mail within the ten days that we |
| 18 | 16:22:52 | gave her to get back to us concerning the fact |
| 19 | 16:22:56 | that we didn't have a group number.  She |
| 20 | 16:22:58 | didn't respond.  I mean, we sent letters |
| 21 | 16:23:04 | twice, to get her to respond to us, and she |
| 22 | 16:23:06 | did not.  So we would not afford coverage. |
| 23 | 16:23:08 | Q.   Give me a moment, please. |
| 24 | 16:23:18 | Well, sure, but what if she was |
| 25 | 16:23:20 | hospitalized during that period? |

1    16:23:22    A.    I'm sorry.  I don't believe we would

2    16:23:28    afford coverage.

3    16:23:30    Q.    But you agree that other than the two

4    16:23:34    attempts to contact her by mail, that we have

5    16:23:36    already talked about this afternoon, you have

6    16:23:38    no records of any other attempt to contact

7    16:23:42    Ms. Virtue to obtain that missing group

8    16:23:46    number; agreed?

9    16:23:46    A.    Agreed.

10   16:23:50         MR. FAYETTE:  Bear with me again.

11   16:24:00            (Brief pause.)

12   16:24:00    BY MR. FAYETTE:

13   16:24:00    Q.    Can you explain why you wouldn't have

14   16:24:02    given her coverage if she had been

15   16:24:06    hospitalized, but made a good faith effort to

16   16:24:08    enroll by sending you the application, along

17   16:24:10    with the employer's memo saying:  "Please

18   16:24:12    enroll her"?

19   16:24:14    A.    It is just not procedure.  We just

20   16:24:18    would not do that.

21   16:24:22    Q.    Any other explanation than that?

22   16:24:24    A.    No.

23   16:24:26    Q.    And I understood your answer to be no?

24   16:24:26    A.    No.

25   16:24:28         MR. FAYETTE:  All right.  Let me check

| | | |
|---|---|---|
| 1 | 16:24:30 | my notes. |
| 2 | 16:24:34 | What I would like to do is go off |
| 3 | 16:24:38 | record at this point for a couple of minutes, |
| 4 | 16:24:42 | as we did last time.  I'm closer to the end |
| 5 | 16:24:44 | than the beginning.  So I would ask you to |
| 6 | 16:24:46 | bear with me. |
| 7 | 16:24:46 | I will leave the phone line open, |
| 8 | 16:24:50 | but I would ask the court reporter to go off |
| 9 | 16:24:52 | record for a period of about two minutes. |
| 10 | 16:24:54 | (Recess taken.) |
| 11 | 16:40:04 | MR. FAYETTE:  Back on record. |
| 12 | 16:40:06 | Counsel, I'm going to voice an |
| 13 | 16:40:08 | objection that I voiced as we convened, but |
| 14 | 16:40:10 | not on the record.  I will place on record now |
| 15 | 16:40:14 | my continuing objection to Ms. Magura's |
| 16 | 16:40:18 | participation.  She's not a party.  I don't |
| 17 | 16:40:20 | believe she has got a right to participate.  I |
| 18 | 16:40:22 | would ask that you agree that I told you that, |
| 19 | 16:40:24 | before we started this deposition, and that I |
| 20 | 16:40:26 | indicated that in a desire not to derail this |
| 21 | 16:40:30 | deposition, and waste so many folks' time, I |
| 22 | 16:40:34 | decided not to try to get a judge on the line |
| 23 | 16:40:36 | to resolve the objection. |
| 24 | 16:40:38 | So if I have misstated the |
| 25 | 16:40:40 | history of that, feel free to correct me now. |