| | | |
|---|---|---|
| 1 | 16:40:42 | MR. VALCARCE:  If you want a response, |
| 2 | 16:40:44 | my response is I think it has been waived |
| 3 | 16:40:46 | because it was not made on the record, and my |
| 4 | 16:40:48 | second point would be that this deposition was |
| 5 | 16:40:50 | noticed about four days ago.  So to expedite |
| 6 | 16:40:54 | and accommodate your late scheduling of a |
| 7 | 16:40:56 | deposition, where we would have to get the |
| 8 | 16:40:58 | transcript, anyway, to my expert, she is just |
| 9 | 16:41:02 | listening on the phone. |
| 10 | 16:41:04 | Go ahead, though. |
| 11 | 16:41:04 | MR. FAYETTE:  I'm going to proceed |
| 12 | 16:41:06 | with questions. |
| 13 | 16:41:06 | BY MR. FAYETTE: |
| 14 | 16:41:08 | Q.   Ms. Wendell, I would ask you to take |
| 15 | 16:41:10 | up the certificate of insurance that is |
| 16 | 16:41:14 | Exhibit 9, I believe. |
| 17 | 16:41:14 | A.   Yes. |
| 18 | 16:41:20 | Q.   You stated earlier that the definition |
| 19 | 16:41:22 | of "preexisting conditions" is on page 39 of |
| 20 | 16:41:26 | that document? |
| 21 | 16:41:26 | A.   I believe so.  Let me check again.  I |
| 22 | 16:41:30 | believe that was the page I was looking at. |
| 23 | 16:41:32 | Yes. |
| 24 | 16:41:32 | Q.   And this part that I'm looking at on |
| 25 | 16:41:40 | page 39 is three paragraphs down, under the |

1    16:41:42    comprehensive medical benefits section?

2    16:41:46        A.    Yes.

3    16:41:46        Q.    Can we agree that's the definition of

4    16:41:50    preexisting conditions that would have applied

5    16:41:52    had Ms. Virtue been enrolled in May of 2002?

6    16:41:56        A.    Yes.

7    16:41:58        Q.    Can you then go and read that

8    16:42:00    definition into that record, please?

9    16:42:02        A.    "Preexisting condition is sickness or

10    16:42:04    injury for which a person has during the six

11    16:42:06    months just prior to his or her enrollment

12    16:42:08    date under this plan:  One, received medical

13    16:42:10    care, advice or treatment; two, had drugs or

14    16:42:14    medicines prescribed, whether taken or not, or

15    16:42:16    had diagnostic tests ordered, whether

16    16:42:18    performed or not.  Such condition will be

17    16:42:20    deemed to be preexisting, whether or not the

18    16:42:20    final diagnosis has been made.  Pregnancy is

19    16:42:22    not a preexisting condition.  Genetic

20    16:42:26    information shall not be treated as

21    16:42:28    preexisting condition in the absence of a

22    16:42:30    diagnosis if the condition related to such

23    16:42:32    information."

24    16:42:32        Q.    Ms. Wendell, are you qualified to

25    16:42:36    speak as to what medical conditions or what

| | | |
|---|---|---|
| 1 | 16:42:38 | would or would not fall within that |
| 2 | 16:42:40 | definition? |
| 3 | 16:42:40 | A.   No, I cannot. |
| 4 | 16:42:42 | Q.   Who would be? |
| 5 | 16:42:44 | A.   You would need to speak with our |
| 6 | 16:42:46 | benefits area, Penny Gregory. |
| 7 | 16:42:58 | MR. MC DANIEL:  Jay, were we a party |
| 8 | 16:43:00 | to this, I think we would object on the |
| 9 | 16:43:02 | grounds that we don't have complete |
| 10 | 16:43:04 | information.  We wouldn't be able to respond |
| 11 | 16:43:06 | to this because we don't have any information |
| 12 | 16:43:10 | that we would need. |
| 13 | 16:43:10 | MR. FAYETTE:  Very well. |
| 14 | 16:43:10 | BY MR. FAYETTE: |
| 15 | 16:43:12 | Q.   I would like to return to our |
| 16 | 16:43:14 | discussion about the waiver section, |
| 17 | 16:43:14 | Ms. Wendell. |
| 18 | 16:43:16 | A.   Yes. |
| 19 | 16:43:16 | Q.   On Exhibit 10, we discussed earlier on |
| 20 | 16:43:20 | Exhibit 10 the waiver boxes appear to be |
| 21 | 16:43:22 | checked in Ms. Virtue's case? |
| 22 | 16:43:24 | A.   Yes. |
| 23 | 16:43:24 | Q.   Can you give us an idea of how often |
| 24 | 16:43:28 | Starmark gets forms where the waiver boxes are |
| 25 | 16:43:34 | checked and how frequent is that? |

1    16:43:36    A.    Oh, it is a regular occurrence.  I

2    16:43:38    can't give you a number, but it is daily.

3    16:43:40    Q.    And can you give us some sort of idea

4    16:43:44    in how many of those cases the entire

5    16:43:46    application is completed, but then the waiver

6    16:43:50    boxes on the last page are checked as well?

7    16:43:54    A.    Oh, I don't know.  I have never really

8    16:43:56    looked at it that way.  I don't know.

9    16:43:58    Q.    Are you ever aware of that happening

10    16:44:00    previously?

11    16:44:02    A.    Of where it is all filled out, and

12    16:44:04    they have check marked the waiver?

13    16:44:06    Q.    Yes.

14    16:44:08    A.    Oh, yes.

15    16:44:08    Q.    Does that strike you as an apparent

16    16:44:12    inconsistency?

17    16:44:12    A.    To fill it out and do the waiver form?

18    16:44:14    No.

19    16:44:16    Q.    Why not?

20    16:44:16    A.    Because most people, when they are

21    16:44:20    given a form, fill out the whole form, even if

22    16:44:22    they are waiving it or not.

23    16:44:22    Q.    Do you agree that there are some

24    16:44:24    elements that are inconsistent; for instance,

25    16:44:28    where the person writes down who the

| | | |
|---|---|---|
| 1 | 16:44:28 | beneficiary is, and gives a medical history |
| 2 | 16:44:32 | down to whether or not they are a smoker or |
| 3 | 16:44:34 | not, but then waives coverage? |
| 4 | 16:44:38 | A.    It is really not unusual. |
| 5 | 16:44:40 | Q.    Do you agree that it is an apparent |
| 6 | 16:44:42 | inconsistency? |
| 7 | 16:44:44 | A.    I guess, no, I don't agree. |
| 8 | 16:44:46 | Q.    Then let's go outside the application, |
| 9 | 16:44:48 | to the memorandum in this case, which Starmark |
| 10 | 16:44:50 | received the one that bears Mr. Alexander's |
| 11 | 16:44:54 | signature. |
| 12 | 16:44:54 | A.    Yes. |
| 13 | 16:44:56 | Q.    We are agreed that that letter is not |
| 14 | 16:44:58 | ambiguous, right? |
| 15 | 16:44:58 | A.    It is not what? |
| 16 | 16:45:00 | Q.    It is not ambiguous.  It is clear. |
| 17 | 16:45:02 | A.    Yes. |
| 18 | 16:45:02 | Q.    And do you consider it to be |
| 19 | 16:45:06 | inconsistent with the waiver boxes being |
| 20 | 16:45:10 | checked? |
| 21 | 16:45:10 | A.    No. |
| 22 | 16:45:12 | Q.    Okay.  Explain why not. |
| 23 | 16:45:14 | A.    Because there are times, just because |
| 24 | 16:45:16 | an employer gives us a memorandum, it doesn't |
| 25 | 16:45:20 | mean that he has reviewed the application, and |

| | | |
|---|---|---|
| 1 | 16:45:22 | he may not realize what the employee has done. |
| 2 | 16:45:26 | So it is not unusual for us to get something, |
| 3 | 16:45:28 | such as this, asking us to enroll.  I mean, it |
| 4 | 16:45:32 | is just a formality, a cover letter.  It is |
| 5 | 16:45:36 | not unusual for us to get that, not knowing |
| 6 | 16:45:38 | what the employee has done.  It is not unusual |
| 7 | 16:45:40 | at all. |
| 8 | 16:45:40 | Q.   But in this case, it is a little bit |
| 9 | 16:45:42 | more than a cover letter; wouldn't you agree? |
| 10 | 16:45:44 | And the way I will phrase the question is:  Do |
| 11 | 16:45:46 | you agree that Mr. Alexander's letter |
| 12 | 16:45:50 | references Ms. Virtue by name? |
| 13 | 16:45:52 | A.   Oh, yes. |
| 14 | 16:45:54 | Q.   So had Starmark detected an |
| 15 | 16:45:58 | inconsistency, what follow-up steps do you |
| 16 | 16:46:00 | think Starmark would have done? |
| 17 | 16:46:02 | A.   I don't think we would have thought |
| 18 | 16:46:08 | this inconsistent. |
| 19 | 16:46:10 | Q.   Do you consider Ms. Virtue to have |
| 20 | 16:46:12 | been a timely applicant? |
| 21 | 16:46:14 | A.   Yes. |
| 22 | 16:46:16 | Q.   And explain why, please. |
| 23 | 16:46:18 | A.   As I have said earlier, her |
| 24 | 16:46:22 | application was signed and dated within her |
| 25 | 16:46:24 | 90-day waiting period and the 31-day extension |

| | | |
|---|---|---|
| 1 | 16:46:30 | of enrollment period.  So she would have been |
| 2 | 16:46:32 | considered timely. |
| 3 | 16:46:34 | Q.   And assuming that she did not waive |
| 4 | 16:46:36 | coverage, do you agree that she would have had |
| 5 | 16:46:40 | coverage under this plan from May 1st, 2002 to |
| 6 | 16:46:44 | May 31st of 2002? |
| 7 | 16:46:46 | A.   If she hadn't waived coverage. |
| 8 | 16:46:50 | Q.   So assuming that, the answer to my |
| 9 | 16:46:54 | question is yes? |
| 10 | 16:46:54 | A.   Assuming that she didn't waive |
| 11 | 16:46:56 | coverage, yes. |
| 12 | 16:46:58 | Q.   And then assuming that she was no |
| 13 | 16:47:00 | longer an employee sometime in mid-May of |
| 14 | 16:47:06 | 2002, you agree that her coverage would have |
| 15 | 16:47:08 | ended on May 31st, 2002? |
| 16 | 16:47:10 | A.   If that's when she would have |
| 17 | 16:47:10 | terminated employment, yes. |
| 18 | 16:47:12 | MR. FAYETTE:  Let me check my notes. |
| 19 | 16:47:14 | THE WITNESS:  I thought it was June. |
| 20 | 16:47:18 | BY MR. FAYETTE: |
| 21 | 16:47:18 | Q.   Okay.  We are assuming she terminated |
| 22 | 16:47:20 | in mid-May 2002. |
| 23 | 16:47:22 | A.   Okay.  Then it would be May 31st. |
| 24 | 16:47:26 | MR. FAYETTE:  I will ask you to bear |
| 25 | 16:47:26 | with me for a moment. |

1    16:47:26              (Brief pause.)

2    16:47:52    BY MR. FAYETTE:

3    16:47:52        Q.    Ms. Wendell, can you tell us how

4    16:47:54    premiums would have been calculated under this

5    16:47:56    policy?

6    16:47:56        A.    What do you mean how premiums would

7    16:48:00    have been calculated?

8    16:48:00        Q.    Does the number of employees enrolled

9    16:48:02    in the plan have any bearing on what premium

10   16:48:06    is charged by Starmark?

11   16:48:08        A.    We do a list bill.  It is not

12   16:48:16    composite rated where it is the number of

13   16:48:18    employees.  It is based on each employee is

14   16:48:20    billed based on their age, and male/female,

15   16:48:28    et cetera.  I don't know Alaska law, whether

16   16:48:32    or not it allows them to do male/female, but

17   16:48:38    it is a list bill that is issued to the group.

18   16:48:40    It states each employee, and it tells you what

19   16:48:40    their premium is, but it is not based, as far

20   16:48:44    as I know, on the number of lives.

21   16:48:48        Q.    I'm sorry.  I have got to return to

22   16:48:54    your last answer because I'm not sure I

23   16:48:56    understand it:  So are you saying that the

24   16:48:58    number of employees doesn't affect what the

25   16:49:00    employer is billed?

| | | |
|---|---|---|
| 1 | 16:49:02 | A.   I don't believe it is number of |
| 2 | 16:49:02 | employees.  As far as I know, we don't base it |
| 3 | 16:49:06 | on the number of employees when it is a small |
| 4 | 16:49:08 | group like this.  It is based on age and other |
| 5 | 16:49:14 | factors, but I don't believe it is group size. |
| 6 | 16:49:18 | I don't know that absolutely, positively, but, |
| 7 | 16:49:22 | as far as I can recollect, on rating, I don't |
| 8 | 16:49:24 | believe number of employees has any bearing on |
| 9 | 16:49:28 | the rates. |
| 10 | 16:49:28 | Q.   What about claims submitted, if the |
| 11 | 16:49:32 | employer has one employee submitting a high |
| 12 | 16:49:34 | number of claims?  What effect does that have? |
| 13 | 16:49:36 | A.   You are out of my league.  I don't do |
| 14 | 16:49:40 | that part of the administration, the renewal |
| 15 | 16:49:42 | and the underwriting.  So I don't know. |
| 16 | 16:49:44 | Q.   Okay.  You know my next question:  Do |
| 17 | 16:49:50 | you know who would be able to speak to those |
| 18 | 16:49:54 | subjects? |
| 19 | 16:49:54 | A.   I would think you would want to talk |
| 20 | 16:49:56 | to either our actuarial area or our renewal |
| 21 | 16:50:00 | area.  I would imagine you would want to talk |
| 22 | 16:50:02 | to Tami Lykins. |
| 23 | 16:50:02 | Q.   And could I impose upon you to spell |
| 24 | 16:50:02 | her name for me? |
| 25 | 16:50:04 | A.   T-a-m-i is the first name.  Lykins, |

```
 1    16:50:06   L-y-k-i-n-s.

 2    16:50:10      Q.   And what's her title?  Is she an

 3    16:50:12   assistant vice president, in charge of --

 4    16:50:14      A.   Underwriting and renewals.

 5    16:50:16         MR. FAYETTE:  Underwriting and

 6    16:50:18   renewals.  Okay.

 7    16:50:18            Again, bear with me for a moment.

 8    16:50:22   I think I'm closer to the end than the

 9    16:50:24   beginning.

10    16:50:26            Ms. Wendell, I'm going to thank

11    16:50:26   you for your patience with me this afternoon.

12    16:50:30   I think I have concluded my questions, unless

13    16:50:32   I have redirect after Mr. Valcarce's.

14    16:50:34         THE WITNESS:  Okay.

15    16:50:34            E X A M I N A T I O N

16    16:50:36   BY MR. VALCARCE:

17    16:50:36      Q.   Hello, Ms. Wendell.  Good afternoon.

18    16:50:40   This is Jim Valcarce.

19    16:50:40            Can you hear me okay?

20    16:50:42      A.   Yes, I can.

21    16:50:42      Q.   I'm going to repeat just a little bit

22    16:50:44   of your testimony earlier, simply to lay a

23    16:50:46   foundation.

24    16:50:48            You are the second vice president

25    16:50:48   there at Starmark Insurance; is that correct?
```

1    16:50:52    A.   Yes, administration.

2    16:50:52    Q.   And as vice president, you are

3    16:50:54    certainly aware of the insurance enrollment

4    16:50:58    procedures at Starmark; is that accurate?

5    16:51:00    A.   Yes.

6    16:51:02    Q.   And prior to today, you reviewed

7    16:51:06    at least most of the documents there in your

8    16:51:08    company's possession that involve my client,

9    16:51:10    Melissa Virtue; is that correct?

10   16:51:12    A.   Yes.

11   16:51:12    Q.   And based upon your review of the

12   16:51:16    documents, you came here today to answer

13   16:51:18    questions in regards to enrollment and

14   16:51:22    administration of a policy involving her; is

15   16:51:26    that accurate?

16   16:51:26    A.   Yes.

17   16:51:28    Q.   And based upon your review of the

18   16:51:30    documents, did Ms. Virtue obtain health

19   16:51:34    insurance from Starmark?

20   16:51:36    A.   No.

21   16:51:36    Q.   And we talked about you mentioned two

22   16:51:40    of the reasons for that, and I want to talk

23   16:51:42    about one of the reasons.  Do you have what's

24   16:51:46    been marked as Exhibit 10 in front of you?

25   16:51:48    A.   Yes.

Exhibit
Page 081 of 108

| | | |
|---|---|---|
| 1 | 16:51:50 | Q.   On my Exhibit 10, on page 2, there is |
| 2 | 16:51:54 | a waiver of coverage section.  Do you see |
| 3 | 16:51:56 | that? |
| 4 | 16:51:56 | A.   Yes. |
| 5 | 16:51:58 | Q.   Now, in regards to the document, that |
| 6 | 16:52:00 | enrollment form marked as Exhibit 10, that you |
| 7 | 16:52:04 | received or your office received on May 13th, |
| 8 | 16:52:06 | 2002, is the waiver of coverage section |
| 9 | 16:52:10 | checked? |
| 10 | 16:52:10 | A.   The waiver of coverage section |
| 11 | 16:52:14 | checked? |
| 12 | 16:52:14 | Q.   Yes.  There are some boxes that are |
| 13 | 16:52:18 | checked; how about that? |
| 14 | 16:52:18 | A.   There is boxes checked in that |
| 15 | 16:52:20 | section, yes. |
| 16 | 16:52:20 | Q.   And what does that mean when those |
| 17 | 16:52:24 | boxes are checked? |
| 18 | 16:52:24 | A.   It means that the employee has waived |
| 19 | 16:52:26 | their right to have those coverages for |
| 20 | 16:52:30 | themselves. |
| 21 | 16:52:30 | Q.   "Coverages" meaning insurance? |
| 22 | 16:52:32 | A.   Insurance coverage, either medical or |
| 23 | 16:52:34 | dental insurance coverage. |
| 24 | 16:52:36 | Q.   And you don't have any information as |
| 25 | 16:52:38 | to who checked those boxes; do you? |

```
1    16:52:40    A.   No, sir.

2    16:52:42    Q.   Now, there was a point being made

3    16:52:44  earlier that the application was returned to

4    16:52:48  Ms. Virtue because there was no group number,

5    16:52:50  and I want to discuss really the real effect

6    16:52:56  of that failure to return this application.

7    16:52:56            Now, assume in my scenario that

8    16:53:00  the application had been returned with the

9    16:53:02  group number right away.  What would the

10   16:53:04  effect have been?

11   16:53:06    A.   Well, we would have waived the

12   16:53:08  coverage.  We would have sent her a letter

13   16:53:12  telling her that her coverage has been waived.

14   16:53:14    Q.   Okay.  So as far as the point being

15   16:53:18  made that maybe other things should have been

16   16:53:22  done to get the group number, in your opinion

17   16:53:24  would it have made a difference?

18   16:53:26    A.   No.

19   16:53:26    Q.   And why?

20   16:53:28    A.   Because she waived coverage.

21   16:53:32    Q.   But there was also a point made that:

22   16:53:34  "Well, what about if Ms. Virtue submitted an

23   16:53:36  application today; would she be able to get

24   16:53:38  insurance?"  What's your answer to that?

25   16:53:40    A.   If she submitted it today?
```

1    16:53:42    Q.    Yes.

2    16:53:44    A.    No.

3    16:53:44    Q.    And why?

4    16:53:46          I'm sorry, I don't mean to cut

5    16:53:48    you off, but the question is why?

6    16:53:48    A.    Well, there are several reasons.

7    16:53:50    Number one, it is way beyond when the group

8    16:53:56    has been active with us or she has been an

9    16:53:58    active employee.

10   16:54:02    Q.    Okay.  And how about the waiver of

11   16:54:04    coverage section; is that also a point of why

12   16:54:06    she wouldn't get coverage today?

13   16:54:08    A.    She wouldn't get coverage today based

14   16:54:14    on this application, no.

15   16:54:20    Q.    So as far as this information or these

16   16:54:22    questions in regards to what Starmark could

17   16:54:24    have done to get the group number, besides

18   16:54:28    sending the application back, if the

19   16:54:32    application had the group number on it, would

20   16:54:36    Ms. Virtue have had health insurance?

21   16:54:38    A.    No.

22   16:54:40    Q.    And, once again, why?

23   16:54:42    A.    Because in the waiver of coverage

24   16:54:46    section of her application, she checked that

25   16:54:48    she waived medical and dental coverage, or I



| | | |
|---|---|---|
| 1 | 16:54:52 | shouldn't say -- |
| 2 | 16:54:54 | Q.    She checked? |
| 3 | 16:54:56 | We don't know she checked them? |
| 4 | 16:54:58 | A.    I don't know that she checked them. |
| 5 | 16:55:02 | The boxes were checked. |
| 6 | 16:55:02 | Q.    And, I'm sorry, I cut you off there, |
| 7 | 16:55:02 | and I was talking over you.  I want to make |
| 8 | 16:55:04 | sure I got your answer.  Go ahead. |
| 9 | 16:55:06 | A.    The answer is that we received an |
| 10 | 16:55:08 | application where the waiver of coverage |
| 11 | 16:55:12 | section had boxes checked for waiving medical |
| 12 | 16:55:12 | and dental coverage. |
| 13 | 16:55:14 | MR. VALCARCE:  I think I am just about |
| 14 | 16:55:16 | done, but if I could have two seconds, I need |
| 15 | 16:55:20 | to talk to my expert, and I will be right |
| 16 | 16:55:22 | back.  So if you could pause for just a |
| 17 | 16:55:24 | second.  Thank you. |
| 18 | 16:55:32 | (Recess taken.) |
| 19 | 17:02:46 | MR. VALCARCE:  Back on the record. |
| 20 | 17:02:52 | BY MR. VALCARCE: |
| 21 | 17:02:52 | Q.    Ms. Wendell, one last question:  If |
| 22 | 17:02:58 | Bethel Group Home wanted to ensure one of its |
| 23 | 17:03:00 | employees was enrolled, what forms or |
| 24 | 17:03:02 | documents would it get from Starmark so it |
| 25 | 17:03:04 | could ensure its employees were accurately |

```
 1   17:03:08   enrolled?

 2   17:03:08      A.    Each group gets a --

 3   17:03:10            MR. FAYETTE:  Object to form.

 4   17:03:12                 Go ahead.

 5   17:03:14            THE WITNESS:  Each group gets a bill,

 6   17:03:18   monthly, that lists every employee that's

 7   17:03:22   covered.  So as verification of who is being

 8   17:03:24   covered and who they are paying premiums for,

 9   17:03:26   it would be on their monthly billing.

10   17:03:30   BY MR. VALCARCE:

11   17:03:30      Q.    That monthly bill actually lists the

12   17:03:34   names of these employees who were covered?

13   17:03:36      A.    Yes.  It lists member ID number,

14   17:03:40   member insured, and then it lists what premium

15   17:03:44   is being billed for each one of those members.

16   17:03:46      Q.    And in the review of your documents,

17   17:03:50   did you see any documents from Bethel Group

18   17:03:52   Home at any point, involving Melissa Virtue,

19   17:03:56   where Bethel Group Home said:  "Well, wait a

20   17:03:58   second.  She needs to be enrolled, and she

21   17:04:00   wasn't, and there was a mistake"?  Did you

22   17:04:04   ever get anything like that?

23   17:04:06      A.    No.  There is nothing in the file.

24   17:04:08            MR. VALCARCE:  Okay.

25   17:04:08            MR. FAYETTE:  This is James Fayette.
```

Exhibit
Page 086 of 108

| | | |
|---|---|---|
| 1 | 17:04:12 | May I pose some questions on redirect? |
| 2 | 17:04:14 | Jim, are you done? |
| 3 | 17:04:16 | MR. VALCARCE:  Yes, I'm done.  Thanks. |
| 4 | 17:04:18 | MR. FAYETTE:  I will try to be brief, |
| 5 | 17:04:20 | Ms. Wendell. |
| 6 | 17:04:20 | F U R T H E R   E X A M I N A T I O N |
| 7 | 17:04:20 | BY MR. FAYETTE: |
| 8 | 17:04:20 | Q.   You have talked about late enrollees |
| 9 | 17:04:32 | and late submitted applicaions.  What would |
| 10 | 17:04:38 | happen if you had received a new, complete |
| 11 | 17:04:42 | application from Ms. Virtue in November of |
| 12 | 17:04:44 | 2002? |
| 13 | 17:04:46 | A.   We wouldn't have processed that |
| 14 | 17:04:48 | application because we had information that |
| 15 | 17:04:50 | she is no longer employed. |
| 16 | 17:04:54 | Q.   Even for periods when she was |
| 17 | 17:04:56 | otherwise eligible? |
| 18 | 17:04:56 | A.   If the new application was signed |
| 19 | 17:05:00 | after that termination date, we would not have |
| 20 | 17:05:02 | accepted it. |
| 21 | 17:05:06 | Q.   And you have no record of any |
| 22 | 17:05:08 | correspondence on Ms. Virtue's behalf |
| 23 | 17:05:12 | submitted in November of 2002; is that |
| 24 | 17:05:14 | correct? |
| 25 | 17:05:14 | A.   I do not have anything in my files. |

```
1   17:05:16        Q.   We are agreed that the contract for
2   17:05:18   insurance is between Ms. Virtue and Starmark;
3   17:05:22   is that correct?
4   17:05:22              MR. VALCARCE:  Objection to scope.
5   17:05:26              Go ahead.  I needed to make an
6   17:05:28   objection there.  So excuse that.
7   17:05:30              MR. FAYETTE:  Do you need the question
8   17:05:32   again?
9   17:05:32              THE WITNESS:  Yes.
10  17:05:34   BY MR. FAYETTE:
11  17:05:34        Q.   You would agree that the contract of
12  17:05:36   insurance is between Ms. Virtue and Starmark?
13  17:05:38        A.   I don't agree.
14  17:05:38        Q.   Why not?
15  17:05:40        A.   This is group insurance.  Our contract
16  17:05:42   is between us and the group.  They make
17  17:05:44   application for the insurance.
18  17:05:46        Q.   But the certificate of insurance is
19  17:05:48   issued to the employee; agreed?
20  17:05:50        A.   Not totally.  It is to the employee
21  17:05:54   and the participating employer.
22  17:06:00        Q.   Can we return to the section of
23  17:06:04   Exhibit 10, I think it is page 2 of your
24  17:06:06   exhibit, that talks about waiver of coverage?
25  17:06:10        A.   Yes.
```

| | | |
|---|---|---|
| 1 | 17:06:10 | Q.   There is actually a number of boxes on |
| 2 | 17:06:12 | Starmark's application form there, correct? |
| 3 | 17:06:16 | A.   Yes. |
| 4 | 17:06:16 | Q.   And would you agree that the box that |
| 5 | 17:06:22 | states:  "Waiving all group coverage offered |
| 6 | 17:06:24 | by my employer at this time" -- do you see |
| 7 | 17:06:28 | that's in bold print there? |
| 8 | 17:06:32 | A.   Yes. |
| 9 | 17:06:32 | Q.   And that has a box to its immediate |
| 10 | 17:06:34 | left, right? |
| 11 | 17:06:34 | A.   Yes. |
| 12 | 17:06:36 | Q.   And Ms. Virtue has not checked that |
| 13 | 17:06:38 | box; are we agreed? |
| 14 | 17:06:42 | MR. VALCARCE:  Objection, form. |
| 15 | 17:06:42 | MR. FAYETTE:  Do you need the question |
| 16 | 17:06:44 | again? |
| 17 | 17:06:44 | THE WITNESS:  She has not checked that |
| 18 | 17:06:46 | box, true. |
| 19 | 17:06:46 | BY MR. FAYETTE: |
| 20 | 17:06:46 | Q.   And the next line down says -- the box |
| 21 | 17:06:50 | to the immediate left of the word "waiving," |
| 22 | 17:06:54 | that's a box intended for an applicant to |
| 23 | 17:06:58 | check, right? |
| 24 | 17:06:58 | A.   Can you explain to me what you are |
| 25 | 17:07:00 | talking about again?  Where are you saying? |

```
 1   17:07:02      Q.    There is bold print there, and the
 2   17:07:04   bold print reads:  "Waiving all group coverage
 3   17:07:06   offered by my employer at this time," and
 4   17:07:08   there is a box to the left of the word
 5   17:07:10   "waiving."  Do you see where I'm indicating?
 6   17:07:12      A.    Yes.
 7   17:07:12      Q.    Do we agree that that box is there to
 8   17:07:16   either be checked or left blank?
 9   17:07:18      A.    Yes.
10   17:07:20      Q.    And in this particular case, that box
11   17:07:24   is not marked in any way, right?
12   17:07:26      A.    That's correct.
13   17:07:28      Q.    And the next line down, the next line
14   17:07:32   says:  "Medical coverage waived for," colon,
15   17:07:36   and to the left of the word "medical" there is
16   17:07:38   another shadowed box; agreed?
17   17:07:40      A.    Agreed.
18   17:07:40      Q.    And that box is there for the employee
19   17:07:42   or the applicant to either check or leave
20   17:07:44   blank; agreed?
21   17:07:46      A.    Agreed.
22   17:07:46      Q.    And the words to the right -- and
23   17:07:54   these boxes, the two boxes that I have just
24   17:07:56   discussed, these boxes have to be checked if
25   17:07:58   the employee wants to waive coverage, right?
```

| | | |
|---|---|---|
| 1 | 17:08:00 | A.   Not necessarily.   They can check those |
| 2 | 17:08:04 | or the ones following that for employee, |
| 3 | 17:08:06 | spouse and children. |
| 4 | 17:08:08 | Q.   I understand that you are saying that, |
| 5 | 17:08:10 | but you agree that it doesn't say that |
| 6 | 17:08:12 | anywhere on this form?  Do we agree about |
| 7 | 17:08:14 | that? |
| 8 | 17:08:14 | A.   It doesn't say you have to check all. |
| 9 | 17:08:28 | Q.   It doesn't say the other way around |
| 10 | 17:08:30 | either, right? |
| 11 | 17:08:32 | A.   Right. |
| 12 | 17:08:34 | Q.   So in this case we are in agreement |
| 13 | 17:08:36 | that the box to the left of the medical |
| 14 | 17:08:38 | coverage waiver question, that Ms. Virtue has |
| 15 | 17:08:40 | not checked that, right? |
| 16 | 17:08:42 | A.   The box is not checked. |
| 17 | 17:08:44 | Q.   And then the same is true for the next |
| 18 | 17:08:46 | line down, the box to the immediate left of |
| 19 | 17:08:48 | the word "dental"?  That's not checked either, |
| 20 | 17:08:50 | right? |
| 21 | 17:08:52 | A.   That's right. |
| 22 | 17:08:52 | Q.   And we have already talked this |
| 23 | 17:08:54 | afternoon about the section that says: |
| 24 | 17:08:56 | "Reason for waiving coverage," colon.  That is |
| 25 | 17:09:00 | left incomplete as well, right? |

1   17:09:02    A.    Right.

2   17:09:02    Q.    So would you agree that this section

3   17:09:04  in the waiver of coverage section is

4   17:09:06  incompletely filled out?

5   17:09:08    A.    I disagree.  For our purpose, it is

6   17:09:10  not.

7   17:09:12    Q.    And you agree, though, that the manual

8   17:09:18  that we discussed earlier this afternoon says

9   17:09:22  that the reason section has to be filled out?

10  17:09:24  We agreed about that, right?

11  17:09:26        MR. VALCARCE:  Objection,

12  17:09:26  foundation -- excuse me.

13  17:09:30            Objection, beyond the scope.

14  17:09:32        THE WITNESS:  Yes.

15  17:09:34  BY MR. FAYETTE:

16  17:09:34    Q.    Yes, we agreed about that?

17  17:09:36        MR. VALCARCE:  Same objection.

18  17:09:38        MR. FAYETTE:  All right.

19  17:09:38  BY MR. FAYETTE:

20  17:09:40    Q.    Do you agree, Ms. Wendell, that this

21  17:09:54  section, page 2 of Exhibit 10, that we have

22  17:09:56  before us, do you agree, at a minimum, that

23  17:10:02  section is ambiguous?

24  17:10:04    A.    No.

25  17:10:04    Q.    Why not?

| | | |
|---|---|---|
| 1 | 17:10:04 | A.    I think it is clear.  If you check any |
| 2 | 17:10:06 | of the boxes, you are waiving coverage. |
| 3 | 17:10:20 | Q.    Remember earlier this afternoon you |
| 4 | 17:10:24 | mentioned letters that were sent, that would |
| 5 | 17:10:26 | be sent by Starmark to employees that waived |
| 6 | 17:10:30 | coverage?  Did I hear you mention that before? |
| 7 | 17:10:32 | A.    Letters to be sent?  I don't think I |
| 8 | 17:10:36 | mentioned that. |
| 9 | 17:10:38 | Q.    I thought you did, but I could be |
| 10 | 17:10:40 | mistaken. |
| 11 | 17:10:40 | Does Starmark send letters to |
| 12 | 17:10:42 | employees who waive? |
| 13 | 17:10:44 | A.    No. |
| 14 | 17:10:44 | Q.    Didn't I hear you say a moment ago |
| 15 | 17:10:46 | that "We would send a letter to employees who |
| 16 | 17:10:48 | waived coverage"? |
| 17 | 17:10:50 | A.    If I said that -- I don't believe I |
| 18 | 17:10:52 | did, but if I did, that's not right.  We don't |
| 19 | 17:10:54 | send letters to people that waive coverage. |
| 20 | 17:10:58 | Q.    Does Starmark make any attempt |
| 21 | 17:11:02 | to -- well, first of all, has it ever been |
| 22 | 17:11:04 | brought to your attention that a mistake has |
| 23 | 17:11:08 | been made by an applicant on this waiver |
| 24 | 17:11:10 | section previously? |
| 25 | 17:11:12 | A.    Not that I know of. |

Exhibit
Page 093 of 108

```
 1    17:11:14              MR. VALCARCE:  I have got to put the

 2    17:11:16    objection:  Objection, beyond the scope.

 3    17:11:18              MR. FAYETTE:  And that means you get

 4    17:11:18    to answer, Ms. Wendell.

 5    17:11:20              THE WITNESS:  Not that I know of.

 6    17:11:22    BY MR. FAYETTE:

 7    17:11:22       Q.  But we are in agreement that --

 8    17:11:30              MR. VALCARCE:  I don't want to keep

 9    17:11:32    interrupting you.  So why don't you give me

10    17:11:36    the courtesy of just letting me do an

11    17:11:40    objection, and I won't be waiving that

12    17:11:42    objection, that you are going way beyond the

13    17:11:44    scope of my very short and very limited

14    17:11:48    cross-examination.  If you will afford me that

15    17:11:52    continuing objection, I will stop interrupting

16    17:11:54    you, and we can move to strike it later.

17    17:11:54              MR. FAYETTE:  Granted.  Continuing

18    17:11:56    objection granted.

19    17:11:56    BY MR. FAYETTE:

20    17:11:58       Q.  We are in agreement that

21    17:11:58    Starmark -- I'm sorry, strike that.

22    17:12:00              Do you agree that the memorandum

23    17:12:06    from Mr. Alexander is inconsistent with this

24    17:12:10    waiver section as we have it before us on the

25    17:12:12    second page of Exhibit 10?
```

1    17:12:14    A.    As I said earlier, I don't believe it

2    17:12:16    is inconsistent.

3    17:12:16    Q.    You also agree that Starmark took no

4    17:12:18    steps, though, to sort out the apparent

5    17:12:22    inconsistency?

6    17:12:22    A.    I don't believe there is an apparent

7    17:12:24    inconsistency.  So we would not do anything to

8    17:12:26    sort it out.

9    17:12:28        MR. FAYETTE:  If you will bear with me

10   17:12:30    for a moment.

11   17:12:36            (Brief pause.)

12   17:12:46    BY MR. FAYETTE:

13   17:12:46    Q.    Assume Ms. Virtue had written back in

14   17:12:50    response to your June 2002 inquiry, and said:

15   17:12:54    "Wait a minute, I want coverage.  I never did

16   17:12:56    waive," and responded.  What would Starmark

17   17:12:58    have done?

18   17:12:58    A.    She would have to submit a new

19   17:13:00    application.

20   17:13:02    Q.    And then what?

21   17:13:02    A.    Depending on the date of that

22   17:13:04    application, she might have been considered

23   17:13:06    late.

24   17:13:08    Q.    And then what?

25   17:13:10    A.    Coverage would have been given

| | | |
|---|---|---|
| 1 | 17:13:14 | depending on how late that application was. |
| 2 | 17:13:16 | It depends on when she would have responded to |
| 3 | 17:13:18 | us. |
| 4 | 17:13:18 | Q.   All right.   Just one moment. |
| 5 | 17:13:24 | I'm going to ask you to pick up |
| 6 | 17:14:06 | the manual, Exhibit 5. |
| 7 | 17:14:16 | A.   Yes. |
| 8 | 17:14:22 | Q.   And on page 7 of that exhibit, and the |
| 9 | 17:14:28 | Bates stamp on that -- let me know when you |
| 10 | 17:14:30 | get there, and I will give you the Bates stamp |
| 11 | 17:14:30 | so I know that we are on the right page. |
| 12 | 17:14:30 | A.   I'm at page 7. |
| 13 | 17:14:32 | Q.   And the Bates stamp to the right is |
| 14 | 17:14:38 | 10945? |
| 15 | 17:14:38 | A.   Yes. |
| 16 | 17:14:38 | Q.   Section 3, "How", the first sentence |
| 17 | 17:14:44 | says:  "Each new employee must fully complete, |
| 18 | 17:14:48 | sign and date the employee enrollment form." |
| 19 | 17:14:52 | A.   Yes. |
| 20 | 17:14:52 | Q.   Are we in agreement that Ms. Virtue |
| 21 | 17:14:54 | did not fully complete, sign and date the |
| 22 | 17:14:58 | form? |
| 23 | 17:14:58 | A.   Correct. |
| 24 | 17:15:02 | Q.   Explain why that is. |
| 25 | 17:15:02 | A.   We didn't have information to attach |

| | | |
|---|---|---|
| 1 | 17:15:06 | her to a group. |
| 2 | 17:15:12 | Q.   You also agree that she did not fully |
| 3 | 17:15:14 | complete the waiver section that we discussed |
| 4 | 17:15:16 | a moment ago? |
| 5 | 17:15:16 | A.   No, I don't agree with that.  I think |
| 6 | 17:15:18 | it is completed to our satisfaction. |
| 7 | 17:15:24 | Q.   But we are in agreement that there is |
| 8 | 17:15:26 | three boxes that are not checked; agreed? |
| 9 | 17:15:30 | A.   They are not checked. |
| 10 | 17:15:32 | Q.   And the reason is not given, right? |
| 11 | 17:15:34 | A.   Right. |
| 12 | 17:15:38 | Q.   Among those boxes that are not checked |
| 13 | 17:15:40 | is the one that has the ultimate statement: |
| 14 | 17:15:42 | "Waiving all group coverage offered by my |
| 15 | 17:15:46 | employer at this time."  That is not checked? |
| 16 | 17:15:48 | A.   Correct. |
| 17 | 17:15:50 | Q.   And the one below that that indicates |
| 18 | 17:15:54 | waiver of medical coverage, right? |
| 19 | 17:15:56 | A.   As I said before, that is not checked. |
| 20 | 17:15:58 | MR. VALCARCE:  Objection; asked and |
| 21 | 17:16:00 | answered, form. |
| 22 | 17:16:02 | MR. FAYETTE:  If I may have a moment, |
| 23 | 17:16:08 | please. |
| 24 | 17:16:18 | BY MR. FAYETTE: |
| 25 | 17:16:20 | Q.   Do you have page 12 of that manual |

| | | |
|---|---|---|
| 1 | 17:16:22 | before you, miscellaneous administration? |
| 2 | 17:16:24 | A.   Yes. |
| 3 | 17:16:26 | Q.   Do you recall our discussion earlier |
| 4 | 17:16:28 | this afternoon about "clerical errors by the |
| 5 | 17:16:30 | employer or by us shall not invalidate |
| 6 | 17:16:32 | coverage of a person insured"? |
| 7 | 17:16:34 | A.   Yes. |
| 8 | 17:16:36 | Q.   Do you agree, if Ms. Virtue had |
| 9 | 17:16:38 | notified you that she did not intend to waive |
| 10 | 17:16:40 | coverage, and that the checking of those boxes |
| 11 | 17:16:44 | was a mere clerical error, that that would not |
| 12 | 17:16:46 | have been grounds to deny her coverage under |
| 13 | 17:16:50 | this policy? |
| 14 | 17:16:50 | A.   I'm sorry.  Say that again. |
| 15 | 17:16:52 | Q.   Do you agree that if Ms. Virtue had |
| 16 | 17:16:54 | responded, and told you that she did not |
| 17 | 17:16:58 | intend to waive coverage, and that the |
| 18 | 17:17:00 | checking of those boxes was mere clerical |
| 19 | 17:17:04 | error, that that would not have been grounds |
| 20 | 17:17:06 | to deny Ms. Virtue coverage? |
| 21 | 17:17:08 | A.   Would she have responded within the |
| 22 | 17:17:10 | ten days we afforded her? |
| 23 | 17:17:12 | Q.   Yes. |
| 24 | 17:17:12 | A.   So within those ten days? |
| 25 | 17:17:14 | Q.   Sure. |

| | | |
|---|---|---|
| 1 | 17:17:16 | A.    That we gave her that letter, she came |
| 2 | 17:17:18 | back and said:  "I did not wish to waive |
| 3 | 17:17:20 | coverage"? |
| 4 | 17:17:20 | Q.    Right.  Assume that. |
| 5 | 17:17:22 | A.    If I assume that, I would have asked |
| 6 | 17:17:24 | her for a new application, signed and dated. |
| 7 | 17:17:30 | Q.    And then what? |
| 8 | 17:17:30 | A.    Then, depending on what the date on |
| 9 | 17:17:32 | that application was, would depend whether or |
| 10 | 17:17:36 | not she was considered a late or timely |
| 11 | 17:17:38 | enrollee. |
| 12 | 17:17:38 | Q.    And then what?  Then you would have |
| 13 | 17:17:42 | what? |
| 14 | 17:17:42 | A.    Well, she would have been afforded |
| 15 | 17:17:44 | coverage with the preexisting conditions that |
| 16 | 17:17:48 | would go with that, either 12 or 18 months, |
| 17 | 17:17:50 | depending on when that date was, but it is |
| 18 | 17:17:52 | kind of hard to say not knowing what date that |
| 19 | 17:17:56 | would be. |
| 20 | 17:17:56 | MR. FAYETTE:  All right.  Thank you |
| 21 | 17:18:02 | for your patience, Ms. Wendell.  I think I'm |
| 22 | 17:18:04 | done. |
| 23 | 17:18:04 | MR. VALCARCE:  I think I have one |
| 24 | 17:18:04 | follow-up, Ms. Wendell.  Jim Valcarce here. |
| 25 | 17:18:08 | THE WITNESS:  Yes. |

Exhibit
Page 099 of 108

```
 1    17:18:08          F U R T H E R   E X A M I N A T I O N
 2    17:18:08     BY MR. VALCARCE:
 3    17:18:08          Q.   We are throwing out scenarios here.
 4    17:18:14     So I want to throw one out to you, a
 5    17:18:16     hypothetical.
 6    17:18:18          A.   Okay.
 7    17:18:18          Q.   If the group home had checked their
 8    17:18:20     bills and discovered that Ms. Virtue was not
 9    17:18:24     being covered, and they had contacted you and
10    17:18:26     said:  "We checked those boxes on the waiver
11    17:18:30     form, and it is wrong," could she have been
12    17:18:32     enrolled thereafter?
13    17:18:36          A.   It depends on the lapse in time.  It
14    17:18:38     depends on how long that was.
15    17:18:42          Q.   Those bills you said are sent out at
16    17:18:44     the first of the month; is that correct?
17    17:18:46          A.   Well, we send them out the 9th of the
18    17:18:50     prior month for the next month.
19    17:18:54          Q.   And in my scenario or my hypothetical,
20    17:19:00     if the group home had called you within that
21    17:19:02     ten days and told you that, would she have
22    17:19:04     been covered?
23    17:19:06          A.   It would have been the same.  No
24    17:19:06     matter whether or not it was the insured or
25    17:19:08     the group, if either one of them had responded
```

| | | |
|---|---|---|
| 1 | 17:19:10 | within those ten days, and told us that there |
| 2 | 17:19:12 | had been an error on the application or that |
| 3 | 17:19:16 | coverage should not have been waived, it would |
| 4 | 17:19:20 | be the same procedures.  We would have gone |
| 5 | 17:19:22 | back and looked at her application and asked |
| 6 | 17:19:22 | for a new application. |
| 7 | 17:19:26 | MR. VALCARCE:  Thank you.  I have no |
| 8 | 17:19:28 | further questions. |
| 9 | 17:19:28 | MR. FAYETTE:  Well, actually, I do |
| 10 | 17:19:30 | have one more. |
| 11 | 17:19:30 | F U R T H E R   E X A M I N A T I O N |
| 12 | 17:19:30 | BY MR. FAYETTE: |
| 13 | 17:19:30 | Q.   When did the first bill show up in |
| 14 | 17:19:32 | your file to Starmark following this period in |
| 15 | 17:19:36 | May of 2002? |
| 16 | 17:19:38 | A.   I'm sorry, say that again?  When does |
| 17 | 17:19:40 | the what? |
| 18 | 17:19:42 | Q.   When did CGH get their first bill |
| 19 | 17:19:48 | following your receipt of this application on |
| 20 | 17:19:50 | May 13th of 2002? |
| 21 | 17:19:54 | A.   It depends on when we would have |
| 22 | 17:19:56 | gotten response from Ms. Virtue.  If we would |
| 23 | 17:19:58 | have added her to the system on May -- let's |
| 24 | 17:20:02 | say we would have added her to the system on |
| 25 | 17:20:04 | May 15th or 13th, when we received this.  If |

101

Exhibit
Page 101 of 108

| | | |
|---|---|---|
| 1 | 17:20:06 | that was the case, if her application had come |
| 2 | 17:20:10 | in clean, with everything on it, and we added |
| 3 | 17:20:12 | her to the system on May 15th, she would have |
| 4 | 17:20:14 | shown up on a July bill. |
| 5 | 17:20:20 | Q.   So you agree that the status on new |
| 6 | 17:20:24 | employee addition, that I believe is |
| 7 | 17:20:28 | encompassed within Exhibit 10 -- |
| 8 | 17:20:32 | A.   Yes.  What about that? |
| 9 | 17:20:34 | Q.   -- that's not sent to Bethel Group |
| 10 | 17:20:36 | Home's address, correct?  That's sent to the |
| 11 | 17:20:40 | address you have for the prospective |
| 12 | 17:20:42 | applicant; are we agreed about that? |
| 13 | 17:20:42 | A.   As I have previously stated, that is |
| 14 | 17:20:46 | the address that came off of the enrollment |
| 15 | 17:20:48 | form. |
| 16 | 17:20:48 | Q.   And was not copied to the employer? |
| 17 | 17:20:52 | A.   Not to my knowledge. |
| 18 | 17:20:54 | Q.   And you have no record of it being |
| 19 | 17:20:56 | sent to the employer? |
| 20 | 17:20:58 | A.   No.  We did not have the employer's |
| 21 | 17:21:00 | group number. |
| 22 | 17:21:06 | Q.   So would you agree you have no |
| 23 | 17:21:08 | evidence in that ten-day period that BGH was |
| 24 | 17:21:12 | aware of the status of Ms. Virtue's |
| 25 | 17:21:16 | application? |

| | | |
|---|---|---|
| 1 | 17:21:16 | A.    Not that I know of. |
| 2 | 17:21:20 | MR. FAYETTE:  Thank you.  Thank you. |
| 3 | 17:21:22 | Nothing further. |
| 4 | 17:21:24 | MR. VALCARCE:  Ms. Wendell, I have a |
| 5 | 17:21:28 | couple quick questions. |
| 6 | 17:21:28 | F U R T H E R   E X A M I N A T I O N |
| 7 | 17:21:28 | BY MR. VALCARCE: |
| 8 | 17:21:28 | Q.    On Exhibit 10, it looks like Bethel |
| 9 | 17:21:32 | Group Home mailed this to you on April 17th; |
| 10 | 17:21:36 | is that correct, or at least that's the date |
| 11 | 17:21:36 | on the letter? |
| 12 | 17:21:36 | A.    That's the date on the letter. |
| 13 | 17:21:38 | Q.    Any idea why it took so long to get |
| 14 | 17:21:42 | there?  Do you have any idea why it shows up |
| 15 | 17:21:44 | on May 13th? |
| 16 | 17:21:46 | A.    I do not.  I don't know.  The date |
| 17 | 17:21:48 | that's stamped there is the date it would have |
| 18 | 17:21:50 | come to our mail services.  So I don't know. |
| 19 | 17:21:52 | Q.    And is there any documents involving |
| 20 | 17:21:56 | Melissa Virtue that show that the group home |
| 21 | 17:22:00 | followed up on this application, called, |
| 22 | 17:22:02 | checked, or determined the status of it at any |
| 23 | 17:22:04 | point? |
| 24 | 17:22:04 | A.    I have nothing. |
| 25 | 17:22:08 | MR. VALCARCE:  Thank you.  No further |

| | | |
|---|---|---|
| 1 | 17:22:08 | questions. |
| 2 | 17:22:10 | MR. FAYETTE: I have got no further |
| 3 | 17:22:12 | questions for Ms. Wendell. I do wish to |
| 4 | 17:22:16 | discuss with Mr. Mc Daniel about Ms. Gregory |
| 5 | 17:22:18 | and possibly arranging, hopefully, for her |
| 6 | 17:22:22 | deposition towards the end of this week. |
| 7 | 17:22:24 | Mr. Mc Daniel, are you prepared |
| 8 | 17:22:26 | to talk about that now? |
| 9 | 17:22:28 | MR. MC DANIEL: I haven't talked to |
| 10 | 17:22:28 | Ms. Gregory. I talked to management in that |
| 11 | 17:22:32 | office, and they were going to advise |
| 12 | 17:22:36 | Ms. Gregory that she may be asked to comment |
| 13 | 17:22:38 | on procedures, but I don't know if that's |
| 14 | 17:22:42 | within the scope of what you have previously |
| 15 | 17:22:44 | asked us to provide witnesses on. |
| 16 | 17:22:48 | MR. VALCARCE: I'm going to hang up, |
| 17 | 17:22:50 | Steve, and let you guys figure this out. |
| 18 | 17:22:54 | Ms. Wendell, are you still there? |
| 19 | 17:22:58 | THE WITNESS: Yes. |
| 20 | 17:22:58 | MR. VALCARCE: Thank you for your |
| 21 | 17:22:58 | time. You're a great witness. I can see why |
| 22 | 17:22:58 | you are a vice president. Thank you for your |
| 23 | 17:23:00 | time. |
| 24 | 17:23:00 | THE WITNESS: You're welcome. |
| 25 | 17:23:00 | MR. FAYETTE: Ms. Wendell, thank you |

```
 1   17:23:02   for your patience with me.

 2   17:23:04          MR. MC DANIEL:  I wanted to comment on

 3   17:23:06   we would like Bernie to read and sign her

 4   17:23:08   deposition.

 5   17:23:16          MR. FAYETTE:  Yes.  I think that's

 6   17:23:18   Ms. Wendell's call.

 7   17:23:30          THE WITNESS:  I want to read and sign

 8   17:23:32   it.

 9   17:23:38          MR. FAYETTE:  Mr. Mc Daniel, I want to

10   17:23:40   return to Ms. Gregory.  Can we agree to

11   17:23:42   communicate tomorrow about that issue since we

12   17:23:44   are fast on the close of our discovery here?

13   17:23:48          MR. MC DANIEL:  We can try to, but I'm

14   17:23:50   going to be in Pennsylvania in a deposition

15   17:23:52   tomorrow.

16   17:23:54          MR. FAYETTE:  Oh, dear.

17   17:23:54          All right.  Is there anyone else

18   17:23:56   with whom I could communicate tomorrow?

19   17:24:00          MR. MC DANIEL:  I'm going to contact

20   17:24:02   that office tomorrow, as soon as I can.  Then

21   17:24:12   I can try to give you a call, but I can't

22   17:24:14   guarantee I will be able to hook up with you

23   17:24:16   because I don't know what my schedule is going

24   17:24:18   to be like, and we have bad weather coming in.

25   17:24:22   I already know my flight is delayed or I would
```

| | | |
|---|---|---|
| 1 | 17:24:24 | have adjourned this because we went way past |
| 2 | 17:24:30 | our scheduled hour. |
| 3 | 17:24:30 | MR. FAYETTE:  We did, and I appreciate |
| 4 | 17:24:30 | your availability. |
| 5 | 17:24:32 | If you can give me a call as soon |
| 6 | 17:24:34 | as you know about Ms. Gregory's availability, |
| 7 | 17:24:36 | that would be appreciated.  Thank you, and |
| 8 | 17:24:38 | thank you for the courtesy of being available. |
| 9 | 17:24:42 | MR. JACOBSON:  Jim, you want all of |
| 10 | 17:24:42 | these exhibits attached to the record, |
| 11 | 17:24:46 | correct? |
| 12 | 17:24:46 | MR. FAYETTE:  Yes. |
| 13 | 17:24:48 | MR. JACOBSON:  And you are ordering |
| 14 | 17:24:48 | this transcript, correct? |
| 15 | 17:24:50 | MR. FAYETTE:  Yes. |
| 16 | 17:25:20 | MR. JACOBSON:  Let the record reflect |
| 17 | 17:25:22 | that I have tendered Exhibits 1, 2, 3, 4, 5, 6 |
| 18 | 17:25:28 | and 9 and 10 to the court reporter for |
| 19 | 17:25:32 | attaching to the original transcript. |
| 20 | 17:25:36 | That should do it. |
| 21 | 17:25:38 | MR. FAYETTE:  Okay.  Thank you. |
| 22 | 17:25:38 | (Ending Time:  5:25 p.m.) |
| 23 | | |
| 24 | | |
| 25 | | |

1  STATE OF  _____ )
                                                    ) SS.
2  COUNTY OF _____ )

3

4

5

6

7         I, the undersigned, declare under penalty

8  of perjury that I have read the foregoing transcript,

9  and I have made any corrections, additions or

10 deletions that I was desirous of making; that the

11 foregoing is a true and correct transcript of

12 my testimony contained therein.

13         EXECUTED this _____ day of _____,

14 _____, at _____, _____.
                        (City)              (State)

15

16

17

18         _____
                    BERNADINE WENDELL
19

20

21

22

23

24

25

                                                        107

1    STATE OF ILLINOIS)

2                      )   SS.

3    COUNTY OF MCHENRY)

4        I, HEATHER PERKINS, Certified Shorthand

5    Reporter in and for the County of McHenry and

6    State of Illinois, do hereby certify that

7    BERNADETTE WENDELL was first duly sworn to

8    testify the whole truth and that the above

9    deposition was recorded stenographically by

10   me, and was reduced to typewriting under my

11   personal direction.

12       I further certify that the said deposition

13   was taken at the time and place specified.

14       I further certify that I am not a relative

15   or employee or attorney or counsel of any of

16   the parties, nor a relative or employee of

17   such attorney or counsel or financially

18   interested directly or indirectly in this

19   action.

20       In witness whereof, I have hereunto set my

21   hand and affixed my seal of office at

22   Algonquin, Illinois, this *11th* ___ day of

23   *January*, A.D., 20 *05*.

24   _Heather Perkins-Reiva_

25   Heather Perkins-Reiva, C.S.R. No. 084-003714