IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FOURTH JUDICIAL DISTRICT AT BETHEL

STATE OF ALASKA,                    )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )
                                    )
KENNETH ALEXANDER,                  )
                                    )
        Defendant.                  )
_____)

No. 4BE-02-957 CR.

## NOTICE REGARDING DEFENDANT'S PRIOR CONVICTIONS

I certify this document and its attachments do not contain the (1) name of a victim of a sexual offense listed in AS 12.61.140 or (2) residence or business address or telephone number of a victim of or witness to any offense unless it is an address identifying the place of a crime or an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

The State of Alaska, by and through Michael Walsh, Assistant District Attorney, hereby provides the Court with the following information regarding the prior convictions attributed to Defendant in the presentence report dated June 24, 2004:

### 1. 2003 Conspiracy/Fraud Conviction

Defendant received this conviction while on release in the current matter, and the judgment in that case was attached to the State's *Notice of Intent to Impeach* previously submitted. This matter was A03-088 CR (rrb), United States District Court, Anchorage, date of conviction October 14, 2003.

### 2. 1998 New Jersey Conviction

This prosecutor researched this conviction on the New Jersey Department of Corrections website, using the "SBI number" in the criminal history provided to the D.A.'s Office by the Bethel Police Department (000115736B). The NJDOC website shows a picture of a different individual, a Keith Alexander who uses the alias of Kenneth Alexander. Documents regarding this inquiry are attached. This was the only information the State had regarding a prior felony conviction at the time the Rule 11

P.O. BOX 170
BETHEL, ALASKA 99559
(907) 543-2055



EXHIBIT __1__
Page __1__ of 34

offer was made, and the SIS offer was made with the belief that Defendant had no

felony convictions.

    3. Additional Convictions Relied on in Sentencing in A03-088 CR (rrb)

    This prosecutor contacted Assistant U.S. Attorney Crandon Randell, who agreed to verbally provide the Defendant's prior felony history relied upon by the U.S. District Court, Anchorage, in sentencing Defendant in A03-088 CR (rrb), above. The following convictions were contained in the presentence report in A03-088 CR (rrb). Mr. Randell was not willing to provide a hard copy of the Defendant's presentence report in the federal matter.

Illinois District Court, Northern District
5/18/95
95CR308-1
Bankruptcy Fraud, Mail Fraud, False Declarations
32 months incarceration, 3 years supervised release
discharged from release in July of 2001

Superior Court, Cook County, Illinois
6/23/95
95CF-1339
Deceptive Practices
24 months probation, 88 days custody

Superior Court, Los Angeles County, California
3/23/86
A780753-01
Assault with Great Bodily Injury
36 months probation, 120 days jail

Superior Court, Los Angeles County, California
8/15/73
Grand Theft Auto
24 months probation, 34 days jail

    Mr. Randell noted that Defendant received 5 criminal history "points" in his sentencing in federal court, and was given a criminal history classification of "III". This is noted on the seventh page of the federal judgment previously submitted.

Page 2 of 3
Notice regarding Defendant's Prior Convictions
State v. Kenneth Alexander

EXHIBIT

DISTRICT ATTORNEY, STATE OF ALASKA
P.O. BOX 170
BETHEL, ALASKA 99559
(907) 543-2055

DATED August 23, 2004 at Bethel, Alaska.

GREGG D. RENKES
ATTORNEY GENERAL

By:

Michael Walsh,
Assistant District Attorney
Alaska Bar No. 0307037

<div style="writing-mode: vertical">
DISTRICT ATTORNEY, STATE OF ALASKA
P.O. BOX 170
BETHEL, ALASKA 99559
(907) 543-2055
</div>

Page 3 of 3
Notice regarding Defendant's Prior Convictions
State v. Kenneth Alexander

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FOURTH JUDICIAL DISTRICT AT BETHEL

STATE OF ALASKA,                          )
                                          )
            Plaintiff,                    )
                                          )
      vs.                                 )
                                          )
KENNETH ALEXANDER,                        )
DOB: 5-30-54                              )
SSN:  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                         )
ATN:  107167311                          )
RES:  Anchorage, AK                       )
                                          )
            Defendant.                    )
_____)

Case No. 4BE-S02-957    Cr
SW# 4BE-02-82 SW

VRA CERTIFICATION

I certify that this document and its attachments do not contain
(1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a
residence or business address or telephone number of a victim of or witness to any
crime unless it is an address used to identify the place of the crime or it is an
address or telephone number in a transcript of a court proceeding and disclosure
of the information was ordered by the court.

DOMESTIC VIOLENCE OFFENSES Per AS 18.66.990(3) and (8)
[]ALL COUNTS          [X]NONE              []SPECIFIED BELOW

INDICTMENT

COUNT I

THEFT IN THE SECOND DEGREE
A.S.11.46.130(a)(1)

INDICTMENT - 1

EXHIBIT 1
Page 4 of 34

P.O. BOX 170
BETHEL, ALASKA 99559
(907) 543-2055

THE GRAND JURY CHARGES:

COUNT I

That on or about t~he 12th day of September, 2001~ *July 2002*, at or near ~Emmonak~ *Bethel*, in the ~Second~ *Fourth* Judicial District, State of Alaska, Kenneth Alexander did commit the offense of Theft in the Second Degree when, with intent to deprive another of property or to appropriate property of another to himself or a third person, he obtained the property of the Bethel Group Home and the value of the property or services is $500 or more but less than $25,000.

All of which is a class C felony offense being contrary to and in violation of AS 11.46.130(a)(1) and against the peace and dignity of the State of Alaska.

DATED at Bethel, Alaska this _01_ day of _August_, 2001.

A TRUE BILL

COUNT I:

_Gregg Olson_, Bar# 89-03008
District Attorney

_____
Grand Jury Foreperson

INDICTMENT - 2

P.O. BOX 170
BETHEL, ALASKA 99559
(907) 543-2055

EXHIBIT 1
Page 5 of 34

1

2

3

Witnesses examined before the Grand Jury:

4   Paul Janowiec

    Ofc. Charlie Seidl

5   Ben Glover

6   Rob Lewis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

INDICTMENT - 3

P.O. BOX 170
BETHEL, ALASKA 99559
(907) 543-2055

EXHIBIT 6

Page 6 of 34

# IN THE DISTRICT COURT FOR THE STATE OF ALASKA
## FOURTH JUDICIAL DISTRICT AT BETHEL

| | |
|---|---|
| **STATE OF ALASKA**<br><br>Plaintiff,<br>VS.<br><br>**Kenneth Spence Alexander**<br>Defendant,<br><br>ID: 7065114    DOB: 05/30/54<br>ATN: 107167311 | **FELONY COMPLAINT**<br><br>CASE NO. _4BE-02-957_   CR.<br>THEFT IN THE SECOND DEGREE<br><br>*AS 11.46.130(a)*<br><br>Count   I |

### VRA CERTIFICATION

I certify that this document and its attachments do not contain: (1) the name of a victim of a sexual offense listed in AS 12.61.140, or (2) a residence or business address or telephone number of a victim or witness to any offense unless it is an address used to identify the place of the crime, or it is an address, or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

THIS COMPLAINT STATES that on or about the   **22nd** day of    **July, 2002**    , at of near Bethel Alaska, in the Fourth Judicial District, State of Alaska, the above-named Defendant did   unlawfully:

{X}    Commit the offense of Theft in the Second Degree, a Class C Felony, if the person commits theft as defined in AS 11.46.100 and

   {X}    the value of the property or services is $500 or more but less than $25,000;
   AS 11.46.130(a)(1)

   { }    the property is a firearm or explosive;
   AS 11.46.130(a)(2)

   { }    the property is taken from the person of another;
   AS 11.46.130(a)(3)

   { }    the property is taken from a vessel and is vessel safety or survival equipment;
   AS 11.46.130(a)(4)

   { }    the property is taken from an aircraft and the property is aircraft safety or survival equipment;
   AS 11.46.130(a)(5)

All of which is contrary to and in violation of AS 11.46.130(a) and against the peace and dignity of the State of Alaska

Page   1   of

BPD-COMPLAINT-3B REV/2000

# IN THE DISTRICT COURT FOR THE STATE OF ALASKA
## FOURTH JUDICIAL DISTRICT AT BETHEL

**STATE OF ALASKA**

                                        Plaintiff,
    vs.

**Kenneth Spence Alexander**
                                        Defendant,

ID: 7065114    DOB: 05/30/54

ATN: 107167311

AFFIDAVIT BY POLICE OFFICER IN
SUPPORT OF INFORMATION
B.P.D. REPORT NO. ~~220848~~ 220874 dsr
CASE NO. 4BE-02-957 CR.

Box 93

Scammon Bay, AK 99662

I, _Charles F Seidl_, attest to the following, and state:

This complaint is based on the investigation of the Bethel Police Department, the statements of Bruce Johnson, Paul Janowiec, Kenneth Spence Alexander, and the observations of Officer Seidl.

1) On Monday, July 22, 2002 at approximately 1735 hours, Officer Seidl arrived at the Bethel Group Home, a boarding home for children in need, in response to a reported theft.

2) Upon arrival, Officer Seidl spoke with the Group Home Program Director, identified as Bruce Johnson. B. Johnson told Officer Seidl that an employee of the Group Home, identified as Kenneth Alexander, had been terminated earlier that day and did not return the Group Home IBM Thinkpad T-30 computer, bearing serial #21U78CNA71, that he was issued for use as an employee.

3) On July 22, 2002 at approximately 1900 hours, Officer Seidl contacted K. Alexander via telephone #(907) 543-6193. K. Alexander verified his identity via date of birth and social security number and stated that he is now in Anchorage, Alaska. K. Alexander told Officer Seidl that he had purchased the IBM Thinkpad with his own funds and that his name was on the purchase order. K. Alexander admitted to having possession of the Group Home Computer in question, but continued to state that it belonged to him and not the Group Home. Further, K. Alexander stated that the Group Home owed him some money for work completed prior to his termination.

4) On July 24, 2002 at approximately 1710 hours, Officer Seidl returned to the Group Home and spoke with the Group Home Director, identified as Paul Janowiec and B. Johnson. P. Janowiec provided Officer Seidl with a copy of the Wells Fargo Bank Check #2042, which was used to purchase the computer, bearing serial #21U78CNA71, from Consistent Computer Bargains of Racine, WI. In addition, P. Janowiec provided Officer Seidl with a copy of the purchase invoice, which lists the computer and its programs at a value of approximately $5,312.

5) K. Alexander left Bethel, AK and arrived in Anchorage, AK on July 22, 2002, the same day that he was terminated from the Bethel Group Home. According to P. Janowiec, K. Alexder is married to a Palestinian-Israeli, who resides in Israel. Further, P. Janowiec told Officer Seidl that K. Alexander has indicated to him that he may be moving to Israel. As a result, K. Alexander may pose a flight risk.

6) As verified by a check with Anchorage Police Department Communications, K. Alexander currently resides at 433 North Bliss Street Unit "A" in Anchorage, Alaska.

7) Officer Seidl requests that the court issue an arrest warrant to K. Alexander's to answer to the charge of Theft II, due to K. Alexander's potential for flight risk.

_____
Police Officer

SUBSCRIBED AND SWORN TO before me this 24th day of July, 2002

_____
District Court Clerk
or
Judge/Magistrate
Commission Expires w/Employment

ertify I have reviewed the complaint in
action and find that probable cause
sts to believe the crime charged was
mitted and that defendant committed it.
9-24-02
Magistrate

Page 2 of 2

2003RC0170    USAt

TIMOTHY M. BURGESS
United States Attorney

CRANDON RANDELL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: 907-271-5071


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. A03-088 CR (RRB) (JDR) |
| ) | |
| Plaintiff, ) | COUNT 1 |
| ) | CONSPIRACY |
| v. ) | Vio. of 18 USC 371 |
| ) | |
| ELDRIDGE BRADLEY, Jr., ) | |
| KENNETH S. ALEXANDER, ) | |
| MARIA STANDIFER-ABELL, ) | |
| IRIS B. BINGHAM, and ) | |
| MELISSA BARTELS, ) | |
| ) | |
| Defendants. ) | |
| ) | |


<u>I N D I C T M E N T</u>

The Grand Jury charges that:

<u>COUNT 1: Conspiracy</u>

Beginning on or about December 13, 2002, and continuing until on or about

February 17, 2003, in the District of Alaska, the defendants, ELDRIDGE BRADLEY, Jr.,

KENNETH S. ALEXANDER, MARIA STANDIFER-ABELL, IRIS B. BINGHAM, and

EXHIBIT _____
Page __9. Or __34

MELISSA BARTELS, and others, known and unknown to the grand jury, did knowingly combine, conspire, confederate and agree with each other to commit the following offense against the United States, to wit: to knowingly execute and attempt to execute a scheme and artifice to obtain money and property under custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18 United States Code, Section 1344(2).

### The Scheme and Artifice

The defendants passed, cashed, and attempted to cash, computer generated counterfeit checks at financial institutions and other businesses. The total amount of intended loss was approximately $90,404.73.

### Overt Acts

In furtherance of the conspiracy, and to effect the object thereof, the defendants performed and caused to be performed certain overt acts at Anchorage, in the District of Alaska, including, but not limited to the following:

1.    On or about December 13, 2002, defendant ELDRIDGE BRADLEY, Jr. opened account number 446469 at Credit Union 1, depositing $40.00.

2.    On or about December 14, 2002, defendant BRADLEY cashed a counterfeit check, with the business name Anchorage Home Health-Care Svcs (sic), in the amount of $6,356.86 at Alaska USA Federal Credit Union.

3.    On or about December 16, 2002, BRADLEY deposited a counterfeit check,

2

with the business name Iris B. Bingham Company, Inc., into the Credit Union 1 account in the amount of $7,260.00, and cashed a counterfeit check, with the business name Anchorage Home Health-Care Svcs (sic), in the amount of $2,260.00 at Alaska USA Federal Credit Union.

4.    On or about December 17, 2002, BRADLEY cashed a counterfeit check, with the business name B.B. Company, Inc., in the amount of $6,211.10 at Alaska USA Federal Credit Union.

5.    On or about December 17, 2002, defendant IRIS B. BINGHAM, cashed a counterfeit check, with the business name B.B. Company, Inc., in the amount of $6,311.10 at Wells Fargo Bank.

6.    On or about December 23, 2002, defendant MARIA STANDIFER-ABELL cashed two counterfeit checks, in the business name of MAT-SU Corp., at separate branches of Credit Union 1, in the amounts of $4,719.12 and $1,732.01.

7.    On or about December 27, 2002, defendant STANDIFER-ABELL cashed a counterfeit check, in the business name of MAT-SU Corp., at Credit Union 1, in the amount of $7,232.01.

8.    On or about January 2, 2003, defendants MELISSA BARTELS and KENNETH S. ALEXANDER, drove to Credit Union 1 and attempted to cash a counterfeit check, in the business name of The MEB Group, Inc., in the amount of $7,855.10.

3

EXHIBIT ___
Page ___

9.     On or about January 10, 2003, defendant KENNETH S. ALEXANDER passed a counterfeit check, in the business name of NBC Corp., in the amount of $2,000.

10.    On or about January 11, 2003, defendant ALEXANDER cashed a counterfeit check, with the business name of Child Support Inforcement (sic) Bureau, in the amount of $744.71.

11.    On or about January 22, 2003, defendant ELDRIDGE BRADLEY, Jr. left his Alaska Driver's License inside a 1999 Ford Taurus driven and operated by defendant KENNETH S. ALEXANDER.

All of which is in violation of 18 United States Code, Section 371.

A TRUE BILL.

GRAND JURY FOREPERSON

CRANDON RANDELL
Assistant U.S. Attorney

TIMOTHY M. BURGESS
United States Attorney

DATED: 4/16/03

4

DATE WARRANT RECEIVED

DATE AND TIME WARRANT EXECUTED

COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH

# United States District Court

FILED

_____ DISTRICT OF  ALASKA _____

JUL 08 2003

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____
Deputy

**Computer Carry Case belonging to Kenneth Alexander
located in FBI Evidence
101 East 6th Avenue
Anchorage, Alaska**

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: A03 - 121 MJ (MHB)

I _____ Colton W. Seale _____ being duly sworn depose and say:

I am a(n) ___ Special Agent, FBI ___ and have reason to believe
                    Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**Computer Carry Case belonging to Kenneth Alexander
located in FBI Evidence
101 East 6th Avenue
Anchorage, Alaska**

in the _____ District of _____ Alaska _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

Bag belonging to Kenneth Spence Alexander, containing evidence described in Attachment B.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Property that constitutes evidence of the commission of a criminal offence; and contraband, the fruits of crime, or things otherwise criminally possessed; and property designed or intended for use or which is or has been used as the means of committing a criminal offence.

concerning a violation of Title ___ 18 ___ United States Code, Section(s) 1344 (1) and (2) _____

The facts to support a finding of Probable Cause are as follows:

See Attached Affidavit (attachment A) by SA Colton W. Seale, incorporated herein by this reference.

Continued on the attached sheet and made a part hereof.    ☒ Yes   ☐ No

Signature of Affiant
**Colton W. Seale
Special Agent
Federal Bureau of Investigation**

Sworn to before me, and subscribed in my presence

April 15, 2003
Date

at ___ Anchorage, Alaska ___
City  and  State

HARRY BRANSON
United States Magistrate Judge

Signature

EXHIBIT
Page 13 of 34

**Attachment A**
**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT APPLICATION**

I, Colton W. Seale, being first duly sworn on oath, state:

<u>Background</u>

1.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) in Anchorage, Alaska. I have been employed with the FBI since January 1999. I am currently assigned to investigate criminal matters within the jurisdiction of the FBI, including matters related to financial crimes and bank fraud. This affidavit is based on my personal knowledge, reports I have read, and conversations with Special Agents of the FBI and other law enforcement officers. This affidavit is in support of a search warrant to obtain and search bags belonging to Kenneth Spence Alexander for evidence relating to violation of Title 18 United States Code Section 1344.

<u>Statement of Facts</u>

2.    On 04/10/2003, Kenneth Spence Alexander was taken into custody pursuant to a criminal complaint issued by United States Magistrate Judge John D. Roberts, alleging that Alexander had committed bank fraud in violation of 18 United States Code section 1344. After Alexander's arrest, Alexander was read his constitutional rights by SA Colton W. Seale, FBI and thereafter Alexander signed a form enumerating these rights and consented to be interviewed by SA Colton Seale and SA Michael Thoreson, FBI.

3.    During the interview, Alexander admitted to playing a central role in a counterfeit check ring initiated by him and Eldridge Bradley. Alexander stated he configured a computer with Versacheck check making software and setting up an interface between the computer and a printer.

4.    Alexander stated that initially Bradley provided him with personal information for various individuals to whom counterfeit checks were made payable, including Eldridge Bradley, Jeannette Durfee, Iris Bingham, M.T. Standifer-Abell, and Melissa Bartells. Alexander admitted to receiving some of the proceeds obtained from the counterfeit checks that were successfully



EXHIBIT
Page 14 of 34

cashed.  Alexander stated that he knew the checks he made to be counterfeit.

5. Alexander stated that he taught Bradley how to use the software and Bradley started printing checks and cutting Alexander out of the profits derived from these checks.  Alexander spoke to Lashawn Buckner regarding this and she suggested that Alexander print checks for her and she would cash them and split the proceeds with Alexander.  Buckner also introduced Alexander to Pamela Williams, Gary Garvin and Alvin Jameson.  Alexander admitted to printing checks in the name of Buckner, Williams, Garvin and Jameson and receiving some of the proceeds from the checks that were successfully cashed. Alexander also admitted to having made to counterfeit checks payable to himself, one of which he attempted to use to have a new engine put in his vehicle.

6. Alexander stated he moved out of Bradley's trailer somewhere around this time and later moved to Peters Creek to stay with Bill Yates.  Alexander told Yates about the checks he had made while at Bradley's and Yates suggested that Alexander use Yates' computer to do the same.  Yates introduced Alexander to Kristen Hansen, for whom Alexander made several counterfeit checks, from which he received some of the proceeds.

7. On 1/10/2003 Kenneth Alexander paid for a new engine installed in his 1999 Ford Taurus.  He made this payment with a check payable to RTP Auto for $2,000.00. This check was counterfeit.  Richard Eaton of RTP Auto identified Alexander in a photo line-up.  The 1999 Ford Taurus, Illinois plate 1374537, was seized by Anchorage Police.  On 2/3/2003, an Alaska search warrant was obtained for the search of this vehicle. During the search of the vehicle, several counterfeit checks were discovered, as well as documents linking Alexander to other members of the counterfeit check ring, including Bradley and Buckner.

8. To date, Kenneth Alexander and persons associated with Kenneth Alexander have cashed or attempted to cash a total of $90,404.73 in counterfeit checks at financial institutions and other institutions in and around Anchorage.  Details regarding the counterfeit checks referenced in this affidavit are contained in a previous affidavit sworn to by SA Seale to obtain a criminal complaint and arrest warrant for Kenneth Spence Alexander (A03-114 MJ (JDR)).  That affidavit is incorporated herein, in its entirety, by reference.



9.  On 04/10/2003, SA Seale contacted Rusty Graham, Client Supervisor, Anchorage Gospel Rescue Mission, located at 2823 East Tudor Road, Anchorage, Alaska, to determine whether Kenneth Alexander was staying at the Mission. Graham indicated that Alexander was staying there and had two bags in storage at that location. After Alexander's arrest, Graham confirmed that these two bags would remain in storage in the storage room located on the second floor of the Mission.

10. At the time of Alexander's arrest, Alexander had in his possession a Dell computer carrying case, that appeared to contain miscellaneous paperwork, books, and 3.5" computer disks, based on what was readily visible to the arresting agents who conducted a cursory search for weapons at the time of arrest. This bag is currently maintained in FBI evidence.

Conclusion

11. Based on your Affiant's training and experience, persons who commit crimes of fraud tend to maintain evidence and instrumentalities relating to the fraud, including notes, paperwork, checks, computer disks and other items used to perpetuate the fraud or to maintain contact with other individuals associated with the fraud.

12. Based on the facts presented in this affidavit, your Affiant has reason to believe that Kenneth Spence Alexander has committed a violation of Federal law, namely Bank Fraud, Title 18 U.S.C. Section 1344, and that evidence and instrumentalities of the above described crimes, as described in attachment B of this affidavit, is now located in the two bags maintained in the storage room of the Anchorage Gospel Rescue Mission for Kenneth Alexander and the bag on Alexander's person at the time of his arrest, now maintained in FBI evidence.

EXHIBIT 1
Page 16 of 34

FURTHER, AFFIANT SAYETH NAUGHT

Special Agent Colton W. Seale
Federal Bureau of Investigation

SUBSCRIBED and SWORN TO before me this _15_ day of April,
2003, at Anchorage, Alaska.

UNITED STATES MAGISTRATE JUDGE

EXHIBIT
Page __17__ of __34__

**Attachment B**
**Description of Items to be Seized**

Based on the facts recited in Attachment A of this search warrant application, your Affiant has probable cause to believe that the following evidence and instrumentalities of the crimes described in Attachment A of this search warrant application is located in two bags belonging to Kenneth Spence Alexander, currently located at the Anchorage Gospel Rescue Mission, 2823 East Tudor Road, Anchorage, Alaska and one bag belonging to Kenneth Spence Alexander, currently located in FBI Evidence at the Anchorage FBI office, 101 East 6th Avenue, Anchorage, Alaska:

1.  Notes and other items showing personal information, such as name, date of birth, social security number, and bank account information for individuals other than Kenneth Spence Alexander, including Eldridge Bradley, Jeannette Durfee, Lashawn Buckner, Gary Garvin, Alvin Jameson, Alondo Modeste, Arlene Pope, Erica Tolliver, Horst Kruger, Iris Bingham, Maria Treassa Standifer-Abell, Melissa Bartells, John Jackson, Kristen Hansen, Pamela Williams, Rorco Paris, and Sandra Darrow.

2.  Blank checks, including Prestige Elite check paper.

3.  Versacheck software and/or disks and manuals associated with the Versacheck software check making program.

4.  Computer diskettes or read/write compact disks on which could be stored data used in the production of counterfeit checks.

5.  Counterfeit checks, *i.e.*, checks made payable to Kenneth Alexander or others that contain invalid account information.

6.  Receipts from financial institutions or other institutions showing receipt of funds for cashed checks.

7.  Notes and correspondence showing knowledge of or involvement in a check conspiracy to produce and cash counterfeit checks.



## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Colton W. Seale, being first duly sworn on oath, state:

Background

1.    I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) in Anchorage, Alaska. I have been employed with the FBI since January 1999. I am currently assigned to investigate criminal matters within the jurisdiction of the FBI, including matters related to financial crimes and bank fraud. This affidavit is based on my personal knowledge, reports I have read, and conversations with Special Agents of the FBI and other law enforcement officers. This affidavit is in support of a criminal complaint charging Kenneth Spence Alexander with violation of Title 18 United States Code Section 1344.

Statement of Facts

2.    On 12/13/2002, Eldridge Bradley opened account number 446469 at credit Union 1, depositing $40.00. On 12/16/2002, Bradley deposited a check into his new account. This was check number 1305, drawn on account number 08928630 at USAA Bank in San Antonio, TX, for the amount of $7,260.00. The account holder printed on the check was Iris B. Bingham Company Inc. with an Anchorage address. The account number printed on the check was closed. A search of business Alaska business license records showed no license in the name of Iris B. Bingham Co. Inc.

3.    On 12/17/2002, Iris B. Bingham cashed a check at a Wells Fargo branch in Anchorage. The check was made to Bingham for $6,311.00 with the company name B.B. Company, Inc. printed on the check. The check was counterfeit. On the same date, Eldridge Bradley cashed a check in the amount of $6,211.00, also with the name B.B. Company printed on the check.

4.    On 2/20/2003, Bingham told investigators that Kenneth S. Alexander provided her with the check and that she witnessed Alexander print the check off of a computer in his hotel room. She identified Alexander from a series of photos shown to her by investigators. Bingham stated of the cash received for the check, $1,200.00 was used to pay an overdraft charge on her account, Alexander got $2,000.00, and she kept the



remainder.  When shown the Iris B. Bingham Co. Inc.
check that Bradley had deposited, Bingham said she had
no idea of its existence.  She confirmed that the
account number on the check was an old one of hers, but
said she did not know how anyone acquired it.  Bingham
did say that she had seen Alexander at Bradley's
residence on occasion.

5.   On 12/23/2002, Maria Standifer-Abell cashed two checks
     at Credit Union 1, and on 12/27/2002, she cashed a
     third check.  These checks were in the amount of
     $4,719.02, $1,732.01, and $7,232.01.  All three were
     drawn on an account name of Mat-Su Corp. at Alaska USA
     FCU.  All three checks were counterfeit.  On 2/26/2003,
     Standifer-Abell told investigators that Kenneth
     Alexander had provided all three checks to her.  She
     identified Alexander from a series of photos shown to
     her by investigators.  Standifer-Abell said she was
     introduced to Alexander by Aaron Fisher and Eldridge
     Bradley.  Standifer-Abell also said that she saw
     Alexander prepare the first two checks on a computer at
     the residence of Bradley.  She said the proceeds from
     the first two checks were split between her, Alexander,
     Bradley, and Fisher, with Alexander taking a majority
     of the money from the checks.

6.   After cashing the third check, Standifer-Abell got
     $500.00 and Alexander kept the rest.  She then drove
     Alexander to a computer store on 36th Avenue where he
     purchased a laptop computer and then to Office Depot in
     downtown Anchorage where he purchased a printer.
     Standifer-Abell told investigators that Alexander told
     her that he purchased the check stock used to make the
     checks at Comp USA on Dimond.  He also commented to her
     that them selling this paper made it so easy to make
     counterfeit checks that they were almost asking you to
     do it.

7.   On 04/08/2003, SA Seale visited the Alaska Used
     Computer Source, located at 601 West 36th Avenue,
     Alaska, Anchorage.  The store owner indicated she
     recalled Ken Alexander purchasing a laptop computer and
     provided a Sales Receipt for an IBM ThinkPad laptop
     computer sold to Kenneth Alexander for $700 cash on
     12/27/2002.  Also on 04/08/2003, SA Seale visited
     Office Depot, located at 201 East 6th Avenue,
     Anchorage, Alaska.  The Assistant Manager located a
     sales receipt for an Inkjet printer and Versacheck
     check making software, 500 Prestige Elite blank checks,
     and various related items, sold on 12/27/2002 at 4:13

EXHIBIT _____
Page 20 of 34

p.m., paid for with $250 cash. The Prestige Elite checks are the same style as the counterfeit checks referenced in this affidavit.

8.   On 1/2/2003, Melissa Bartells attempted to cash a check in the amount of $7,855.10. This check was counterfeit. The account name printed on the check was MEB Group, Inc. On 2/25/2003, Bartells told investigators that she met Kenneth Alexander through her cousin, Maria Standifer-Abell. She identified Alexander from a series of photos shown to her by investigators. Bartells stated that she was afraid for the safety of Standifer-Abell because of the check transactions between Alexander and Standifer-Abell. Because of this fear, Bartells agreed to cash the $7,855.10 for Alexander in hopes Alexander and Bradley would leave her cousin alone.

9.   Bartells stated she drove Alexander from his hotel room to the residence of Eldridge Bradley. Alexander had with him check making software and took this into Bradley's residence and reemerged sometime later with the above described check. Alexander explained to Bartells that he had been living at Bradley's residence. Alexander also told Bartells that he had to use Bradley's computer this day to make the checks because his own was not working. At the bank, the bank refused to cash the check and Bartells took Alexander back to his hotel. Bartells added that Alexander had coached her to say that she received the check from the sale of her truck.

10.  On 1/10/2003 Kenneth Alexander paid for a new engine installed in his 1999 Ford Taurus. He made this payment with a check payable to RTP Auto for $2,000.00. This check was counterfeit. Richard Eaton of RTP Auto identified Alexander in a photo line-up.

11.  The 1999 Ford Taurus, Illinois plate 1374537, was seized by Anchorage Police. On 2/3/2003, an Alaska search warrant was obtained for the search of this vehicle.

12.  On 1/11/2003, Kenneth Alexander cashed a check at Cash Alaska for $744.71. The account holder name printed on the check was Child Support Inforcement (sic) Bureau. This check was counterfeit. Alexander identified himself at Cash Alaska with his Alaska driver's license, and employees at Cash Alaska recognized him as a frequent customer.

13.   On 1/11/2003, Sandra Darrow cashed a check for $681.17.
      The account holder name printed on the check was Child
      Support Inforcement (sic) Bureau.  This check was
      counterfeit.  During the search of Alexander's vehicle,
      a piece of mail addressed to Sandra Darrow, and a torn
      piece of a check made payable to Sandra Darrow were
      found.

14.   On 1/12/2003, Alondo Modeste cashed a check for
      $781.17.  The account holder printed on this check was
      Arctic Electric Inc.  This check was counterfeit.
      During the search of Alexander's vehicle, a hotel
      receipt dated 1/13/2003 in the name of Alondo Modeste
      was found.

15.   During the month of January 2003, Jeanette Durfee
      cashed three checks at Alaska Check Cashing.  All three
      of these checks were found to be counterfeit.  During
      all three transactions, Durfee was identified by
      employees of Alaska Check Cashing by her check cashing
      ID issued by Alaska Check Cashing.  This ID has a
      photograph of Durfee.  Alaska Check Cashing policy
      requires that anyone cashing a check at their business
      must be identified by an ID issued by them.

16.   All three checks have the payee printed as Jeanette
      Durfed, with an address of 1311 Ingra in Anchorage.
      Check number 1397 was for $683.22 with an account owner
      name of Advance Medical Billing Services, Inc.  Check
      number 1163 was for $744.71 with an account owner name
      of Arctic Electric Inc.  Check number 1359 was for
      $752.03 with an account owner name of Lewis Dekeitric
      Inc.  A check of Anchorage Police Department report
      records show that Durfee shares the same addresses as
      Eldridge Bradley, 4110 DeBarr #D1 and 1100 Tonga.

17.   On 1/15/2003, Eldridge Bradley cashed a check at Alaska
      Check Cashing.  Bradley was identified by employees of
      Alaska Check Cashing by his ID issued by that business,
      and also recognized him as a regular customer.  This
      check was for $781.97 with an account owner name of
      Lewis Dekeitric Inc.

18.   During the month of January 2003, LaShawn Buckner
      presented eight counterfeit checks to be cashed.

19.   Buckner cashed check numbers 1005 and 1014 at Alaska
      Check Cashing for $332.00 and $522.41, respectively.
      Both of these checks had an account owner name of

Alaska Durable Products. Buckner was identified by
employees at Alaska Check Cashing by her ID card issued
by that business. Buckner attempted to cash check
number 1039 for $671.09 at Alaska Check Cashing. This
check had an account owner of Providence Radiology
Health Services. Alaska Check Cashing was aware that
the prior two checks were counterfeit and declined the
transaction.

20. Buckner cashed check numbers 1032 and 1037 at Cash
Alaska for $744.02 and $671.09, respectively.
Employees identified Buckner by her Alaska ID. Cash
Alaska had a Cash Alaska customer card on fill for
Buckner. On 1/23/2003, Buckner completed a second
customer card. Check 1032 had an account owner printed
on it of ESSIG Inc. Check 1037 had an account owner of
Providence Radiology Health Services.

21. Check numbers 1364 and 1368 were cashed at Northrim
Bank for $717.81 each. Both of these checks had an
account owner name of Lewis Dekeitric Inc. printed on
them. These checks were each made payable to LaShawn
Buckner. Each of them were endorsed to Jesse Shavers,
who's Northrim account they were cashed through.

22. During the search of Alexander's vehicle a counterfeit
check payable to Lashawn Buckner, 4401 Peterkin,
Anchorage, Alaska was found. Also found were numerous
pieces of mail addressed to Lashawn Buckner and a Cash
Alaska application in Buckner's name.

23. The check found in Alexander's vehicle payable to
Buckner was drawn on an account in the name of Lewis
Deiketric, Inc. Buckner negotiated two checks drawn on
that account and Eldridge Bradley and Jeanette Durfee
each negotiated one check drawn on that account.

24. During the week of January 19, 2003, Pamela Williams
cashed a check at Alaska Check Cashing for $758.11.
The check owner name printed on the check was
Providence Health System. This check was counterfeit.
Employees of Alaska Check Cashing identified Williams
by her check cashing ID issued by that business.

25. During the week of January 19, 2003, Alvin Jameson
cashed a check at Cash Alaska for $871.55. This check
was counterfeit. The check owner name printed on the
check was Alaska Butcher Equipment & Supply Co.
Jameson told investigators that LaShawn Buckner had
asked him to cash the check. Jameson said that Buckner

picked him up at her residence to drive him to Cash
Alaska. With Buckner were a black male and a black
female. Jameson identified by photo Pamela Williams as
the female. He was unable to identify the male.
Jameson said he got $100.00 of the money and the male
took the rest.

26. During the week of January 15, 2003, Gary Garvin
attempted to cash a check at Alaska USA in the amount
of $2,671.03. The bank discovered the check was
counterfeit and refused the transaction. Garvin told
investigators that LaShawn Buckner had asked him to
cash the check. Buckner introduced Garvin to two
individuals. Garvin identified them by photo as
Kenneth Alexander and Pamela Williams. He said that
Alexander gave him the check. Alexander asked Garvin
to cash the check because he was from Chicago and did
not have a local ID. Alexander also told Garvin that
the check was legitimate.

27. On 2/18/2003, Anchorage Police officers were called to
Cash Alaska Spenard on report of someone attempting to
cash a counterfeit check. The check was made payable
to Arlene Pope for $959.11. The check owner printed on
the check was Specialty Truck & Auto. Officers
contacted Pope at Cash Alaska. Pope told the officers
that Kenneth Alexander gave the check to her. She
added that Alexander was waiting outside of the store
for her but must have left.

28. On 2/17/2003, Anchorage Police officers were called to
Cash Alaska Muldoon on report of someone attempting to
cash a counterfeit check. The check was made payable
to Kristin Hansen for $822.47. The check owner printed
on the check was Specialty Truck & Auto. Cash Alaska
also discovered that Hansen had earlier cashed two
other counterfeit checks with them. These other two
were also cashed in February. They also were Specialty
Truck & Auto checks. These two checks were cashed for
$1,128.74 and $722.84.

29. Kristin Hansen told investigators that she had received
all three checks from Kenneth Alexander. She said that
he asked her to cash them for him. She got a few
hundred dollars from each and Alexander got the rest.

30. To date, persons associated with Kenneth Alexander have
cashed or attempted to cash a total of $90404.73 in
counterfeit checks at financial institutions and other
institutions in and around Anchorage.

EXHIBIT
Page 24 34

Need for a Criminal Complaint

31.  Det. Doug Pickerel, APD spoke with Kristen Hansen.
     Hansen told Det. Pickerel that until the day she was
     picked up by the police, she had lived in the same
     residence with Alexander in Chugiak.  Hansen stated
     that Alexander had said he was from Chicago and wanted
     to get out of Alaska and back to Chicago.

32.  The initial complaint regarding counterfeit checks was
     an anonymous complaint from a female believed to be a
     former girlfriend of Eldridge Bradley.  The female
     stated that Bradley was making counterfeit checks in
     his trailer with a male from Chicago and that the male
     was attempting to make money so he could leave Alaska.

33.  Based on the foregoing, it is your Affiant's belief
     that, given the opportunity, Kenneth Alexander will
     flee the State to avoid prosecution.

Conclusion

34.  Based on the facts presented in this affidavit, your
     Affiant has reason to believe that Kenneth Spence
     Alexander has committed a violation of Federal law,
     namely Bank Fraud, Title 18 U.S.C. Section 1344.


             FURTHER, AFFIANT SAYETH NAUGHT

                    _____
                    Special Agent Colton W. Seale
                    Federal Bureau of Investigation


SUBSCRIBED and SWORN TO before me this 8ᵗʰ day of April,
2003, at Anchorage, Alaska.


                    _____
             UNITED STATES MAGISTRATE JUDGE

2003 OCT -3  PM 1: 41

TIMOTHY M. BURGESS
UNITED STATES ATTORNEY

CRANDON RANDELL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel:  907/271-5071

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. A03-088-02 CR |
| | ) | (RRB) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Sentencing** |
| | ) | **Memorandum** |
| | ) | |
| KENNETH S. ALEXANDER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the United States of America, by and through its counsel, and submits this Sentencing Memorandum.

The government agrees with the findings and conclusions set forth in the Presentence Report (PSR). The court is familiar with Mr. Alexander, having presided at the five day jury trial.

Mr. Alexander faces 33-41 months based upon the total offense level of 18, and a criminal history of III. The government agrees that does not appear to be any

EXHIBIT
Page 26 of 34

2

justification for a departure from the guideline range. PSR,
¶ 98. That being said, however, it must be conceded that Mr.
Alexander has compiled a rich and varied criminal career,
with an emphasis on beating up women and creating various
schemes to steal money. He seemingly possesses a gift for
persuasion, as shown by his ability to pass himself off as a
"law school graduate" offering legal services such as
"filing divorce petitions, income tax returns, insurance
claims, etc." He also, for fees ranging from $150 to $350,
assisted clients filing for bankruptcy.[1] PSR, ¶ 32.

<center>Recommendation</center>

The government recommends a sentence at the high end of
range. This recommendation is bolstered by the considerable
activity set out in the Presentence Report section entitled
<u>Other Arrests</u>. PSR, ¶¶ 37a-46a. When viewed and considered
alongside his official criminal history, it becomes clear
that Mr. Alexander is a career criminal, with no interest in
either rehabilitation or honest endeavor.

So, the emphasis should be in the direction of
affording adequate deterrence to Mr. Alexander's activities,

---

[1] At trial we learned that Mr. Alexander assisted a co-
defendant in this case file bankruptcy.

<center>2</center>


EXHIBIT __
Page 27 of 34

as well protection of the public from the same. 18 U.S.C. § 3553.

In addition, Mr. Alexander should be placed on Supervised Release for the maximum period of three years (PSR, ¶ 84), and be ordered to pay Restitution in the total amount of $65,452.57 (PSR, ¶ 97).[2] The Special Assessment is $100.00.

Respectfully Submitted this 3rd day of October, 2003, at Anchorage, Alaska.

TIMOTHY M. BURGESS
UNITED STATES ATTORNEY

CRANDON RANDELL
Assistant U.S. Attorney

---

[2]  The government has confirmed that Wells Fargo Bank suffered a $6311.10 loss (not $7,825.79) with regard to the Iris Bingham check. *See also* paragraph 6 of Attachment A to the Presentence Report.

3

AO 245B  (Rev. 3/01) Judgment in a Criminal Case
          Sheet 1

FILED

# UNITED STATES DISTRICT COURT

OCT 1 4 2003

District of Alaska

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____ Deputy

UNITED STATES OF AMERICA

V.

KENNETH S. ALEXANDER

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number:      **A03-0088-02-CR (RRB)**

Pro Per
Defendant's Attorney

## THE DEFENDANT:

☐  pleaded guilty to count(s) _____

☐  pleaded nolo contendere to count(s) _____
    which was accepted by the court.

X  was found guilty on count(s)   1 of the Indictment.
    after a plea of not guilty.

Certified to be a true and correct copy
of original filed in my office.
Dated  10/14/03
MICHAEL HALL, Clerk
By_____ Deputy

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy | 02/17/2003 | 1 |

    The defendant is sentenced as provided in pages 2 through    8    of this judgment. The sentence is imposed pursuant to
the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s) _____

☐  Count(s) _____  ☐ is  ☐ are  dismissed on the motion of the United States.

    IT IS ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name,
residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay
restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Defendant's Soc. Sec. No.:  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

Defendant's Date of Birth:  05/30/1954

Defendant's USM No.:   06660424

Defendant's Residence Address:

Cook Inlet Pre-Trial Facility

Anchorage, Alaska 99501

Defendant's Mailing Address:

Same as above.

October 10, 2003
Date of Imposition of Judgment

Signature of Judicial Officer

RALPH R. BEISTLINE, U.S. DISTRICT JUDGE
Name and Title of Judicial Officer

October 14, 2003
Date

-0088--CR (RRB)       US PROBATION
                      FINANCE
ALEXANDER             MAGISTRATE JUDGE ROBERTS

EXHIBIT
Page 29 of 34     MAILED ON  10/14/03
                  BY  PD

242

AO 245B    (Rev. 9/00) Judgment in Criminal Ca
Sheet 2 — Imprisonment

DEFENDANT:    **KENNETH S. ALEXANDER**
CASE NUMBER:    **A03-0088-02-CR (RRB)**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total total term of    40 Months.    .

**The court ordered that the defendant not serve his time at the same facility as Eldridge Bradley, Jr., A03-0088-01-CR (RRB). Mr. Bradley has requested that his time be served at FPC Nellis, North Las Vegas, Nevada.**

☐    The court makes the following recommendations to the Bureau of Prisons:

☒    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at _____ ☐ a.m. ☐ p.m.    on _____ .

    ☐    as notified by the United States Marshal.
    ☐    as notified by the Probation or Pretrial Services Office.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. on _____
    ☐    as notified by the United States Marshal.
    ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

EXHIBIT L
Page 30 of 34

AO 245B     (Rev. 9/00) Judgment in a Criminal (
             Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___8___

DEFENDANT:          **KENNETH S. ALEXANDER**
CASE NUMBER:      **A03-0088-02-CR (RRB)**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of      3 Years.

     The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

     The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.

☒   The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

     If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

     The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the following page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 9/00) Judgment in a Criminal
           Sheet 3 — Continued 2 — Supervised Release

Judgment—Page __4__ of __8__

DEFENDANT:      KENNETH S. ALEXANDER
CASE NUMBER:    A03-0088-02-CR (RRB)

## SPECIAL CONDITIONS OF SUPERVISION

1. In addition to submitting to drug testing in accordance with the Violent Crime Control and Law Enforcement Act of 1994, the defendant, at the direction of the probation officer, shall participate in a program approved by the United States Probation Officer for substance abuse treatment, which program shall include counseling and/or testing to determine whether the defendant has reverted to the use of drugs or alcohol.

2. The defendant shall submit to a warrantless search of his person, residence, vehicle, office, place of employment and/or business at a reasonable time and in a reasonable manner, based upon a reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall not reside at any location without having first advised other residents that the premises may be subject to searches pursuant to this condition.

3. The defendant shall provide the probation officer access to any requested financial information, shall authorize the probation officer to conduct credit checks and obtain copies of the defendant's tax information and shall not incur any new debts or apply for credit without the prior approval of the probation officer.

4. The defendant shall not possess a firearm, a destructive device, or other weapon.

/////////////////////////////////////////////////////////

*Defendant Declined to Sign - Doesn't agree w/ them.*

*T.L. 3-8-06.*

Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

Signed: _____          Date: _____
                    Defendant                          3-8-06
         _____
         U.S. Probation Officer/Designated Witness          Date

EXHIBIT __L__
Page 32 of 34

O 245B    (Rev. 9/00) Judgment in a Criminal C
          Sheet 5, Part A — Criminal Monetary penalties

Judgment — Page __5__ of __8__

DEFENDANT:      KENNETH S. ALEXANDER
CASE NUMBER:    A03-0088-02-CR (RRB)

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ 65,452.57 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

X  The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid in full prior to the United States receiving payment.

| Name of Payee | *Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| Alaska Check Cashing | 3,816.34 | 3,816.34 | 100% |
| Alaska USA Federal Credit Union | 14,378.99 | 14,378.99 | 100% |
| Cash Alaska | 5,641.06 | 5,641.06 | 100% |
| Check First Corporation | 371.09 | 371.09 | 100% |
| Chubb Group of Insurance Companies | 8,089.69 | 8,089.69 | 100% |
| Credit Union 1 Federal Credit Union | 5,000.00 | 5,000.00 | 100% |
| Horst Kruger | 5,200.00 | 5,200.00 | 100% |
| Kings X | 1,955.10 | 1,955.10 | 100% |
| Northrim Bank | 7,623.83 | 7,623.83 | 100% |
| Party Time Liquor | 471.22 | 471.22 | 100% |
| Red Apple Grocery Store | 3,850.13 | 3,850.13 | 100% |
| RTP Auto Repair | 2,000.00 | 2,000.00 | 100% |
| Samovar Inn | 744.02 | 744.02 | 100% |
| Wells Fargo Bank | 6,311.10 | 6,311.10 | 100% |
| TOTALS | $ 65,452.57 | $ 65,452.57 | |

☐ If applicable, restitution amount ordered pursuant to plea agreement $ _____

X  The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine and/or  ☐ restitution.

☐ the interest requirement for the  ☐ fine and/or  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

45B  (Rev. 9/00) Judgment in a Criminal (...
     Sheet 5, Part B — Criminal Monetary Penalties

Judgment — Page __6__ of __8__

DEFENDANT:      KENNETH S. ALEXANDER
CASE NUMBER:    A03-0088-02-CR (RRB)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

X  Lump sum payment of $ __65,552.57__ due immediately, balance due

    ☐ not later than _____ , or
    X  in accordance with   ☐ C,  ☐ D, or  X  E or  ☐  F below

☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ E or  ☐  F below)

☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

☐  Payment in _____ (e.g., equal, weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

X  On a schedule to be determined by the U.S. Probation Officer.

☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise in the special instruction above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒  Joint and Several

    Defendant Name, Case Number, and Joint and Several Amount:

    Eldridge Bradley, Jr., A03-0088-01-CR (RRB), $65,452.57

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.